PRG.28090

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **PROGRESSIVE SOUTHEASTERN** | § | |
| **INSURANCE CO.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO.** |
| | § | **1:24-cv-00096** |
| **THE MORNING STARS TRANS LLC;** | § | |
| **MORNING STARS TRANS LLC;** | § | |
| **KIDANE AREFE FSSEHAYE AND** | § | |
| **ROBERT EARL COATS, JR.,** | § | |
| **Defendants.** | § | |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Progressive Southeastern Insurance Co., by and through its undersigned attorneys, complaining of the Defendants herein, seeks a declaratory judgment from this Honorable Court as set forth below.

## PARTIES AND JURISDICTION

1.     This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Federal Rule of Civil Procedure, Rule 57, for the purposes of determining a question of actual controversy between the parties as hereinafter more fully appears.

2.      Progressive Southeastern Insurance Company is an Indiana domiciled property and casualty company whose principal address Is 111 Congressional Blvd. Ste. 150 Carmel, IN 46032 and is wholly owned by Progressive Agency Holdings, Inc. Progressive Agency Holdings, Inc. is a Delaware corporation whose principal address is c/o Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. Progressive Agency Holdings, Inc is a privately held company which owns all of the issued and outstanding capital stock of Progressive Preferred

1

Insurance Company. No publicly traded company owns any capital stock of Progressive Preferred Insurance Company.  The Progressive Corporation is a publicly traded Ohio holding company with its principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143.  The Progressive Corporation does not own any shares of Progressive Preferred Insurance Company.

3.      Defendant Morning Stars Trans LLC is, upon information and belief, a North Carolina limited liability company organized and existing under the laws of the State of North Carolina.  Morning Stars Trans LLC can be served with process through its Registered Agent, All About the Trucking LLC, 1901 Sharon Forest Drive, Charlotte, North Carolina 28212.

4.      Upon information and belief, the sole members of Morning Stars Trans LLC are George Lamont and Rahel B. Mebrahtu, who are, upon information and belief, residents and citizens of the State of North Carolina and the State of Georgia, respectively.

5.      Defendant The Morning Stars Trans LLC is, upon information and belief, a Georgia limited liability company organized and existing under the laws of the State of Georgia.  The Morning Stars Trans LLC can be served with process through its Registered Agent, Rahel B. Mebrahtu, 3788 Prescott Ridge Circle, Clarkston, GA 30021 and/or 2023 Lake Lucerne Drive Southwest, Lilburn, GA 30047.

6.      Defendant Kidane Arefe Fssehaye ("Fssehaye") is, upon information and belief, a citizen and resident of the State of Washington.

7.      Defendant Robert Earl Coats, Jr. ("Coats") is, upon information and belief, a citizen and resident of the State of Texas.

8.      Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332, because the Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds

$75,000 exclusive of interests and costs.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1392(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## FACTUAL BACKGROUND

10.     On or about January 19, 2023, Fssehaye was operating a 2016 Freightliner (VIN 3AKJHLD56GSHJ8877) owned by Fssehaye (the "2016 Freightliner") that was pulling a 2007 Wabash trailer (VIN 1JJV532W37L040485) owned by Meisler Trailers, LLC (the "2007 Wabash Trailer") (collectively the 2016 Freightliner and the 2007 Wabash Trailer are referred to hereinafter as the "Subject Vehicle") on US 90 in or about Jefferson County, Texas when Fssehaye was involved in a motor vehicle accident with a vehicle operated by Coats (the "Accident").

11.     Upon information and belief, Fssehaye began working for The Morning Stars Trans LLC and/or Morning Stars Trans LLC on or about December 6, 2022.

12.     Fssehaye and The Morning Stars Trans LLC entered that certain "Lease Contract" dated December 6, 2022, wherein Fssehaye leased the 2016 Freightliner to The Morning Stars Trans LLC for use in connection with the The Morning Stars Trans LLC's motor carrier operations.

13.     From December 6, 2022 through the date of the Accident, the 2016 Freightliner was available for the regular frequent use by The Morning Stars Trans LLC.

14.     Prior to the Accident, the 2007 Wabash Trailer was available for the regular or frequent use by The Morning Stars Trans LLC.

15.     The Accident was first reported to Progressive by counsel for Coats on February 6, 2023.

16.     Upon information and belief, at the time of the Accident Fssehaye was in the

3

process of performing or had just completed performing a shipment of goods from Rockwall, Texas to Beaumont, Texas on behalf of The Morning Stars Trans LLC and/or Morning Stars Trans LLC.

17.     As a result of the Accident, Coats has alleged personal injuries and has filed a lawsuit captioned *Robert Earl Coats, Jr. v. The Morning Stars Trans LLC, Morning Stars Trans, LLC, Meisler Trailers, LLC, and Kidane Arefe Fssehaye*, C.A. No. 1:23-cv-322-MJT (the "Underlying Lawsuit") which is currently pending before this Court and in which Coats seeks damages in an unspecified amount exceeding $1,000,000.00.

18.     Progressive is currently providing a defense to the Underlying Lawsuit to The Morning Stars Trans LLC, Morning Stars Trans, LLC, and Fssehaye pursuant to a full reservation of rights to deny coverage.

19.     Defendants each have an interest in the outcome of this declaratory judgment action, namely whether the Subject Vehicle qualifies for liability coverage under the Policy and/or Progressive has any indemnification or surety obligation under the Policy with respect to the Accident and Underlying Lawsuit, and as such are necessary, interested parties pursuant to 28 U.S.C. § 2201.

20.     At the time of the Accident, Progressive insured The Morning Stars Trans, LLC under Policy No. 03495191-001, with effective dates of April 10, 2022, through April 10, 2023, and Liability Limits of $1,000,000 CSL and which included a federal MCS 90 endorsement in the amount of $750,000 naming The Morning Stars Trans, LLC as the Motor Carrier (the "Policy").

21.     A true and accurate copy of the Policy, its endorsements, and its declaration pages is attached to this Complaint as **Exhibit A**.

22.     At the time of the Accident, Kidane Fssehaye was not a rated driver on the Policy.

23.    At the time of the Accident neither the 2016 Freightliner nor the 2007 Wabash trailer were specifically scheduled on the Declarations Page to the Policy.

24.    The Policy included four (4) generic "2030 Non-Owned Attached Trlr" but the Declarations Page to the Policy expressly provided a non-owned trailer would only constitute a specifically described auto under the Policy "while attached to a listed power unit specifically described on the declarations page."

25.    Upon information and belief, each of the four (4) specifically described power units listed on the Declarations Page to the Policy on the date of the Accident were fully operational and were otherwise not down for repairs, out-of-service, or unavailable for use on the date of the Accident.

26.    The Policy provides, in relevant part, as follows:

## PART I—LIABILITY TO OTHERS

### INSURING AGREEMENT—LIABILITY TO OTHERS

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense**, for which an insured becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**.

"Insured auto" or "your insured auto" for purposes of Part I—Liability to Others—is defined as:

a.  Any **auto** specifically described on the **declarations page**; or
b.  An additional **auto** for Part I—Liability to Others . . . on the date **you** become the owner if:
    (i) you acquire the **auto** during the policy period shown on the declarations page;
    (ii) **we** insure all **autos** owned by **you** that are used in your business;
    (iii) no other insurance policy provides coverage for that **auto**; and
    (iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

If **you** add any coverage, increase **your** limits, or make any other changes to this policy during the 30-day period after **you** acquire an additional auto, these

5

changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes for the additional **auto**. **We** may charge premium for the additional **auto** from the date **you** acquire the **auto**.

With respect to Part I—Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any auto shown on the **declarations page**.

c.  Any replacement auto on the date you become the owner if:
(i) you acquire the auto during the policy period shown on the declarations page;
(ii) the auto that you acquire replaces one specifically described on the declarations page due to termination of your ownership of the replaced auto or due to mechanical breakdown of, deterioration of, or loss to the replaced auto that renders it permanently inoperable; and
(iii) no other insurance policy provides coverage for that auto.
If we provide coverage for a replacement auto, we will provide the same coverage for the replacement auto as we provide for the replaced auto. We will provide that coverage for a period of 30 days after you become the owner of such replacement auto. We will not provide any coverage after this 30-day period unless within this period you ask us to insure the replacement auto. If you add any coverage, increase your limits, or make any other changes to your policy during this 30-day period, these changes to your policy will not become effective until after you ask us to add the coverage, increase your limits, or make such changes.

The additional definition section expands the definition of **insured auto** to include the following:

When used in Part I - Liability To Others, **insured auto** also includes:
1.  **Trailers** (. . .)
2.  **Mobile equipment** (. . .);
3.  Any **temporary substitute auto**; and
4.  **Mobile equipment** that is (. . .)

The Policy defines "temporary substitute auto" as:

Any auto you do not own while used with the permission of its owner as a temporary substitute for an insured auto that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction. However, temporary substitute auto does not include any auto available for the regular or frequent use of you, a relative, or your employees unless that auto is insured under a separate policy of insurance that provides at least the minimum required limits of financial responsibility under the applicable state and federal laws.

6

The Policy defines "insured", when used in Part I – Liability to Others, in relevant part as follows:

1. You with respect to an insured auto.
2. Any person while using, with your permission, and within the scope of that permission, an insured auto you own, hire, or borrow except:

   ***

   (c) The owner or anyone else from whom the insured auto is leased, hired or borrowed. However, this exception does not apply if the insured auto is specifically described on the declarations page.

   (d) The employees or agents of an owner or anyone else from whom the insured auto is leased, hired or borrowed. However, this exception does not apply if the insured auto is specifically described on the declarations page.

   For purposes of this subsection A.2., an insured auto you own includes any auto specifically described on the Declarations Page.

3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I - Liability To Others. If we make a filing or submit a certificate of insurance on your behalf with a regulatory or governmental agency, the term "insured" as used in such filing or certificate, and in any related endorsement, refers only to the person or organization named on such filing, certificate or endorsement.

The Policy includes the following further relevant definitions:

2. "Auto" means a land motor vehicle or trailer designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. It does not include mobile equipment. Self-propelled vehicles with the following types of permanently attached equipment are autos, not mobile equipment: ( . . .)

4. "Declarations" or "declarations page" means the document prepared by us listing your policy information, which may include the types of coverage you have elected, the limit for each coverage, the cost for each coverage, the specifically described autos covered by this policy, and the types of coverage for each specifically described auto.

19. "Trailer" includes a semi-trailer and any piece of equipment used to convert a semi-trailer to a full trailer while it is attached to the semi-trailer.

20. "We", "us" and "our" mean the company providing this insurance as shown on the declarations page.

17. "You", "your" and "yours" refer to the named insured shown on the declarations page.

The LIMIT OF LIABILITY Section additionally provides, in relevant part, as follows:

7

We will pay no more than the Limit of Liability shown on the declarations page for this coverage for the insured auto involved in the accident regardless of:
1. the number of premiums paid;
2. the number of insured autos or trailers shown on the declarations page;
3. the number of policies issued by us;
4. the number of vehicles or insureds involved in an accident; or
5. the number of claims or lawsuits arising out of an accident;

subject to the following:

**1. Coverage Required by Filings**

If we have filed a certificate of insurance on your behalf with any regulatory or governmental agency, and:
    (i) we are required to pay any judgment entered against you; or
    (ii) we agree to settle a claim or lawsuit;
for bodily injury, property damage, or covered pollution cost or expense arising out of an accident or loss otherwise not covered under the terms of this policy solely because of such certificate of insurance, we will be obligated to pay no more than the minimum amount required by that agency or applicable law. If any payment is based solely on such certificate, you must reimburse us in full for our payment, including legal fees and costs we incurred, whether the payment is made as a result of judgment or settlement.

**2. Combined Bodily Injury and Property Damage Limits**
Subject to the terms of Section 1 above, if your declarations page indicates that combined bodily injury and property damage limits apply for "each accident" or "combined single limit" applies, the most we will pay for the aggregate of all damages and covered pollution cost or expense combined, resulting from any one accident, is the combined liability insurance limit shown on the declarations page for the insured auto involved in the accident.

## DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each **accident** or **loss** even if **you** or the person seeking coverage is not at fault.  Refer to your policy documents for the claims phone number.

**You** or the person seeking coverage must also obtain and provide **us** with the names and addresses of all persons involved in the **accident** or **loss**, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

* * *
A person seeking coverage must:

1. Cooperate with **us** in any matter concerning a claim or lawsuit;
2. Provide any written proof of loss **we** may reasonably require;
3. Allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you**, a **relative**, or any person claiming coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;
4. Promptly call **us** to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to any claim or lawsuit;
5. Attend hearing and trials as **we** may require;
10. Authorize **us** access to **your** business or personal records as often as **we** may reasonably require.

The Policy's MCS-90 Endorsement was issued to The Morning Stars Trans, LLC  of 20409 Sterling Bay Ln W, Ste. P, Cornelius, NC 28031 in the amount of $750,000. The MCS-90 Endorsement provides as follows:

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of

9

anyone accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

27.    Upon information and belief, The Morning Stars Trans LLC and Morning Stars Trans LLC had been in possession of and had full use of the 2016 Freightliner and the 2007 Wabash Trailer for more than thirty (30) days prior to the Accident.

28.    Neither The Morning Stars Trans LLC, Morning Stars Trans, LLC, nor anyone else requested that the 2016 Freightliner or the 2007 Wabash Trailer be added to the Policy prior to the Accident or at any point subsequent to the Accident.

29.    Progressive and the Defendants have an actual, present, adverse, and antagonistic interest in the subject matter described hereinabove.

30.    All proper and present antagonistic interests or all parties having any interest in the outcome and adjudication of the present controversy are before the Court by proper process.

31.    Progressive is in doubt with respect to its rights under the Policy and, by this Complaint, seeks a declaration of its rights and obligations under the Policy with respect to claims asserted by or against the Defendants in the Underlying Lawsuit.

32.    Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure, Rule 57, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to give such relief as it deems necessary under the facts and circumstances presently existing.

## FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment as to Policy)

33.     Progressive restates the foregoing allegations of the Complaint not inconsistent herewith and incorporates the same herein by reference.

34.    The Accident did not arise out of the the ownership, maintenance or use of an "insured auto."

10

35.     The Policy affords no liability for the Accident, including but not limited to those claims alleged in the Underlying Lawsuit, because the 2016 Freightliner and the 2007 Wabash Trailer do not qualify as an "insured auto" under the Policy insofar as neither was specifically described on the Declarations Page to the Policy at the time of the Accident and do not constitute an additional auto, replacement auto, or temporary substitute auto as those terms are defined under the Policy.

36.     No individual or entity qualifies as an "insured" for liability coverage under the Policy in relation to the Accident because the 2016 Freightliner and the 2007 Wabash Trailer do not qualify as an "insured auto."

37.     Progressive has no duty under the Policy to defend or indemnify any individual or entity against claims arising from or relating to the Accident, including but not limited to those alleged in the Underlying Lawsuit, because the Accident did not arise out of the ownership, maintenance, or use an "insured auto" as defined in the e Policy.

38.     Progressive has no duty under the Policy to defend or indemnify any individual or entity against claims arising from or relating to the Accident because no individual or entity qualifies as an "insured" under the Policy.

39.     Progressive has no duty the Policy to defend or indemnify any individual or entity against claims arising from or relating to the Accident because of the breach of the notice/cooperation provisions of the Policy.

40.     Alternatively, to the extent there is any coverage and corresponding duty to defend or indemnify upon Progressive under the Policy with respect to the Accident or the Underlying Lawsuit, the Policy expressly excludes from coverage any punitive or exemplary damages award,

11

5088854.1

and accordingly the Policy would require Progressive to indemnify any individual or entity against a punitive or exemplary damages award.

41.    Progressive has no duty under the MCS 90 endorsement on the Policy to defend any individual or entity against claims arising from or related to the Accident, including but not limited to those alleged in the Underlying Lawsuit, because under the applicable federal regulations the MCS 90 endorsement does not create any duty upon the insurer to defend.

42.    Progressive has no indemnification/surety obligation under the MCS 90 endorsement on the Policy in relation to the Accident because The Morning Stars Trans LLC, USDOT No. 2478768, 20409 Sterling Bay Lane West, Ste. P, Cornelius, NC 28031 was not operating as a for-hire motor carrier transporting property belonging to another in interstate commerce at the time of the Accident insofar as any such transportation The Morning Stars Trans LLC was performing was wholly confined within the geographical boundaries of the State of Texas and was thus purely intrastate.

43.    Progressive has no indemnification/surety obligation under the MCS 90 endorsement on the Policy with respect to the claims alleged against any individual or entity other than The Morning Stars Trans LLC, USDOT No. 2478768, 20409 Sterling Bay Lane West, Ste. P, Cornelius, NC 28031 because any surety obligation under the endorsement, to the extent one exists, extends only to a final judgment obtained against the motor carrier listed on the face of the MCS 90 endorsement.

44.    For each of the foregoing reasons, Progressive is entitled to an Order holding:

      i.    The Policy does not afford liability coverage for any losses sustained in the Accident, including but not limited to those alleged in the Underlying Lawsuit;

ii.   Progressive has no duty under the Policy to defend any individual or entity for claims arising from or relating to the Accident, including but not limited to those alleged in the Underlying Lawsuit;

iii.   Progressive has no duty under the Policy to indemnify any individual or entity for claims arising from or relating to the Accident, including but not limited to those alleged in the Underlying Lawsuit;

iv.   Alternatively, to the extent coverage is found under the Policy with respect to the Accident and the claims alleged in the Underlying Lawsuit, any punitive or exemplary damages award would be excluded from any indemnification obligation under the Policy;

v.   Progressive has no duty under the MCS 90 on the Policy to defend any individual or entity for claims arising from or relating to the Accident, including but not limited to those alleged in the Underlying Lawsuit;

vi.   Progressive has no duty under the MCS 90 on the Policy to indemnify or otherwise satisfy any judgment entered in connection with the Accident, including but not limited to those alleged in the Underlying Lawsuit;

vii.   Alternatively, to the extent Progressive has any obligation under the MCS 90 endorsement on the Policy to satisfy any judgment entered in connection with the Accident, such obligation only extends with respect to a judgment entered against The Morning Stars Trans LLC, USDOT No. 2478768, 20409 Sterling Bay Lane West, Ste. P, Cornelius, NC 28031;

13

WHEREFORE, Progressive Southeastern Insurance Co. prays that the Court enter judgment in its favor as set forth hereinabove and for such other and further relief as is just and proper.

Respectfully submitted,

**FLETCHER, FARLEY
SHIPMAN & SALINAS, LLP**

*/s/ Douglas D. Fletcher*\*
**DOUGLAS D. FLETCHER**
State Bar No. 07139500
Email: doug.fletcher@fletcherfarley.com
**KRISTI L. KAUTZ**
State Bar No. 24060069
Email: kristi.kautz@fletcherfarley.com
9201 N. Central Expressway, Suite 600
Dallas, Texas  75231
214-987-9600
214-987-9866 FAX
\*DESIGNATED LEAD COUNSEL

***And***

*/s/Robert "Rocky" C. Rogers*
Robert "Rocky" C. Rogers
 *Pro hac vice* pending
Email: rocky.rogers@momarlaw.com
Moseley Marcinak Law Group LLP
P.O. Box 26148
Greenville, SC 29616
864-248-6025 (office)
864-248-6029 (direct)
864-248-6035 (fax)

**ATTORNEYS FOR PLAINTIFF
PROGRESSIVE SOUTHEASTERN
INSURANCE CO.**

14

# EXHIBIT A

*PROGRESSIVE*®

3/13/2024
Policy Number: 03495191-001
Claim Number: 23-2280900

Progressive Southeastern Insurance Company

I certify that each of the following is true regarding the attached records, to the best of my knowledge and belief:

1. I am an employee familiar with the manner and process in which these records are created and maintained by virtue of my duties and responsibilities.

2. The records were made at or near the time of the occurrences of the matters set forth by, or from information transmitted by, people with knowledge of those matters.

3. The records were kept in the course of regularly conducted business activity; and

4. It was the regular practice of the business activity to make the record.


*Justine Ybarra*

Justine Ybarra

PRESTIGE INTNL INS
7200 W MCNAB ROAD
TAMARAC, FL 33321

**PROGRESSIVE**®
COMMERCIAL

Named insured


THE MORNING STARS TRANS LLC
2295 PARKLAKE DR NE
SUITE 440
ATLANTA, GA 30345

**Policy number:   03495191**

Underwritten by:
Progressive Southeastern Ins Co
January 18, 2023
Policy Period: Apr 10, 2022 - Apr 10, 2023
Page 1 of 4

**agent.progressive.com**
**Online Service**
Make payments, check billing activity, print
policy documents, update your policy or
check the status of a claim.

**1-954-716-7700**
**PRESTIGE INTNL INS**
Contact your agent for personalized service.

**1-800-444-4487**
For customer service if your agent is
unavailable or to report a claim.

# Commercial Auto
# Insurance Coverage Summary
This is your Declarations Page
Your coverage has changed

Your coverage began on April 10, 2022 at 12:01 a.m.  This policy expires on April 10, 2023 at 12:01 a.m.

This coverage summary replaces your prior one. Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for an auto may not be combined with the limits for the same coverage on another auto, unless the policy contract allows the stacking of limits. The policy contract is form 6912 (02/19). The contract is modified by forms 2852NC (02/19), Z433NC (04/08), 2371 (06/10), Z434NC (02/19), Z440 (06/10), MCS90 (99/99), 1198 (07/16), 4717 (02/19), 4852NC (02/19), 4881NC (02/19) and Z228 (01/11).

The named insured organization type is a corporation.

## Policy changes effective January 17, 2023

| | |
|---|---|
| Changes processed on: | January 17, 2023 10:26 a.m. |
| Premium change: | ▮▮▮▮▮▮▮ |
| Changes: | The 2030 Non-owned Attached Trailer has been removed. |
| | The 2016 VOLVO VN has been removed. |
| | Kibue Abreha has been removed from the policy. |

The changes shown above will not be effective prior to the time the changes were requested.


Continued

Policy number:  03495191
THE MORNING STARS TRANS LLC
Page 2  of 4

## Outline of coverage

### Auto coverage part

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | ▮ |
|   Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | | |
| Uninsured/Underinsured Motorist | $750,000 combined single limit | | ▮ |
| Uninsured Motorist Property Damage | Included in combined single limit | $▮ | ▮ |
| Medical Payments | Rejected | | -- |
| Trailer Interchange | $40,000 | ▮ | ▮ |
| **Subtotal policy premium** | | | ▮ |

### Commercial General Liability coverage part

| Description | Limits | Premium |
|---|---|---|
| Limited General Liability - Trucking Operations | $1,000,000/$2,000,000 | ▮ |
|   Each Occurrence | $1,000,000 | |
|   General Aggregate | $2,000,000 | |
|   Products/Completed Operations Aggregate | $2,000,000 | included |
|   Personal and Advertising Injury | $1,000,000/any one person or organization | included |
|   Damage to Premises Rented to You | $100,000/any one premises | included |
|   Medical Expense | $5,000/any one person | included |
| **Subtotal policy premium** | | ▮ |

### Motor Truck Cargo coverage part

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Motor Truck Cargo | $100,000 | | ▮ |
| Refrigeration Breakdown | included in Motor Truck Cargo Limit | ▮ | included |
| **Subtotal policy premium** | | | ▮ |
| Additional Insured Fee | | | 100 |
| **Total 12 month policy premium and fees** | | | ▮ |

## Rated drivers

1. MENGISTEAB TEKLE
2. SOLOMUN KIDANE
3. Benyam Ferede
4. Dejene Aseresie
5. Abush Abraham
6. Hailemichael Mirach
7. Nurhussan Essa
8. Amin Omer
9. Lali Nati
10. Yohannes Haile
11. Aman Tefera
12. Sami Abdu



Continued

Policy number:  03495191
THE MORNING STARS TRANS LLC
Page 3   of 4

## Rated commodities

1. SCRAP METAL
2. PAPER AND PAPER PRODUCTS
3. PLASTIC PRODUCTS
4. SEAFOOD (FROZEN)

## Auto coverage schedule

1. **2012 PTRB 386**
   VIN: **1XPHD49X7CD154182**  Garaging Zip Code: 28031  Radius: 100 miles
   Personal use: N  Body type: Truck Tractor

| Liability Premium | Liability Premium | UM/UIM Premium | UM PD Premium | Auto Total |
|---|---|---|---|---|
| | $█████ | $████ | $████ | $█████ |

2. **2030 Non-owned Attached Trailer ***
   VIN: **None**  Garaging Zip Code: 28031  Radius: 100 miles
   Personal use: N  Body type: 20

| Liability Premium | Liability Premium | Auto Total |
|---|---|---|
| | $███ | $███ |

3. **2007 FREIGHTLINER CONVENTIONAL**
   VIN: **1FUJA6CKX7LW28621**  Garaging Zip Code: 28031  Radius: 100 miles
   Personal use: N  Body type: Truck Tractor

| Liability Premium | Liability Premium | UM/UIM Premium | UM PD Premium | Auto Total |
|---|---|---|---|---|
| | $████ | $████ | $████ | $█████ |

4. **2018 FREIGHTLINER CASCADIA 126**
   VIN: **3AKJHHDR6JSKC1468**  Garaging Zip Code: 28031  Radius: 100 miles
   Personal use: N  Body type: Truck Tractor

| Liability Premium | Liability Premium | UM/UIM Premium | UM PD Premium | Auto Total |
|---|---|---|---|---|
| | $█████ | $████ | $████ | $█████ |

5. **2014 VOLVO VN**
   VIN: **4V4NC9EH2EN162338**  Garaging Zip Code: 28031  Radius: 100 miles
   Personal use: N  Body type: Truck Tractor

| Liability Premium | Liability Premium | UM/UIM Premium | UM PD Premium | Auto Total |
|---|---|---|---|---|
| | $█████ | $████ | $████ | $█████ |

6. **2030 Non-owned Attached Trailer ***
   VIN: **None**  Garaging Zip Code: 28031  Radius: 100 miles
   Personal use: N  Body type: 20

| Liability Premium | Liability Premium | Auto Total |
|---|---|---|
| | $███ | $███ |


Continued

Form 6489 NC (07/20)

7.   **2030 Non-owned Attached Trailer \*\***
VIN: **None**  Garaging Zip Code: 28031  Radius: 100 miles
Personal use: N   Body type: 20

Liability
Premium

Liability
Premium

$██

Auto Total

$██

8.   **2030 Non-owned Attached Trailer \*\***
VIN: **None**  Garaging Zip Code: 28031  Radius: 100 miles
Personal use: N   Body type: 20

Liability
Premium

Liability
Premium

$██

Auto Total

$██

\*\*Non-Owned trailer but only while attached to a listed power unit specifically described on the declarations page.

## Premium discount

Policy

03495191                                            CDL Experience

## Additional Insured information

1.   Additional Insured                CARGO EXPRESS INC.
7640 MILES DR.
INDIANAPOLIS, IN 46231

2.   Additional Insured                WERNER ENTERPRISES
PO BOX 45214
OMAHA, NE 68145

3.   Additional Insured                WESTIN TRADING, INC
655 CRAIG RD, S
SAINT LOUIS, MO 63141

4.   Additional Insured                J.T. McKinney Co.
2601 Saturn St
Brea, CA 92821

5.   Additional Insured                Red Lightning Logistics
148 W. Main St
Cartersville, GA 30120

# CARGO FORMS

**PLEASE READ YOUR POLICY AGREEMENT CAREFULLY.**
Provisions of this Agreement and its endorsements restrict coverage. Be certain you understand all of the coverage terms, the exclusions, and your rights and duties.

**All forms in the endorsement section do not automatically pertain to your policy.** Please refer to your declarations page for form numbers associated with your policy. Only those endorsements whose form numbers appear on your declarations page apply to your policy. All other parts of the policy that have not been modified by an endorsement will remain unchanged.

This booklet contains Endorsement Form Z434 (01/11) and a section of other optional endorsements.



**All forms appearing in this endorsement section do not automatically pertain to your policy. Only those endorsements whose form numbers appear on your declarations page apply to your policy.**

| <u>Form No./Description</u> | <u>Page</u> |
| --- | --- |

Z434 (01/11)

**Motor Truck Cargo Legal Liability Coverage Endorsement** . . . . . . . . . . . . . . . . . . **1**

2369 (01/11)

**Courier Coverage Endorsement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

2370 (06/10)

**Mobile/Modular Homes Coverage Endorsement** . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Z440 (09/09)

**Refrigeration Breakdown Coverage Endorsement** . . . . . . . . . . . . . . . . . . . . . . . . 16

Form Z434 (01/11)

## **MOTOR TRUCK CARGO LEGAL LIABILITY COVERAGE ENDORSEMENT**

Except as specifically modified by this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

### **INSURING AGREEMENT**

Subject to the Limit of Liability, if **you** pay the premium for this Motor Truck Cargo Legal Liability Coverage, **we** will pay for the direct physical **loss** to **covered property** that **you** are legally liable to pay as a **trucker** under a written bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage. For this coverage to apply, the **covered property** must, at the time of **loss**, be in **your** exclusive physical custody and control:

1. while **in due course of transit** in, on, or attached to an **insured auto**; or
2. during **loading or unloading**.

Coverage applies for **loss** to **covered property** only if the **loss** is caused by a **covered peril**. For **covered property** that is **your** property, **our** payment is not contingent upon **your** liability.

**We** have the option to settle or defend any claim or lawsuit for damages covered by this endorsement. However, **we** have no duty to defend **you** against any lawsuit to which this insurance does not apply. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the limit of liability for this coverage has been exhausted by payment of judgments or settlements.

### **ADDITIONAL DEFINITIONS**

The following additional definitions apply throughout this Motor Truck Cargo Legal Liability Coverage endorsement whenever the defined term appears in boldface type, whether in the singular, plural, or possessive:

1. "**Covered peril**" means any external risks of direct physical **loss** to **covered property**, except for those listed in a. through k. below as Excluded Perils.

   <u>**Excluded Perils: Please read the following list of Excluded Perils carefully. Coverage will not be afforded under this Motor Truck Cargo Legal Liability Coverage endorsement for these types of perils. We** will not pay for any **losses** to **covered property** caused by, resulting in or from, or arising out of these Excluded Perils regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.</u>

1

a. **Civil Authority**

Order of any civil authority, including seizure, confiscation, destruction, or quarantine of property. However, **we** will pay for **loss** or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this endorsement.

b. **Nuclear Hazard, Pollutants**
   (i) Any weapon employing atomic fission or fusion; or
   (ii) Nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct **loss** caused by resulting fire if the fire would be covered under this endorsement.
   (iii) The release, discharge, seepage, migration, dispersal, or escape of **pollutants**, unless the release, discharge, seepage, migration, dispersal, or escape is caused by a **specified peril**.

c. **War, Civil Commotion**
   (i) **War**, including undeclared or civil war;
   (ii) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or agents;
   (iii) Insurrection, rebellion, revolution, usurped power, or action taken by a governmental authority to hinder or defend against any of these; or
   (iv) Strikers, locked out workmen, or persons taking part in labor disturbances or riots, or civil commotions.

d. **Inherent Vice**

Contamination or deterioration, including corrosion; decay; fungus; mildew; mold; rot; rust; insects; vermin; change in flavor; or any quality, fault, or weakness in the **covered property** that causes it to damage or destroy itself.

e. **Criminal, Fraudulent, or Dishonest Acts**

Criminal, fraudulent, dishonest, or illegal acts alone or in collusion with another, whether or not such acts occurred during regular hours of employment, by:
   (i) **you**;
   (ii) **your** partners, officers, directors, trustees, or joint ventures;
   (iii) others to whom **you**, **your** partners, officers, directors, trustees, or joint ventures entrust the property;
   (iv) others who have an interest in the property; or
   (v) the employees or agents of any party specified in (i) through (iv) above.
This Excluded Peril does not apply to acts of destruction by **your** employees, but **we** will not pay for theft by employees.

f. **Consequential Loss**

Loss of use, loss of market, loss of market value, or delay; or any other remote or consequential loss, other than direct physical **loss**, to **covered property**.

2

g. **Breakdown, Temperature, Humidity**

   (i) Mechanical or electrical breakdown or failure including breakdown or failure of a refrigeration unit or its associate component parts, or heating equipment installed in a cargo component; or

   (ii) Wetness, humidity, dampness, dryness, or changes in or extremes of temperature unless it results from damage to a transporting vehicle caused by a **covered cause of loss**.

   However, this Excluded Peril does not apply to **loss** caused by a fire or explosion if such fire or explosion would be covered under this endorsement.

h. **Voluntary Parting, Nondelivery, Mysterious Disappearance**

   (i) Voluntary parting with title to, or possession of, the property due to fraudulent scheme, trick, or false pretense;

   (ii) Nondelivery or misdelivery; or

   (iii) Mysterious or unexplained disappearance; shortage of any property upon taking inventory; or theft of a part of the contents of any shipping package.

i. **Fines, Penalties, and Costs**

   Any costs, fines, punitive damages, assessments, attorney fees, court costs, or other penalties that **you** are required or liable to pay as a result of **your** violation of any law or regulation, or as a result of the violation of any law or regulation relating to any delay in the payment, denial, or settlement of any claim.

j. **Pre-existing Damage**

   With respect to auto haulers, **we** will not pay for pre-existing damage to vehicles being transported by the **insured**. For coverage to apply, the **insured** must provide to **us** a signed inspection document attesting to the condition of covered property before loading.

k. **Installation Operations**

   **Your** operation as rigger, hoister, erector, installer, or dismantler.

2. "**Covered property**" means lawful goods and merchandise of others, except for the items listed in a. through j. below as Excluded Properties. **Covered property** includes **goods and merchandise** owned by **you** while loaded for shipment in or on an **insured auto**, whether or not shipped under a bill of lading or shipping receipt. When used in this endorsement, **goods and merchandise** means products destined for market and/or sale. **Covered property** does not include any equipment **you** own that is being transported between work sites. **Covered property** also does not include **autos you** own, lease, hire, rent, or borrow.

   <u>**Excluded Properties: Please read the following list of excluded properties carefully. Coverage will not be afforded under this Motor Truck Cargo Legal Liability Coverage endorsement for loss to these types of properties.**</u>

a. **Art, Jewelry, Metals, Money, Papers**

Objects of art, including paintings and statuary; jewelry, precious or semi-precious stones; precious or semi-precious metals or alloys; money and securities of any kind including monies collected or not collected under a C.O.D., bill of lading, or shipping receipt; food stamps, lottery tickets, notes, money orders, traveler's checks, accounts, bills, deeds, or other evidences of debt; valuable papers of any kind including passports, manuscripts, mechanical drawings, and blueprints.

b. **Contraband**

Contraband or property in the course of illegal transportation or trade.

c. **Live Animals**

Live animals, birds, or fish, including cattle or poultry, unless death results or is made necessary within 24 hours by a **specified peril**; or unless they escape or stray from the scene of **loss** and cannot be located, but only if the escape or straying is caused by a **specified peril**. **We** do not cover **your** liability for reduction in the market value or downgrading of live animals, birds, or fish due to minor injuries, scrapes, and bruises.

d. **Other Carrier**

Any property while in the custody of any other carrier.

e. **Property Not Under Bill of Lading**

Any property for which no bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage has been issued, or which is carried gratuitously or without charge.

f. **Storage**

Any property in or on an **insured auto** after it has remained at any location for more than 72 hours. This includes locations **you** own or use. This exclusion does not apply to delays in transportation outside of **your** control due to severe weather, as long as transport resumes as soon as the weather emergency has ended.

g. **Transporting Vehicles**

Any transporting vehicle or conveyance, including its equipment such as tarpaulins, shipping containers, chains, or binders.

h. **Explosive or Radioactive Material**

Explosives, ammunition, fireworks, or radioactive material.

i. **Pharmaceuticals, Tobacco, Alcohol**

Prescription pharmaceuticals; tobacco products; or alcoholic beverages, other than beer or wine.

j. **Mobile/Modular Homes**

**Mobile/Modular Homes** whether carried on or attached to the **insured auto**.

4

3. "**Earned freight charges**" means freight charges from the point of departure to the point of **loss**.

4. "**In due course of transit**" means being shipped from the time **you** assume care, custody, or control of the **covered property** for the purpose of the actual movement of **covered property** from the point of shipment bound for a specific destination and ending when one of the following first occurs:
   a. the **covered property** is accepted by, or on behalf of, the consignee at the intended destination;
   b. the **covered property** is accepted by, or on behalf of, the consignee at any intermediate point short of reaching the original intended destination;
   c. 72 hours after arrival at destination; or
   d. any other stop that exceeds 72 hours.

   **In due course of transit** includes ordinary, reasonable, and necessary stops, interruptions, delays, or transfers incidental to the route and method of shipment.

5. "**Insured auto**" is used in this endorsement as defined in the General Definitions section of **your** Commercial Auto Policy, and includes **trailers** listed on the **declarations page**. In addition, as used in this endorsement, **insured auto** includes:
   a. Non-owned **trailers** designed primarily for travel on public roads while **in due course of transit**; and
   b. Any **temporary substitute auto**.

   With respect to this endorsement, if **we** provide coverage for an additionally acquired **auto**, **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

6. "**Loading or unloading**" means the direct physical process of hoisting, lifting, or moving **covered property**:
   a. onto an **insured auto** from the ground or loading docks adjacent to such **insured auto**; or
   b. off of an **insured auto** to the place where it is finally delivered.

   However, for auto haulers, **loading or unloading** means moving **covered property** onto or off of **your insured auto**, including moving a motor vehicle under its own power solely for the purpose of **loading or unloading** it from the **insured auto**, but no more than one road mile from the **insured auto**.

7. "**Mobile/Modular Homes**" means prefabricated housing units, factory built homes, mobile homes, and modular homes. The term does not include motor homes or travel trailers designed for use on public roads.

8. "**Pollutant**" is used in this endorsement as defined in the General Definitions section of **your** Commercial Auto Policy. Additionally, as used in this endorsement, it includes electrical or magnetic emissions, whether visible or invisible, and sound emissions.

9. "**Specified peril**" means:
   a. fire, lightning, or explosion;

5

b. smoke, but this cause of **loss** does not include smoke from exhaust fumes or gases of the transporting vehicles, agricultural smudging, or industrial operations;

c. windstorm or hail, but this cause of **loss** does not include **loss** caused by or resulting from:

  (i) heat, cold, or change in or extremes of temperature; or

  (ii) ice (other than hail), snow, or sleet, whether driven by wind or not;

d. collision, overturn, or derailment of a transporting conveyance. With respect to live animals, birds, or fish, this cause of **loss** does not include **loss** caused by or resulting from the **insured auto** coming in contact with:

  (i) the roadbed;

  (ii) curbing;

  (iii) rails or ties of railways; or

  (iv) a stationary object while backing for **loading or unloading** purposes;

e. collapse of a bridge, wharf, dock, platform, or culvert;

f. stranding, sinking, burning, or collision on any ferry;

g. flood, meaning the rising of any natural body of water; and

h. theft, but excluding pilferage by **you** or **your** employees, anyone with a financial interest in the cargo or their employees, authorized representatives or anyone else entrusted with the cargo. Theft does not include **loss** caused by or resulting from:

  (i) Wrongful conversion; or

  (ii) Acceptance of counterfeit money, fraudulent post office or express money orders, or checks or promissory notes not paid upon presentation.

  With respect to live animals, birds, or fish, **we** will extend this theft coverage to pay for direct physical loss to live animals, birds, or fish caused by theft of:

  (i) The entire load of live animals, birds, or fish; or

  (ii) The **insured auto** in or on which the live animals, birds, or fish are loaded.

  However, this coverage extension does not apply to the loss of individual animals or less than the entire load of live animals, birds, or fish unless the entire **insured auto** is first stolen.

10. "**Trucker**" means any person, organization, or motor carrier engaged in the business of transporting property for hire.

## ADDITIONAL PAYMENTS

In addition to the applicable limit of liability:

1. **Earned Freight**

   **We** will pay **earned freight charges** that are due to **you** if **you** are unable to collect them from others because of a **loss** to **covered property** that is caused by a **covered peril**. The most **we** will pay under this additional coverage for all freight charges in any one **loss** is $10,000.

6

2. **Removal Expenses**

a. **We** will pay removal expenses incurred to remove debris of **covered property**, which results from a **loss** caused by a **covered peril** that occurs during the policy period. The term "debris" does not include **pollutants**.

b. **We** will also pay removal expenses incurred to extract **pollutants** from land or water, if the discharge, dispersal, migration, or release of the **pollutants** is caused by or results from **loss** to **covered property**, and if such **loss** is caused by a **covered peril** during the policy period.

   **We** do not pay for:

   (i) the cost of testing; evaluating; observing; or recording the existence, level, or effects of **pollutants**. However, **we** will pay the cost of testing that is necessary for the extraction of **pollutants** from land or water.

   (ii) any damage to **your insured auto** from **pollutants**.

c. The most **we** will pay for all removal expenses described in a. or b. above arising out of any one **loss** is $25,000.

d. The expenses for removal of **covered property** debris and **pollutants** will be paid only if they are reported to **us** in writing within 180 days of the earlier of:

   (i) the date of the direct physical **loss**; or

   (ii) the end of the policy period.

3. **Expenses in Defense or Settlement of Claims**

   **We** will pay, with respect to any claim **we** investigate or settle, or with respect to any lawsuit against any insured **we** defend:

a. all expenses **we** incur.

b. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. However, **we** have no duty to purchase a bond in a principal amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds.

c. all reasonable expenses incurred by **you** at **our** request, including actual loss of earnings up to $250 per day because of time off from work.

d. all costs taxed against the insured in any lawsuit against the insured **we** defend.

e. interest accruing after entry of judgment on that part of the judgment that does not exceed **our** limit of liability for any lawsuit **we** defend. This does not apply if **we** have not been given notice of suit or the opportunity to defend an insured. **Our** payment, offer in writing, or deposit in court of that part of the judgment that does not exceed **our** limit of liability ends **our** duty to pay interest that accrues after the date of **our** payment, written offer, or deposit.

f. interest accruing before entry of judgment on that part of the judgment that does not exceed **our** limit of liability for any lawsuit **we** defend. **Our** offer to pay that part of the judgment that does not exceed **our** limit of liability ends **our** duty to pay interest that accrues after **our** offer.

4. **Sue and Labor**

a. **We** will pay the necessary expenses **you** incur to prevent further **loss** to **covered property** if that expense is incurred within a 12-hour period after the **covered peril** occurs.

7

b. In the event of an occurrence, it becomes necessary to move the **covered property** in order to avoid a **loss** to the **covered property**, **we** will pay the reasonable and necessary costs incurred by **you** to move the **covered property** away from the location of the occurrence.

c. The most **we** will pay for the aggregate of all expenses incurred under sub-parts a. and b. above is $7,500.

## LIMITS OF LIABILITY

1. **Amount of Payment**
   a. Subject to subsections 2., 3., and 4. below, in the event of a **loss**, **we** will pay the least of the following:
      (i) **Your** legal liability for the direct physical **loss** to the **covered property**;
      (ii) The declared value of the **covered property** shown in the bill of lading, tariff documents, rate confirmation sheet, shipping receipt, or contract of carriage;
      (iii) For household goods, the amount specified in any advice of coverage, or other document evidencing an agreed valuation for property in transit;
      (iv) The actual cost to the shipper to repair or replace the **covered property** with material of like kind and quality, not including any claim for diminution of value to the **covered property**; or
      (v) The "Cargo" limit shown on the **declarations page**.
   b. Regardless of the number of **insured autos** or **trailers** involved, insureds, premiums paid, policies issued by **us**, claims made, or lawsuits brought, the most **we** will pay for **loss** to **covered property** in any one occurrence is the limit of liability shown on the **declarations page** for "Cargo Liability" coverage.

2. **Deductible**
   For each **loss** that qualifies for coverage under this endorsement, the deductible shown on the **declarations page** for this "Cargo Liability" coverage will be applied to reduce the **loss** payable on the **covered property**. If there is other **loss** arising out of a single occurrence that applies under this endorsement, or under the associated Commercial Auto Policy, and/or any other endorsement attached thereto, only one deductible will be applied to the aggregate of all **loss** components. The highest deductible applicable to any single coverage implicated in the **loss** will apply.

3. **Insurable Interest**
   **We** will not cover more than **your** insurable interest in any **covered property**.

4. **Sets or Parts**
   a. Sets
      The **loss** to an article that is part of a set will not be considered a **loss** to the entire set. Therefore, if there is a **loss** to **covered property** that is part of a set, **we** at **our** option may choose to:
      (a) repair or replace any part to restore the pair or set to its value before the **loss** or damage; or
      (b) pay the difference between the value of the pair or set before and after the **loss** or damage.

8

b. Parts

If **loss** is to a part of **covered property** that consists of several parts, **we** will pay for only the lost or damaged part.

## DUTIES IN CASE OF A LOSS

The following additional duties apply under this Motor Truck Cargo Legal Liability Coverage endorsement:

1. **You** must take all reasonable steps to protect **covered property** at the time of and after a **loss** to avoid further damage.

2. **You** must allow **us** to have all property involved in an **accident** or **loss** inspected and appraised before its repair or disposal.

3. **You** must give **us** a copy of the descriptions and schedules from all insurance policies applicable to the **covered property** that was destroyed or damaged.

4. **You** must send **us** a signed, sworn proof of loss containing all the information **we** request to settle the claim. **You** must do this within 60 days after **our** request. **We** will supply **you** with the necessary forms.

5. **You** must, as often as **we** reasonably require, submit, and so far as within **your** power, cause all other persons interested in the **covered property** and members of their households and employees to submit, to examination under oath by any person **we** name, and in connection with such claim to produce for examination all books of accounts, uniform bills of lading, shipping receipts, invoices, drivers' log books, and any other documents, at such reasonable time and place as **we** may designate, and permit extracts and copies thereof to be made.

6. Unless **we** give **our** permission, **you** may not dispose of the carcass(es) of live animals, birds, or fish until **we** inspect or examine such carcass(es). However, this clause does not apply if such disposal is required by law or ordinance.

## GENERAL PROVISIONS

1. When used in this endorsement, subsection 3 - Other Insurance of the General Provisions section of **your** Commercial Auto Policy is deleted in its entirety and replaced by the following:

   a. **Other Insurance**
      (i) **You** may have other insurance subject to the same terms, conditions, and provisions as the insurance provided by this endorsement. If **you** do, **we** will pay **our** share of the covered **loss**. **Our** share is the proportion that the applicable limit of liability under this endorsement bears to the total of the limits of liability of all policies covering on the same basis.

9

(ii) If there is other insurance covering the same **loss**, other than that described in paragraph (i) above, **we** will pay only for the amount of the covered **loss** in excess of the amount due from that other insurance, whether **you** can collect on it or not. However, **we** will not pay more than **our** applicable limit of liability.

b. **Insurance Under Two or More Coverages**

If two or more of this endorsement's coverages apply to the same **loss**, **we** will not pay more than the amount of the **loss** as determined under subsection 1 - Amount of Payment in the Limits of Liability section of this endorsement, or the limit of liability applicable to the most specific coverage, whichever is less.

2. The following additional General Provisions apply to this Motor Truck Cargo Legal Liability Coverage endorsement:

a. **Payment of Loss**

(i) A covered **loss** will be payable 30 days after a satisfactory proof of loss is received or a final judgment award has been entered.

**We** may make payment for a **loss** either to **you** or the owner of the property. **We** will not pay the owner more than their financial interest in the property. If **we** make a payment to the owner of the property, this shall be in full satisfaction of any claim by **you** for which such payment has been made.

If a **loss** has been paid or made good by others, **we** will not be liable for any part of the **loss**. Payment for a **loss** is required only if **you** have fully complied with all the terms of this policy.

(ii) **We** have the following options:
   (a) pay the value of the **loss** as determined under subsection 1 - Amount of Payment in the Limits of Liability section of this endorsement;
   (b) pay the cost of repairing or replacing the **covered property**;
   (c) rebuild, repair, or replace the **covered property** with property of like kind and quality, to the extent practicable, and within a reasonable time; or
   (d) take all or any part of the damaged property at an agreed value.

b. **Abandonment**

**We** may keep all or part of the property at the agreed or appraised value, but **you** may not abandon any property to **us** without **our** written consent.

c. **Conformity with Statute**

When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

d. **Recovered Property**

If **you** or **we** recover any **covered property** for which **we** have made payment under this policy, **you** or **we** will promptly notify the other of the recovery. At **your** option, the property will be returned to or retained by **you** or it will become **our**

10

property. If **you** keep the property, **you** must return to **us** the amount **we** paid to **you** for the **covered property**. **We** will pay recovery expenses and the expenses to repair the recovered **covered property**, subject to the limit of liability.

If **we** have already paid **you** the **loss** amount at the time of any salvage or recovery, the amount **you** receive for the recovered **covered property** will accrue entirely to **our** benefit until **you** have paid any amounts owed to **us** as a result of the adjustment to the **loss** amount.

e.  **Salvage**
    Any recovery of salvage on a **loss** will accrue entirely to **our** benefit until the sum **we** paid has been replaced. If **our** benefit of salvage recovery exceeds the sum that **we** paid, **we** will return the difference to **you**, less any salvage recovery expenses.

f.  **Policy Period and Territory**
    Coverage under this endorsement applies only to **losses** that occur during the policy period shown on the **declarations page** and which occur within the United States or Canada.

g.  **Coverage Required by Filings**
    If **we** have filed a certificate of insurance on **your** behalf with any regulatory or governmental agency, and:
    (i)  **we** are required to pay any judgment entered against **you**; or
    (ii) **we** agree to settle a claim or lawsuit;
    arising out of a **loss** that is covered solely because of the existence of such certificate of insurance, **we** will be obligated to pay no more than the minimum amount required by that agency or any applicable law. If any payment is based solely on the existence of such certificate, **you** must reimburse **us** in full for **our** payment, including legal fees and costs **we** incurred, whether the payment is made as a result of judgment or settlement.

h.  **No Benefit to Bailee**
    No person or organization other than **you**, having custody of **covered property**, will benefit from this insurance.

i.  **Transfer of Rights of Recovery Against Others to Us**
    If any person or organization to or for whom **we** make payment under this endorsement has rights to recover damages from another, those rights are transferred to **us** to the extent of **our** payment. That person or organization must do everything necessary to secure **our** rights and must do nothing after **loss** to impair them. But **you** may waive **your** rights against another party in writing:
    (i)  Prior to a **loss** to the **covered property**.
    (ii) After a **loss** to the **covered property**, but only if, at the time of **loss**, that party is one of the following:
        (a)  someone insured by this insurance; or

11

(1)  owned or controlled by **you**; or
(2)  that owns or controls **you**.

j.  **Legal Action Against Us**

No one may bring a legal action against **us** under this endorsement unless:
(i)  There has been full compliance with all the terms of this policy; and
(ii)  The action is brought within two years after **you** first have knowledge of the direct **loss** or damage.

k.  **Premiums**

The first named insured shown on the **declarations page**:
(i)  Is responsible for the payment of all premiums; and
(ii)  Will be the payee for any return premiums **we** pay.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THIS POLICY REMAIN UNCHANGED.**

Form 2369 (01/11)

### COURIER COVERAGE ENDORSEMENT

This endorsement modifies insurance provided by the Commercial Auto Policy. All terms and conditions of the policy apply unless modified by this endorsement.

Subject to the Limits of Liability, if "business documents/non-negotiable securities" appears on **your declarations page**, **we** agree with **you** that **your** Motor Truck Cargo Endorsement is modified as follows.

#### INSURING AGREEMENT

The following paragraph is deleted:

Subject to the Limit of Liability, if **you** pay the premium for this Motor Truck Cargo Legal Liability Coverage, **we** will pay for the direct physical **loss** to **covered property** that **you** are legally liable to pay as a **trucker** under a written bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage. For this coverage to apply, the **covered property** must, at the time of **loss**, be in **your** exclusive physical custody and control:

1.  while **in due course of transit** in, on, or attached to an **insured auto**; or
2.  during **loading or unloading**.

Coverage applies for **loss** to **covered property** only if the **loss** is caused by a **covered peril**. For **covered property** that is **your** property, **our** payment is not contingent upon **your** liability.

12

Subject to the Limit of Liability, if **you** pay the premium for this Motor Truck Cargo Legal Liability Coverage, **we** will pay for the direct physical **loss** to **covered property** that **you** are legally liable to pay as a **carrier for hire** under a written bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage. For this coverage to apply, the **covered property** must, at the time of **loss**, be in **your** exclusive physical custody and control:

1.    while **in due course of transit** in, on, or attached to an **insured auto**; or
2.    during **loading or unloading**.

Coverage applies for **loss** to **covered property** only if the **loss** is caused by a **covered peril**. For **covered property** that is **your** property, **our** payment is not contingent upon **your** liability.

### ADDITIONAL DEFINITIONS

#### 2. "**Excluded properties**":

The following section is deleted in its entirety:

a.    **Art, Jewelry, Metals, Money, Papers**
Objects of art, including paintings and statuary; jewelry, precious or semi-precious stones; precious or semi-precious metals or alloys; money and securities of any kind, including monies collected or not collected under a C.O.D., bill of lading, or shipping receipt; food stamps, lottery tickets, notes, money orders, traveler's checks, accounts, bills, deeds, or other evidences of debt; valuable papers of any kind, including passports, manuscripts, mechanical drawings, and blueprints.

and replaced by:

a.    **Jewelry, Metals, Money**
Jewelry, precious or semi-precious stones; precious or semi-precious metals or alloys; or money and securities that are in negotiable form.

The following section is deleted in its entirety:

i.    **Pharmaceuticals, Tobacco, Alcohol**
Prescription pharmaceuticals; tobacco products; or alcoholic beverages, other than beer or wine.

and replaced by:

i.    **Controlled Drugs, Tobacco, Alcohol**
**Controlled drugs**; tobacco products; or alcoholic beverages, other than beer or wine. **Controlled drugs** means substances listed in either Schedule 1 or Schedule 2 of the Comprehensive Drug Abuse and Control Act of 1970, as amended.

13

11. "**Carrier for hire**" means any person or organization engaged in the business of transporting property for hire.

12. "**Documents**" means papers (including checks, drafts, money orders, notes, and securities in non-negotiable form) and/or data processing media that contain information.

**LIMITS OF LIABILITY**

The following is added:

5. **Documents** will be valued at the lesser of the following:
   a. the necessary cost to **you** or **your** customer to reconstruct documents (including checks, drafts, money orders, notes, and securities), including the expense of stop payment on checks if necessary; or
   b. the cost of replacement with substantially identical property, including premiums for loss instrument bonds if such expense is required to effect replacement or reconstruction.

   In the event that a document cannot be reconstructed or replaced with substantially identical property, it will be valued at its cost *in blank* plus any transcription costs actually incurred.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED**.

Form 2370 (06/10)

## MOBILE/MODULAR HOMES COVERAGE ENDORSEMENT

This endorsement modifies insurance provided by the Commercial Auto Policy. All terms and conditions of the policy apply unless modified by this endorsement.

Subject to the Limits of Liability, if "mobile/modular homes" appears on **your declarations page**, we agree with **you** that **your** Motor Truck Cargo Legal Liability Coverage Endorsement is modified as follows.

**ADDITIONAL DEFINITIONS**

1. The following Excluded Perils, under the definition "**Covered peril**," are modified as follows:

   (a) Excluded Perils k. Installation Operations is deleted and replaced by the following:

k. **Installation Operations**

**Your** operation as rigger, hoister, erector, installer, dismantler, including setting up of **mobile/modular homes**.

(b) The following is added to Excluded Perils:

l. **Frame Collapse or Damage**
   (i) **Loss** from the collapse or failure of the frame, undercarriage, or suspension system of a **mobile/modular home**, trailer, container, or other vehicle being towed as covered cargo by the **insured auto**, including but not limited to axles, wheels, tongue, and tires;
   (ii) **Loss** from sagging, warping, twisting, or loss of windows or doors from their frames unless caused directly by fire, collision or upset;

m. **Personal Property**
   Loss to personal property that is not an integral part of a **mobile/modular home**.

n. **Collision with Insured Auto**
   **Loss** due to any collision between the **insured auto** and the **mobile/modular home**, unless such collision is the result of a **covered cause of loss**.

o. **Collision with Roadway**
   **Loss** due to any collision between the **mobile/modular home** with any portion of the road or pathway being traveled by the **insured auto**, or collision with adjacent curbing, or with the rails or ties of street, steam or other railroad, unless such collision is the result of a **covered cause of loss**.

2. "**Excluded properties**" is modified as follows:

Exclusion j. is deleted in its entirety.

**LIMITS OF LIABILITY**

4. **Sets or Parts**

The following is added:

c. In the event of a total loss to one section of a multi-section **mobile/modular home** while on or attached to an **insured auto** and it is not possible to repair or replace the damaged section, **we** at our option may agree to pay for all sections of the **mobile/modular home** and take the title to the undamaged section(s).

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form Z440 (06/10)

## **REFRIGERATION BREAKDOWN COVERAGE ENDORSEMENT**

This endorsement modifies the Motor Truck Cargo Legal Liability Coverage endorsement. Except as specifically modified by this Refrigeration Breakdown Coverage endorsement, all provisions of the Motor Truck Cargo Legal Liability Coverage endorsement apply.

**We** agree with **you** that the insurance provided under **your** Motor Truck Cargo Legal Liability Coverage endorsement is modified as follows:

### **INSURING AGREEMENT**

The following is added to the Insuring Agreement:

Subject to the Limit of Liability, if **you** pay the premium for the Refrigeration Breakdown Coverage endorsement, **we** will pay for **your** legal liability for direct physical **loss** to **covered property**, caused by spoilage or change in temperature, resulting directly from the sudden and accidental breakdown of refrigeration or heating units on an **insured auto**.

### **ADDITIONAL DEFINITIONS**

Under the definition of "**covered peril**," Excluded Peril "g." is deleted and replaced by:

g. **Breakdown, Temperature, Humidity**
   (i) Humidity, dampness, dryness, or changes in or extremes of temperature, other than such **loss** caused by the sudden and accidental breakdown of refrigeration or heating units on the **insured auto**; or
   (ii) Mechanical or electrical breakdown or failure, other than the sudden and accidental breakdown of refrigeration or heating units on the **insured auto**. However, this Excluded Peril does not apply to **loss** caused by a fire or explosion if such fire or explosion would be covered under this endorsement.

### **ADDITIONAL PAYMENTS**

The following is added to the Additional Payments section:

5. **Additional Expense to Temporarily Store Covered Property**
   In addition to the applicable limit of liability for the Refrigeration Breakdown Coverage, **we** will pay any reasonable additional expenses that **you** incur to temporarily store **covered property** in a controlled-temperature environment in order to avoid or minimize **loss** to such property due to spoilage or change in temperature. Such

16

temporary storage must be directly made necessary by the sudden and accidental breakdown of a refrigeration or heating unit of **your insured auto**. However, under this Additional Expense to Temporarily Store Covered Property coverage, **we** will not pay for:

a. Expenses incurred to repair or replace the refrigeration or heating unit;
b. Costs or penalties incurred for detention or delay of vehicles, **trailers**, or containers to which the refrigeration or heating unit is attached; or
c. Additional lodging or meal expenses for the driver of the **insured auto** that exceed $150 per day or $300 total.

The most **we** will pay with respect to any one occurrence under this Additional Expense to Temporarily Store Covered Property coverage is $2,500.

**LIMITS OF LIABILITY**

The following is added to subsection 2, Deductible:

For each **loss** that qualifies for coverage under the Refrigeration Breakdown Coverage endorsement, a deductible of $2,500 will be applied to reduce the **loss** payable with respect to the **covered property**.

**EXCLUSIONS**

The following exclusions are added:

Coverage under this Refrigeration Breakdown Coverage endorsement will not apply for **loss** caused by, resulting from, or arising out of breakdown of the refrigeration or heating unit due to any of the following, regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**:

1. Failure to provide adequate fuel supply;
2. Failure to maintain crankcase oil or refrigerant level within the manufacturer's specifications;
3. Intentional destruction or damage to automatic temperature control units by an employee; or
4. Failure to maintain the calibration of the refrigeration or heating unit and/or failure to maintain the refrigeration or heating unit within the manufacturer's specifications.

**DUTIES IN CASE OF A LOSS**

The following are added to the Duties in Case of a Loss section:

7. **You** must take all reasonable steps to protect **covered property** at the time of and after a **loss** to avoid further damage, including but not limited to storage of the cargo in a properly temperature controlled facility or alternate trailer;
8. **You** must allow **us** access to the refrigeration or heating equipment prior to its repair unless a delay in repair would imperil the cargo;
9. **You** must provide **us** access to all maintenance and repair records for the failed refrigeration or heating unit; and

17

10. **You** must allow **us** access to all records establishing the proper use of the equipment, including any and all electronic records or logs generated by the unit.

**GENERAL PROVISIONS**

The following is added to the General Provisions section:

I. Refrigeration/Heating Equipment Maintenance.
   1. **You**, or **your** employee, must check the refrigeration and heating equipment every 12 hours while it is being operated; and
   2. At least once a month, **you** must:
      a. Have the refrigeration and heating equipment inspected by a manufacturer-authorized representative, or other trained refrigeration specialist, which may include **you** or **your** employee;
      b. Promptly perform the proper maintenance according to manufacturer's specifications;
      c. Make any appropriate or necessary repairs; and
      d. Keep and update written records with respect to item 1. and items 2.a. through 2.c. above. **You** must allow **us** to inspect these records as often as **we** may reasonably require. If **you** fail to maintain these records, coverage will be void under this endorsement.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE MOTOR TRUCK CARGO LEGAL LIABILITY COVERAGE ENDORSEMENT REMAIN UNCHANGED.**

18



2364 0111

Form 2371 (06/10)

### **LIMITED GENERAL LIABILITY - TRUCKING OPERATIONS ENDORSEMENT**

This endorsement modifies insurance provided under the Commercial General Liability coverage form.

If **your declarations page** shows Limited General Liability, and this form number shows on the attachment line, then the Commercial General Liability coverage form is modified as follows:

### **GENERAL POLICY EXCLUSIONS**

### **The following exclusion is applicable to both Coverage A and Coverage B.**

This endorsement provides no coverage for the following:

12. **Other than Trucking Operations**

   **Bodily injury**, **property damage**, or **personal or advertising injury** arising out of any activity other than the insured's trucking operations or suffered by any person present at the **insured's** premises for reasons that, principally, are not related to the conduct of the **insured's** trucking operations. For purposes of this exclusion, the following are deemed to be other than trucking operations and are excluded:
   (i)   the use of the **insured's** property for any non-business purpose, such as, for example, a residence; or
   (ii)  the conduct of any business activity or the rendering of any professional service that is not a necessary part of the **insured's** trucking operations.

### **ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

1

**Please note, the expiration date as stated on this form relates to the process for renewing the Information Collection Request for this form with the Office of Management and Budget. This requirement to collect information as requested on this form does not expire. For questions, please contact the Office of Registration and Safety Information, Registration, Licensing, and Insurance Division.**

A Federal Agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2126-0008. Public reporting for this collection of information is estimated to be approximately 2 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are mandatory. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Information Collection Clearance Officer, Federal Motor Carrier Safety Administration, MC-RRA, Washington, D.C. 20590.

**U.S. Department**
**of Transportation**
Federal Motor Carrier
Safety Administration

OMB No: 2126-0008
Expiration: 05/31/2024
Form MCS-90 Revised 06/03/2021

USDOT Number: 2478768                 Date Received:

**FORM MCS-90**
**ENDORSEMENT FOR MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY**
**UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980**

Issued to THE MORNING STARS TRANS LLC
(Motor Carrier name)

of 20409 STERLING BAY LN W STE P CORNELIUS, NC 28031-0000
(Motor Carrier state or province)

Dated at 08:58 AM on this 22nd day of September, 2022
Amending Policy Number: CA 03495191 Effective Date: 10/18/2022
Name of Insurance Company: Progressive Southeastern Ins Co

Countersigned by: _____
(Authorized company representative)

The policy to which this endorsement is attached provides primary or excess insurance, as indicated for the limits shown (check only one):

[X] This insurance is primary and the company shall not be liable for amounts in excess of $750,000 for each accident.

[ ] This insurance is excess and the company shall not be liable for amounts in excess of $_____ for each accident in excess of the underlying limit of $_____ for each accident.

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA), the company agrees to furnish the FMCSA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA, to verify that the policy is in force as of a particular date. The telephone number to call is: 1-800-444-4487.

Cancellation of this endorsement may be effected by the company of the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration requirements under 49 U.S.C. 13901, by providing thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date the notice is received by the FMCSA at its office in Washington, D.C.).

**Filings must be transmitted online via the Internet at http://www.fmcsa.dot.gov/urs**

**DEFINITIONS AS USED IN THIS ENDORSEMENT**

**ACCIDENT** includes continuous or repeated exposure to conditions or which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

**MOTOR VEHICLE** means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

**BODILY INJURY** means injury to the body, sickness, or disease to any person, including death resulting from any of these.

**PROPERTY DAMAGE** means damage to or loss of use of tangible property.

**ENVIRONMENTAL RESTORATION** means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

**PUBLIC LIABILITY** means liability for bodily injury, property damage, and environmental restoration.

Continued

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon,

or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of anyone accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

## SCHEDULE OF LIMITS - PUBLIC LIABILITY

| Type of Carriage | Commodity Transported | January 1, 1985 |
|---|---|---|
| **(1)** For-hire (in interstate or foreign commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Property (nonhazardous) | $750,000 |
| **(2)** For-hire and Private (in interstate, foreign, or intrastate commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Division 1.1, 1.2, and 1.3 materials, Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material, as defined in 49 CFR 173.403. | $5,000,000 |
| **(3)** For-hire and Private (in interstate or foreign commerce, in any quantity; or in intrastate commerce, in bulk only; with a gross vehicle weight rating of 10,000 or more pounds). | Oil listed in 49 CFR 172.101; hazardous waste, hazardous materials, and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | $1,000,000 |
| **(4)** For-hire and Private (In interstate or foreign commerce, with a gross vehicle weight rating of less than 10,000 pounds). | Any quantity of Division 1.1, 1.2 or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | $5,000,000 |

* The schedule of limits shown does not provide coverage. The limits shown in the schedule are for information purposes only.

# COMMERCIAL GENERAL LIABILITY ENDORSEMENT

Various provisions in this endorsement restrict coverage.  Read the entire endorsement carefully to determine **your** rights, duties, and what is and is not covered.

**We** agree with **you** that the following coverage is added to your Commercial Auto Policy:

## ADDITIONAL DEFINITIONS USED IN THIS ENDORSEMENT

The following definitions are in addition to those found in the Commercial Auto Policy.  Except as otherwise defined in this endorsement, terms appearing in boldface type, whether in the singular, plural or possessive, will have the following meanings.

1.  "**Advertisement**" means a notice that is broadcast or published to the general public or specific market segments about **your** goods, products or services for the purpose of attracting customers or supporters.  **Advertisement** includes material placed on the Internet or on similar electronic means of communication; however, regarding websites, only that part of a website that is about **your** goods, products or services for the purpose of attracting customers or supporters is considered an **advertisement**.

2.  "**Coverage territory**" means:
    a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;
    b.  International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or
    c.  All other parts of the world if the injury or damage arises out of:
       (i)   Goods or products made or sold by **you** in the territory described in a. above;
       (ii)  The activities of a person whose home is in the territory described in a. above, but who is away for a short time on **your** business; or
       (iii) Personal and advertising injury offenses that take place through the Internet or similar electronic means of communication;
    provided that the **insured's** responsibility to pay damages is determined in a **suit** on the merits, in the territory described in a. above or in a settlement agreed to by **us**.

3.  "**Executive officer**" means a person holding any of the officer positions created by **your** charter, constitution, by-laws or any other similar governing document.

4.  "**Fungi**" means any type of form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

5.  "**Hostile fire**" means a fire or explosion that is uncontrolled or breaks out from where it was intended to be.

6.  "**Impaired property**" means tangible property, other than **your product** or **your work**, that cannot be used or is less useful than intended by its manufacturer or designer because:
    a.  It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or
    b.  **You** have failed to fulfill the terms of a contract or agreement;
    if such property can be restored to use by:

1

a. The repair, replacement, adjustment or removal of **your product** or **your work**; or

b. **Your** fulfilling the terms of the contract or agreement.

7. "**Insured**" means:

   a. If **you** are designated in on the **Declarations Page** as:

      i. An individual:  **you** and **your** spouse, but only with respect to the conduct of a business of which **you** are the sole owner.

      ii. A partnership or joint venture:  **you**. **Your** members, partners, and their spouses, are also **insureds**, but only with respect to the conduct of **your** business.

      iii. A limited liability company:  **you**.  **Your** members are also **insureds**, but only with respect to the conduct of **your** business.  **Your** managers are **insureds**, but only with respect to their duties as **your** managers.

      iv. An organization other than a partnership, joint venture or limited liability company: **you**. **Your** "executive officers" and directors are also **insureds**, but only with respect to their duties as **your** officers or directors.  **Your** stockholders are also insureds, but only with respect to their liability as stockholders.

      v. A trust:  **you**.  **Your** trustees are also insureds, but only with respect to their duties as trustees.

   b. Each of the following is also an **insured**:

      i. **Your** volunteer workers, but only while performing duties related to the conduct of **your** business.

      ii. **Your** employees, other than **your executive officers** (if **you** are an organization other than a partnership, joint venture or limited liability company) or **your** managers (if **you** are a limited liability company), but only for acts within the scope of their employment by **you** or while performing duties related to the conduct of **your** business.

     No employee or volunteer worker is an insured for:

      (1) **Bodily injury** or **personal and advertising injury**:

        (a) to **you**, to **your** partners or members (if **you** are a partnership or joint venture), to **your** members (if **you** are a limited liability company), to a co-employee while in the course of his or her employment or performing duties related to the conduct of **your** business, or to **your** other volunteer workers while performing duties related to the conduct of **your** business;

        (b) to the spouse, child, parent, brother, or sister of the co-employee or volunteer worker as a consequence of paragraph (1)(a) above;

        (c) for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

        (d) arising out of his or her providing or failing to provide professional health care services.

      (2) **Property damage** to property:

        (a) owned, occupied, or used by,

        (b) rented to, in the care, custody, or control of, or over which physical control is being exercised for any purpose by

      **you**, any of **your** employees, volunteer workers, any partner or member (if **you** are a partnership or joint venture), or any member (if **you** are a limited liability company).

      iii. Any person (other than **your** employee or volunteer worker), or any organization while acting as **your** real estate manager.

      iv.     Any person or organization having proper temporary custody of your property if **you** die, but only:

         A.  with respect to liability arising out of the maintenance or use of that property; and

         B.  until **your** legal representative has been appointed.

      v.     **Your** legal representative if **you** die, but only with respect to duties as such.  That representative will have all **your** rights and duties under this endorsement.

c.  Any organization **you** newly acquire or form, other than a partnership, joint venture or limited liability company, and over which **you** maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to the organization. However:

      i.     Coverage under this provision is afforded only until the 90th day after **you** acquire or form the organization or the end of the policy period, whichever is earlier;

      ii.    Coverage A does not apply to **bodily injury** or **property damage** that occurred before **you** acquired or formed the organization; and

      iii.   Coverage B does not apply to **personal and advertising injury** arising out of an offense committed before **you** acquired or formed the organization.

No person or organization is an **insured** with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

8.  "**Insured contract**" for purposes of this endorsement only, means:

a.  A contract for a lease of premises.  However, any portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to **you** or temporarily occupied by **you** with permission of the owner is not an **insured contract**;

b.  A sidetrack agreement;

c.  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e.  An elevator maintenance agreement; and

f.  That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability of another party to pay for **bodily injury** or **property damage** to a third person or organization.  Tort liability, as referred to in this provision, means a liability that would be imposed by law in the absence of any contract or agreement.

    However, this paragraph f. does not include that part of any contract or agreement:

  (1)  That indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

  (2)  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    (a)  Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    (b)  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

  (3)  Under which the **insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **insured's** rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

9. "**Loading or unloading**" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or **auto**;

    b. While it is in or on an aircraft, watercraft or **auto**; or

    c. While it is being moved from an aircraft, watercraft or **auto** to the place where it is finally delivered; however, **loading or unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or **auto**.

10. "**Occurrence**" means an **accident**, happening or event, including continuous or repeated exposure to substantially the same general harmful conditions.

11. "**Personal and advertising injury**" means injury, including consequential **bodily injury**, arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication in any manner, including, but not limited to, e-mail, blogs, and other electronic publication, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication, in any manner including but not limited to e-mail, blogs, and other electronic publication, of material that violates a person's right of privacy;

    f. The use of another's advertising idea in **your advertisement**; or

    g. Infringing upon another's copyright, trademark, trade dress or slogan in **your advertisement**.

12. "**Product/completed operations hazard**":

    a. Includes all **bodily injury** and **property damage** occurring away from premises **you** own or rent and arising out of **your product** or **your work** except:

        (i) Injury or damage caused by products that are still in **your** physical possession; or

        (ii) Work that has not yet been completed or abandoned.  **Your work** will be deemed completed at the earliest of the following times:

            (a) When all of the work called for in **your** contract has been completed;

            (b) When all of the work to be done at the job site has been completed if **your** contract calls for work at more than one job site; or

            (c) When that part of the work done at a particular job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    b. Does not include **bodily injury** or **property damage** arising out of:

        (i) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle, including an aircraft or watercraft, not owned or operated by **you**, and that condition was created by the **loading or unloading** of that vehicle by any **insured**;

        (ii) The existence of tools, uninstalled equipment, or abandoned or unused materials

13. "**Property damage**" for purposes of this endorsement only, means:

4

    a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

14.  "**Silica**" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

15.  "**Silica-related dust**" means a mixture or combination of silica and other dust or particles.

16.  "**Suit**" means a civil proceeding involving allegations of damages because of **bodily injury**, **property damage** or **personal and advertising injury** to which this insurance applies.  **Suit** includes but is not limited to:

    a.  An arbitration proceeding in which such damages are claimed and to which the **insured** must submit or does submit with **our** consent; or

    b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the **insured** submits with **our** consent.

17.  "**Your product**" means:

    a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (i)  **You**;

        (ii)  Others trading under **your** name; or

        (iii)  A person or organization whose business or assets **you** have acquired: and

    b.  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes:

    a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and

    b.  The providing of or failure to provide warnings or instructions.

**Your product** does not include vending machines or other property rented to or located for the use of others but not sold.

18.  "**Your work**" means:

    a.  Work or operations performed by **you** or on **your** behalf; and

    b.  Materials, parts or equipment furnished in connection with such work or operations.

**Your work** includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work**; and

b. The providing of or failure to provide warnings or instructions.

## SECTION I – COVERAGES

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. **We** will pay those sums, OTHER THAN PUNITIVE OR EXEMPLARY DAMAGES, that the **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. **We** will have the right and duty to defend the **insured** against any **suit** seeking those damages. However, **we** will have no duty to defend the **insured** against any **suit** seeking damages for **bodily injury** or **property damage** to which this insurance does not apply. **We** may, at **our** discretion, investigate any **occurrence** and settle any claim or **suit** that may result. However:

(1) The amount **we** will pay for damages is limited as described in Section II – Limits Of Liability; and

(2) **Our** right and duty to defend ends when **we** have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A and B or medical expenses under Coverage C;

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to **bodily injury** and **property damage** only if:

(1) The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**; and

(2) The **bodily injury** or **property damage** occurs during the policy period.

Any **bodily injury** or **property damage**, whether such **bodily injury** or **property damage** is known or unknown, that first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier), or that is, or alleged to be, in the process of occurring at the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier), even if the **occurrence** continues during this policy period, will be deemed to have occurred prior to the policy period. Any **bodily injury** or **property damage**, whether known or unknown, which is in the process of settlement, adjustment or **suit** as of the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier) will also be deemed to have occurred prior to the policy period.

**Bodily injury** or **property damage** that first occurs during this policy period includes any continuation, change or resumption of that **bodily injury** or **property damage** after the end of this policy period.

c. Damages because of **bodily injury** or **property damage** include damages claimed by any person or organization for care, loss of services, or death resulting at any time from the **bodily injury**.

d. In the event that a claim or **suit** seeks damages, some of which are covered and others of which are not covered by this policy, the **insured** must agree to a reasonable allocation of the costs and fees of defense, and the **insured** will be responsible for payment of the costs and fees to defend the damages

or claims not covered by this policy.  This agreement shall be reached in writing, signed by the **insured** and **us**, prior to the date when a responsive pleading to the claim or **suit** is filed on behalf of the **insured**.  In the absence of such agreement, **our** duty to defend will apply only to those specific portions of the **suit** that are covered.

**<u>EXCLUSIONS</u> - READ THE FOLLOWING EXCLUSIONS CAREFULLY.  IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.**

Coverage under Coverage A does not apply to:

**a.  Expected or Intended Injury**

**Bodily injury** or **property damage** expected or intended from the standpoint of any **insured**.  This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

**b.  Contractual Liability**

**Bodily injury** or **property damage** for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1)  That the **insured** would have in the absence of the contract or agreement; or

(2)  Assumed in a contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an **insured contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **insured** are deemed to be damages because of **bodily injury** or **property damage**, provided:

(i) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same **insured contract**; and

(ii)  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c.  Liquor Liability**

**Bodily injury** or **property damage** for which any **insured** may be held liable by reason of:

(1)  Causing or contributing to the intoxication of any person;

(2)  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3)  Any statute, ordinance or regulation relating to the sale, gift, distribution, selling, or use of alcoholic beverages.

This exclusion applies only if **you** are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d.  Workers' Compensation and Similar Laws**

7

Any obligation for which an **insured** or an insurer of that **insured**, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law.

**e.  Employer's Liability**

**Bodily injury** to:
(1)  An employee of any **insured** arising out of or within the course of:
    i.  that employee's employment by any **insured**; or
    ii. performing duties related to the conduct of any **insured's** business; or
(2)  The spouse, child, parent, brother or sister of that employee as a consequence of Paragraph a. above.

This exclusion applies:
(a)  Whether the **insured** may be liable as an employer or in any other capacity; and
(b)  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the **insured** under an **insured contract**.

**f.  Aircraft, Auto or Watercraft**

**Bodily injury** or **property damage** arising out of:
(1)  The ownership, maintenance, use, or entrustment to others of any aircraft, **auto** or watercraft owned or operated by or rented, leased or loaned to any **insured**; or
(2)  Any **auto you** do not own, lease, hire, rent or borrow that is used in connection with **your** business.
Use includes operation and **loading or unloading**.

This exclusion applies even if the claims against any **insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **insured**, if the **occurrence** which caused the **bodily injury** or **property damage** involved the ownership, maintenance, use or entrustment to others of any aircraft, **auto** or watercraft that is owned or operated by or rented or loaned to any **insured**.

This exclusion does not apply to:
(1)  A watercraft while ashore on premises **you** own or rent;
(2)  A watercraft **you** do not own that is:
    (a)  Less than 26 feet long; and
    (b)  Not being used to carry persons or property for a charge;
(3)  Parking an **auto** on, or on the ways next to, premises **you** own or rent, provided the **auto** is not owned by or rented or loaned to **you** or the **insured**;
(4)  Liability assumed under any **insured contract** for the ownership, maintenance or use of aircraft or watercraft; or
(5)  **Bodily injury** or **property damage** arising out of:
    (a)  The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of **mobile equipment** if it were not subject to a

8

compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

(b) the operation of any of the machinery or equipment listed in Paragraph B or C of the definition of **auto**.

**g.  Mobile Equipment**

**Bodily injury** or **property damage** arising out of:

(1) The transportation of **mobile equipment** by an **auto** owned or operated by or rented or loaned to any **insured**; or

(2) The use of **mobile equipment** in, while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**h.  Damage to Property**

**Property damage** to:

(1) Property **you** own, rent, or occupy, including any costs or expenses incurred by **you**, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises **you** sell, give away, or abandon, if the **property damage** arises out of any part of those premises;

(3) Property loaned to **you**;

(4) Personal property in the care, custody or control of the **insured**;

(5) That particular part of real property on which **you** or any contractors or subcontractors working directly or indirectly on **your** behalf are performing operations, if the **property damage** arises out of those operations; or

(6) That particular part of any property that must be restored, repaired, or replaced because **your work** was incorrectly performed on it.

Paragraphs (1), (3), and (4) of this exclusion do not apply to **property damage** (other than damage by fire) to premises, including the contents of such premises, rented to **you** for a period of 7 or fewer consecutive days.  A separate limit of insurance applies to Damage To Premises Rented To **You** as described in Section II – Limits of Insurance, subsection 6.

Paragraph (2) of this exclusion does not apply if the premises are **your work** and were never occupied, rented or held for rental by **you**.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to **property damage** included in the **products-completed operation hazard**.

**i.  Damage to Your Product**

**Property damage** to **your product** arising out of it or any part of it.

**j.  Damage to Your Work**

**Property damage** to **your work** arising out of it or any part of it and included in the **products/completed operations hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on **your** behalf by a subcontractor.

**k.  Damage to Impaired Property or Property Not Physically Injured**

**Property damage** to **impaired property** or property that has not been physically injured, arising out of:

(1)  A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or

(2)  A delay or failure by **you** or anyone acting on **your** behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

**l.  Recall of Products, Work or Impaired Property**

Damages claimed for any **loss**, cost or expense incurred by **you** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)  **Your product**;

(2)  **Your work**; or

(3)  **Impaired property**;

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**m.  Personal and Advertising Injury**

**Bodily injury** arising out of **personal and advertising injury**.

**n.  Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions c. through n. under this Coverage A do not apply to damage by fire to premises while rented to **you** or temporarily occupied by **you** with permission of the owner.  A separate limit of insurance applies to this coverage as described in Section II – Limits Of Insurance.

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**
   a. **We** will pay those sums, OTHER THAN PUNITIVE OR EXEMPLARY DAMAGES, that the **insured** becomes legally obligated to pay as damages because of **personal and advertising injury** to which this insurance applies. **We** will have the right and duty to defend the **insured** against any **suit** seeking those damages. However, **we** will have no duty to defend the **insured** against any **suit** seeking damages for **personal and advertising injury** to which this insurance does not apply.  **We** may, at **our** discretion, investigate any offense and settle any claim or **suit** that may result.  However:
      (1) The amount **we** will pay for damages is limited as described in Section II – Limits Of Liability; and
      (2) **Our** right and duty to defend end when **we** have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A and B or medical expenses under Coverage C.
   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to **personal and advertising injury** caused by an offense arising out of **your** business but only if the offense was committed in the **coverage territory** during the policy period.

<u>**EXCLUSIONS**</u> **- READ THE FOLLOWING EXCLUSIONS CAREFULLY.  IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.**

Coverage under Coverage B does not apply to **personal and advertising injury**:

a. **Knowing Violation of Rights of Another**
   Caused by or at the direction of any **insured** with the knowledge that the act would violate the rights of another and would inflict **personal and advertising injury**.

b. **Material Published with Knowledge of Falsity**
   Arising out of oral or written publication of material, if published by or at the direction of the **insured** with knowledge of its falsity.

c. **Material Published Prior to Policy Period**
   Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**
   Arising out of a criminal act committed by or at the direction of any **insured**.

e. **Contractual Liability**
   For any **loss** for which the **insured** has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the **insured** would have in the absence of the contract or agreement.

f. **Breach of Contract**

11

Arising out of a breach of contract, except an implied contract to use another's advertising idea in **your advertisement**.

**g. Quality or Performance of Goods – Failure to Conform to Statements**
Arising out of the failure of goods, products or services to conform to any statement of quality or performance made in **your advertisement**.

**h. Wrong Description of Prices**
Arising out of the wrong description of price of goods, products or services stated in **your advertisement**.

**i. Insureds in Media and Internet Type Businesses**
Committed by an **insured** whose business is:
(i)    Advertising, broadcasting, publishing or telecasting;
(ii)   Designing or determining content of websites for others; or
(iii)  An Internet search, access, content or service provider.
However, this exclusion does not apply to Paragraphs 11.a, 11.b and 11.c. of **personal and advertising injury** under the Additional Definitions Used In This Endorsement Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for **you** or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**j. Infringement of Copyright, Patent, Trademark or Trade Secret**
Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in **your advertisement**, of copyright, trade dress or slogan.

**k. Electronic Chatrooms or Bulletin Boards**
Arising out of an electronic chatroom or bulletin board the **insured** hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use of Another's Name or Product**
Arising out of the unauthorized use of another's name or product in **your** e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**GENERAL POLICY EXCLUSIONS**

**The following exclusions are applicable to both Coverage A and Coverage B.**

This endorsement provides no coverage for the following:

**a. Asbestos**

**Bodily injury**, **property damage** or **personal and advertising injury** arising out of, resulting from, caused by, or contributed to, either directly or indirectly, by:

1. inhaling, ingesting, or prolonged physical exposure to asbestos or goods or products containing asbestos; or
2. the use of asbestos in constructing or manufacturing any good, product or structure; or
3. the removal of asbestos from any good, product or structure; or
4. the manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

This exclusion includes, but is not limited to, any cost for investigation, defense, abatement, mitigation, removal or disposal of asbestos or asbestos containing materials.

**b. Lead**

**Bodily injury**, **property damage** or **personal and advertising injury** arising out of, resulting from, caused by, or contributed to, either directly or indirectly, by lead or lead based products or any exposure or contamination of any person or property to such lead or lead based product.  This exclusion includes but is not limited to any cost for abatement, mitigation, removal or disposal of paint, plumbing solder, pipes and fixtures or other items containing lead.

**c. Fungi or bacteria**

**Bodily injury**, **property damage** or **personal and advertising injury** which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any **fungi** or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

This coverage also does not apply to any **loss**, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, **fungi** or bacteria, by any **insured** or by any other person or entity.

This exclusion does not apply to any **fungi** or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**d. Silica or silica-related dust**

1. **Bodily injury**, **property damage**, or **personal and advertising injury** arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, **silica** or **silica-related dust**.

2. Any **loss**, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of **silica** or **silica-related dust**, by any **insured** or by any other person or entity.

**e. Employment-Related Practices Exclusion**

**Bodily injury** or **personal and advertising injury** to:

13

(1)   A person arising out of any:
　　1.   Refusal to employ that person;
　　2.   Termination of that person's employment; or
　　3.   Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or
(2)   The spouse, child, parent, brother or sister of that person as a consequence of **bodily injury** to that person at whom any of the employment-related practices described in paragraphs 1, 2 or 3 above is directed.

This exclusion applies:
(a)   Whether the **insured** may be liable as an employer or in any other capacity; and
(b)   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**f.  Assault and/or Battery Exclusion**

The coverage under this policy does not apply to any claim, **suit**, cost or expense arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any **insured** or **insured's** employees, patrons or any other person.

**g.  Sexual Abuse and/or Molestation Exclusion**

The coverages under this policy do not apply to **bodily injury**, **property damage** or **personal and advertising injury** arising out of
(1)   The actual or threatened abuse or molestation or licentious, immoral or sexual behavior whether or not intended to lead to, or culminating in any sexual act, of any person, whether caused by, or at the instigation of, or at the direction of, or omission by, any **insured**, his/her employees, or any other person; or
(2)   The actual or alleged transmission of any communicable disease.
Abuse includes, but is not limited to, negligent or intentional infliction of physical, emotional or psychological injury or harm.

**h.  Firearms Exclusion**

This insurance does not apply to any claims, **suits**, accusations or charges or any **loss**, cost, or expense arising out of **bodily injury**, **property damage**, or **personal or advertising injury** arising out of the ownership, rental, maintenance, use or misuse of any firearms.

**l.  War**

**Bodily injury**, **property damage** or **personal or advertising injury** due to war, whether declared or undeclared, civil war, insurrection, rebellion, revolution, or to any act or condition incident to these.

**j.  Pollution**

**Bodily injury, property damage,** or **personal or advertising injury** that would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **pollutants** at any time.

This includes any **loss**, cost, or expense arising out of any:

1. Request, demand, order, or statutory or regulatory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **pollutants**; or
2. Claim or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of, "**pollutants**".

**s. Nuclear Energy Liability**

(1) **Bodily injury** or **property damage**:
   (a) With respect to which an **insured** under the policy is also an **insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an **insured** under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b) Resulting from the **hazardous properties** of **nuclear material** and with respect to which:
      1. any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or
      2. the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

(2) **Bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

(3) **Bodily injury** or **property damage** resulting from **hazardous properties** of **nuclear material**, if:
   (a) The **nuclear material**:
      1. is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured**; or
      2. has been discharged or dispersed from any **nuclear facility** owned by, or operated by or on behalf of, an **insured**.
   (b) The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an **insured**; or
   (c) The **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) only applies to **property damage** to such **nuclear facility** and any property threat.

(4) When used in this exclusion:
   (a) **Hazardous properties** includes radioactive, toxic or explosive properties.
   (b) **Nuclear material** means **source material**, **special nuclear material**, or **by-product material**.
   (c) **Source material**, **special nuclear material**, and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

15

(d)    **Spent fuel** means any fuel element or fuel component, solid, or liquid, which has been used or exposed to radiation in a **nuclear reactor**.

(e)    **Waste** means any waste material:

    1.    containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content; and

    2.    resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility**.

(f)    **Nuclear facility** means:

    1.    Any **nuclear reactor**;

    2.    Any equipment or device designed or used for:

        a)    separating the isotopes of uranium or plutonium;

        b)    processing or utilizing **spent fuel**; or

        c)    handling, processing or packaging **waste**.

    3.    Any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

    4.    any structure, basic, excavation, premises or place prepared or used for the storage or disposal of **waste**;

    and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

(g)    **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

(h)    **Property damage** includes all forms of radioactive contamination of property.

## SUPPLEMENTARY PAYMENT – COVERAGES A AND B

1.    **We** will pay, with respect to any claim **we** investigate or settle, or any **suit** against an **insured we** defend:

    a.    All expenses **we** incur.

    b.    Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage under this policy applies. **We** do not have to furnish these bonds.

    c.    The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. **We** do not have to furnish these bonds.

    d.    All reasonable expenses incurred by the **insured** at **our** request to assist **us** in the investigation or defense of the claim or **suit**, including actual loss earnings up to $250 a day because of time off from work.

    e.    All cost taxed against the **insured** in the **suit**.

    f.    Prejudgment interest awarded against the **insured** on the part of the judgment **we** pay. If **we** make an offer to pay the applicable limit of insurance, **we** will not pay any prejudgment interest based on that period of time after the offer.

    g.    All interest on the full amount of any judgment that accrues after entry of the judgment and before **we** have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If **we** defend an **insured** against a **suit** and an indemnitee of the **insured** is also named as a party of the **suit**, **we** will defend that indemnitee if all of the following conditions are met:

    a. The **suit** against the indemnitee seeks damages for which the **insured** has assumed the liability of the indemnitee in a contract or agreement that is an **insured contract**;

    b. This insurance applies to such liability assumed by the **insured**;

    c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the **insured** in the same **insured contract**;

    d. The allegations in the **suit** and the information **we** know about the **occurrence** are such that no conflict appears to exist between the interests of the **insured** and the interests of the indemnitee;

    e. The indemnitee and the **insured** ask **us** to conduct and control the defense of that indemnitee against such **suit** and agree that **we** can assign the same counsel to defend the **insured** and the indemnitee; and

    f. The indemnitee:

        (1) Agrees in writing to:

            (a) Cooperate with **us** in the investigation, settlement or defense of the **suit**;

            (b) Immediately send **us** copies of any demands, notices, summonses or legal papers received in connection with the **suit**;

            (c) Notify any other insurer whose coverage is available to the indemnitee; and

            (d) Cooperate with **us** with respect to coordinating other applicable insurance available to the indemnitee; and

        (2) Provides **us** with written authorization to:

            (a) Obtain records and other information related to the **suit**; and

            (b) Conduct and control the defense of the indemnitee in such **suit**.

So long as the above conditions are met, attorneys' fees incurred by **us** in the defense of that indemnitee, necessary litigation expenses incurred by **us** and necessary litigation expenses incurred by the indemnitee at **our** request will be paid as Supplementary Payments.  Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for **bodily injury** and **property damage** and will not reduce the limits of insurance.

**Our** obligation to defend an **insured's** indemnitee and pay attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

    a. **We** have used up the applicable limit of insurance in the payment of judgments or settlements; or

    b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## COVERAGE C – MEDICAL PAYMENTS

1. **Insuring Agreement**

    a. **We** will pay medical expenses as described below for **bodily injury** caused by an **accident**:

        (1) On premises **you** own or rent;

        (2) On ways next to premise **you** own or rent; or

        (3) Because of **your** operations;

    Provided that:

        (1) The **accident** takes place in the **coverage territory** and during the policy period;

        (2) The expenses are incurred and reported to **us** within one year of the date of the **accident**; and

(3)   The injured person submits to examination, at **our** expense, by physicians of **our** choice as often as **we** reasonably require.

b.  **We** will make these payments regardless of fault.  These payments will not exceed the applicable limit of insurance.  **We** will pay reasonable expenses for:

(1)   First aid administered at the time of an accident;

(2)   Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3)   Necessary ambulance, hospital, professional nursing and funeral services.

2.  **Exclusions**

**We** will not pay expenses for **bodily injury**:

**a. Any Insured**

To any **insured.**

**b. Hired Person**

To a person hired to do work for or on behalf of any **insured** or a tenant of any **insured.**

**c. Injury on Normally Occupied Premises**

To a person injured on that part of premises **you** own or rent that the person normally occupies.

**d. Workers Compensation and Similar Laws**

To a person, whether or not an **employee** of any **insured**, if benefits for the **bodily injury** are payable or must be provided under a workers' compensation, disability benefits, or unemployment law or a similar law.

**e. Athletic Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the **product-completed operations hazard**.

**g. Coverage A Exclusions**

To a person if the **bodily injury** would be excluded under Coverage A.

**h. War**

Due to war, whether or not declared, or any act or condition incident of war.  War includes civil war, insurrection, rebellion or revolution.

## **SECTION II – LIMITS OF LIABILITY**

1.  The Limits of Liability shown on the **Declarations Page** and the rules below fix the most **we** will pay regardless of the number of:

a.  **Insureds**;

b.  Claims made or **suits** brought: or

c.  Persons or organizations making claims or bringing **suits**.

2.  The General Aggregate Limit is the most **we** will pay for the sum of:

a.  Medical expenses under Coverage C;

    b. Damages under Coverage A, except damages because of **bodily injury** or **property damage** included in the **products-completed operations hazard**; and

    c. Damages under Coverage B.

3. The Product-Completed Operations Aggregate Limit is the most **we** will pay under Coverage A for damages because of **bodily injury** and **property damage** included in the **product-completed operations hazard**.

4. Subject to Paragraph 2. above, the Personal and Advertising Injury Limit is the most **we** will pay under Coverage B for the sum of all damages because of all **personal and advertising injury** sustained by any one person or organization.

5. Subject to Paragraph 2. or 3. above, whichever applies, the Each **Occurrence** Limit is the most **we** will pay for the sum of:

    a. Damages under Coverage A; and

    b. Medical expenses under Coverage C;

    because of all **bodily injury** and **property damage** arising out of any one **occurrence**.

6. Subject to Paragraph 5. above, the Damage To Premises Rented To **You** Limit is the most **we** will pay under Coverage A for damages because of **property damage** to any one premises, while rented to **you**, or in the case of damage by fire, while rented to **you** or temporarily occupied by **you** with permission of the owner.

7. Subject to Paragraph 5. above, the Medical Expense Limit is the most **we** will pay under Coverage C for all medical expenses because of **bodily injury** sustained by any one person.

The Limits of Liability of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown on the **Declarations Page**, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Liability.

## SECTION III – COMMERCIAL GENERAL LIABILITY PROVISIONS AND CONDITIONS

The following provisions and conditions apply to this endorsement, and are in addition to the General Provisions of the Commercial Auto Policy, and to any schedules, endorsements, or modifications thereto:

1. **Legal Action Against Us**

    No person or organization has a right under this endorsement:

    (a)    To join **us** as a party or otherwise bring **us** into a **suit** asking for damages from an **insured**; or

    (b)    To sue **us** on this endorsement unless all of its terms have been fully complied with.

    A person or organization may sue **us** to recover on an agreed settlement or on a final judgment against an **insured**, but **we** will not be liable for damages that are not payable under the terms of this endorsement or that are in excess of the applicable limit of liability.  An agreed settlement means a settlement and release of liability signed by **us**, the **insured** and the claimant or the claimant's legal representative.

2. **Other Insurance**

    If other valid and collectible insurance is available to the **insured** for a **loss we** cover under Coverages A and B of this policy, **our** obligations are limited as follows:

    a. Primary Insurance

This insurance is primary except when Paragraph b. below applies.  If this insurance is primary, **our** obligations are not affected unless any of the other insurance is also primary.  Then, **we** will share with all that other insurance by the method described in Paragraph c. below.

b.  Excess Insurance
When this insurance applies, it is excess over:
  (1)  Any of the other insurance, whether primary, excess, contingent or on any other basis:
      (a)  That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for **your work**;
      (b)  That is Fire insurance for premises rented to **you** or temporarily occupied by **you** with permission of the owner;
      (c)  That is insurance purchased by **you** to cover **your** liability as a tenant for **property damage** to premises rented to **you** or temporarily occupied by **you** with permission of the owner; or
      (d)  If the **loss** arises out of the maintenance or use of an **auto**, aircraft or watercraft to the extent not subject to Exclusions m., n. or o. of Section I – Coverage A – Bodily Injury And Property Damage Liability.
  (2)  Any other primary insurance available to **you** covering liability for damages arising out of the premises or operations for which **you** have been added as an additional insured by attachment of an endorsement.
When this insurance is excess, **we** will have no duty under Coverages A and B to defend the **insured** against any **suit** if any other insurer has a duty to defend the **insured** against that **suit**.  If no other insurer defends, **we** will undertake to do so, but **we** will be entitled to the **insured's** right against all those other insurers.

When this insurance is excess over other insurance, **we** will pay only **our** share of the amount of the **loss**, if any, that exceeds the sum of:
  (1)  The total amount that all such other insurance would pay for the **loss** in the absence of this insurance; and
  (2)  The total of all deductible and self-insured amounts under all that other insurance.

**We** will share the remaining **loss**, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the **Declarations Page** of this policy.

c.  Method of Sharing
If all of the other insurance permits contribution by equal shares, **we** will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the **loss** remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, **we** will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

3.  **Premium Audit**
a.  **We** will compute all premiums for this policy in accordance with **our** rules and rates.

    b. Premium shown in this policy as advance premium is a deposit premium only.  At the close of each audit period **we** will compute the earned premium for that period.  Audit premiums are due and payable on notice to the first Named Insured.  If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, **we** will return the excess to the first Named Insured.

    c. The first Named Insured must keep records of the information **we** need for premium computation, and send **us** copies at such times as **we** may request.

4. **Representations**

By accepting this policy, **you** agree:

    a. The statements in the **Declarations Page** are accurate and complete;

    b. Those statements are based upon representation **you** made to **us**; and

    c. **We** have issued this policy in reliance upon **your** representations.

5. **When We Do Not Renew**

If **we** decide not to renew this policy, **we** will mail or deliver to the first Named Insured shown in the **Declarations Page** written notice of the nonrenewal not less than 45 days before the expiration date.  If notice is mailed, proof of mailing will be sufficient proof of notice.

6. **When You Become Ineligible For Coverage**

This Commercial General Liability Endorsement has been available to **you** based upon representations made by **you** concerning the profile of **your** business.  If at any time **your** business profile changes so that it no longer fits **our** underwriting criteria for this coverage, this Commercial General Liability Endorsement will be cancelled.  **We** will provide notice of the cancellation of this coverage not less than 30 days before the effective date of the cancellation.  If notice is mailed, proof of mailing will be sufficient proof of notice.

7. **Examination of Your Books and Records**

**We** may examine and audit **your** books and records as they relate to this policy at any time during the policy period and up to three years afterward.

8. **Inspections and Surveys**

**We** have the right but are not obligated to:

    a. Make inspections and surveys at any time:

    b. Give **you** reports on the conditions **we** find; and

    c. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.  **We** do not make safety inspections.  **We** do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.  **We** do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulation, codes or standard.

This condition applies to **us** and to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

9. **Premiums**

The first Named Insured shown on the **Declarations Page**
a.  Is responsible for the payment of all premiums, and
b.  Will be the payee for any return premiums **we** pay.

10. **Knowledge and Notice of Occurrence**
It is agreed that knowledge of an **occurrence** or offense by an agent, servant or employee of the **insured** shall not constitute knowledge to the **insured** unless the corporate risk manager shall have received such notice.

It is also agreed that if the **insured** reports an **occurrence** or offense to its workers' compensation carrier that develops into a liability claim, failure to report such **occurrence** or offense to **us** at the time of the **occurrence** or offense shall not be deemed in violation of Duties in the Event of **Occurrence**, Offense, Claim or **Suit**.

11. **Headings and Subheadings**
The headings and subheadings in this policy and any endorsements or schedules hereto are included solely to aid the reader and do not affect the terms of this policy.

Form Z433 NC (04/08)

Form Z434 NC (02/19)

## MOTOR TRUCK CARGO LEGAL LIABILITY
## COVERAGE ENDORSEMENT

Except as specifically modified by this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

### INSURING AGREEMENT—LOSS TO COVERED PROPERTY

Subject to the Limit of Liability, if **you** pay the premium for this Motor Truck Cargo Legal Liability Coverage, **we** will pay for the direct physical **loss** to **covered property** that **you** are legally liable to pay as a **trucker** under a written: bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage.  For this coverage to apply, the **covered property** must, at the time of **loss**, be in **your** exclusive physical custody and control:

1.   while **in due course of transit** in, on, or attached to an **insured auto**; or
2.   during **loading or unloading**.

Coverage applies for **loss** to **covered property** only if the **loss** is caused by a **covered peril**. For **covered property** that is **your** property, **our** payment is not contingent upon **your** liability.

**We** have the option to settle or defend any claim or lawsuit for damages covered by this endorsement. However, **we** have no duty to defend **you** against any lawsuit to which this insurance does not apply. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the limit of liability for this **covered property** coverage has been exhausted by payment of judgments or settlements.

### INSURING AGREEMENT—LOSS TO BUSINESS EQUIPMENT

Subject to the Limit of Liability, if **you** pay the premium for this Motor Truck Cargo Legal Liability Coverage, **we** will pay for the direct physical **loss** to **business equipment**. For this coverage to apply, the **business equipment** must, at the time of **loss**, be in **your** exclusive physical custody and control. Coverage applies for **loss** to **business equipment** only if the **loss** is caused by a **covered peril**.

**We** have the option to settle or defend any claim or lawsuit for damages covered by this endorsement. However, **we** have no duty to defend **you** against any lawsuit to which this insurance does not apply. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the limit of liability for **business equipment** coverage has been exhausted by payment of judgments or settlements.

### ADDITIONAL DEFINITIONS

The following additional definitions apply only to Motor Truck Cargo Legal Liability Coverage, as set forth in this endorsement, and any endorsements thereto that solely pertain to this coverage, whenever the defined term appears therein in boldface type, whether in the singular, plural, or possessive:

1.   "**Business equipment**" means computer and related computer hardware, used exclusively in the management of **your**

1

business, that **you** own or that is leased or loaned to **you**. **Business equipment** does not include computer, cell phone, smart phone, or any other electronic equipment, used or intended to be used for personal non-business use.

2. "**Covered peril**" means any external risks of direct physical **loss** to **covered property** or **business equipment**, except for those listed in a. through l. below as Excluded Perils.

**Excluded Perils:** Please read the following list of excluded perils carefully. Coverage will not be afforded under this Motor Truck Cargo Legal Liability Coverage endorsement for these types of perils. **We** will not pay for any **losses** to **covered property** or **business equipment** caused by, resulting in or from, or arising out of these excluded perils regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.

a. **Civil Authority**
Order of any civil authority, including seizure, confiscation, destruction, or quarantine of property. However, **we** will pay for **loss** or damage caused by or resulting from acts of destruction ordered by any governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this endorsement.

b. **Nuclear Hazard, Pollutants**
(i) Any weapon employing atomic fission or fusion; or
(ii) Nuclear reaction or radiation, or radioactive contamination from any other cause. But **we** will pay for direct **loss** caused by resulting fire if the fire would be covered under this endorsement.
(iii) The release, discharge, seepage, migration, dispersal, or escape of **pollutants**, unless the release, discharge, seepage, migration, dispersal, or escape is caused by a **specified peril**.

c. **War, Civil Commotion**
(i) **War**, including undeclared or civil war;
(ii) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or agents;
(iii) Insurrection, rebellion, revolution, usurped power, or action taken by a governmental authority to hinder or defend against any of these; or
(iv) Strikers, locked-out workmen, or persons taking part in labor disturbances or riots, or civil commotions.

d. **Inherent Vice**
Deterioration; wear and tear; obsolescence; hidden or latent defect; gradual decay; fungus; mildew; mold; rot; rust; insects; vermin; change in flavor; or any quality, fault, or weakness in the **covered property** or **business equipment** that causes it to damage or destroy itself.

e. **Criminal, Fraudulent, or Dishonest Acts**
Criminal, fraudulent, dishonest, or illegal acts alone or in collusion with another, whether or not such acts occurred during regular hours of employment, by:
(i) **you**;
(ii) **your** partners, officers, directors, trustees, or joint ventures;
(iii) others to whom **you**, **your** partners, officers, directors, trustees, or joint ventures entrust the property;
(iv) others who have an interest in the property; or
(v) the employees or agents of any party specified in (i) through (iv) above.
This Excluded Peril does not apply to acts of destruction by **your** employees, but **we** will not pay for theft by employees.

2

f.  **Consequential Loss**

Loss of use, loss of market, loss of market value, or delay; or any other remote or consequential loss, other than direct physical **loss**, to **covered property** or **business equipment**.

g.  **Wetness**, **Breakdown, Temperature, Humidity**

(i)  Mechanical or electrical breakdown or failure including breakdown or failure of a refrigeration unit or its associate component parts, or heating equipment installed in a cargo component; or

(ii)  Wetness, humidity, dampness, dryness, or changes in or extremes of temperature unless it results from damage to an **insured auto**.

However, this Excluded Peril does not apply to **loss** caused by a fire or explosion if such fire or explosion would be covered under this endorsement.

h.  **Voluntary Parting, Nondelivery, Mysterious Disappearance**

(i)  Voluntary parting with title to, or possession of, the property due to fraudulent scheme, trick, or false pretense;

(ii)  Nondelivery or misdelivery; or

(iii)  Mysterious or unexplained disappearance; shortage of any property upon taking inventory; or theft of a part of the contents of any shipping package.

i.  **Fines, Penalties, and Costs**

Any costs, fines, punitive damages, assessments, attorney fees, court costs, or other penalties that **you** are required or liable to pay as a result of **your** violation of any law or regulation, or as a result of the violation of any law or regulation relating to any delay in the payment, denial, or settlement of any claim.

j.  **Pre-existing Damage**

**We** will not pay for pre-existing damage to any **covered property** or **business equipment**.

With respect to auto haulers, **we** will not pay for pre-existing damage to vehicles being transported by the **insured**. For coverage to apply, the **insured** auto hauler must provide to **us** a signed inspection document attesting to the condition of **covered property** before loading.

k.  **Installation Operations**

**Your** operation as rigger, hoister, erector, installer, or dismantler.

l.  **Business Equipment Damage**

**We** will not pay for the following damage to **business equipment**:

(i)  Wear and tear, any quality in the equipment that causes it to damage or destroy itself, hidden or latent defect, or gradual deterioration;

(ii)  Structural, mechanical, or electrical failure or breakdown; or

(iii)  Damage caused by maintenance or a software upgrade or download.

3.  "**Covered property**" means lawful goods and merchandise of others, except for the items listed in a. through j. below as Excluded Properties. **Covered property** includes **goods and merchandise** owned by **you** while loaded for shipment in or on an **insured auto**, whether or not shipped under a bill of lading or shipping receipt. When used in this endorsement, **goods and merchandise** means products destined for market and/or sale. **Covered property** does not include any equipment **you** own that is being transported between work sites. **Covered property** also does not include **autos you** lease, hire, rent, or borrow.

3

**Excluded Properties:** Please read the following list of excluded properties carefully. Coverage will not be afforded under this Motor Truck Cargo Legal Liability Coverage endorsement for **loss** to these types of properties**.**

a.  **Art, Jewelry, Metals, Money, Papers**

Objects of art, including paintings and statuary; jewelry, precious or semi-precious stones; precious or semi-precious metals or alloys; money and securities of any kind, including monies collected or not collected under a C.O.D., bill of lading, or shipping receipt; food stamps, lottery tickets, notes, money orders, traveler's checks, accounts, bills, deeds, or other evidences of debt; valuable papers of any kind, including passports, manuscripts, mechanical drawings, and blueprints.

b.  **Contraband**

Contraband or property in the course of illegal transportation or trade.

c.  **Live Animals**

Live animals, birds, or fish, including cattle or poultry, unless death results or is made necessary within 24 hours by a **specified peril**; or unless they escape or stray from the scene of **loss** and cannot be located, but only if the escape or straying is caused by a **specified peril**. **We** do not cover **your** liability for reduction in the market value or downgrading of live animals, birds, or fish due to minor injuries, scrapes, and bruises.

d.  **Other Carrier**

Any property while in the physical custody of any other carrier.

e.  **Property Not Under Bill of Lading**

Any property for which no bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage has been issued, or which is carried gratuitously or without charge. This exclusion does not include poultry cages owned by the shipper while being utilized in the transportation of **covered property**.

f.  **Storage**

Any property in or on an **insured auto** after it has remained at any location for more than 72 hours. This includes locations **you** own or use. This exclusion does not apply to delays in transportation outside of **your** control due to severe weather, as long as transport resumes as soon as the weather emergency has ended.

g.  **Transporting Vehicles and Equipment**

Any transporting vehicle or conveyance, including its equipment such as tarpaulins and fittings, chains, binders, and inter-modal shipping containers, unless specified on a bill of lading.

h.  **Explosive or Radioactive Material**

Explosives, ammunition, fireworks, or radioactive material.

i.  **Pharmaceuticals, Tobacco, Marijuana Products, Alcohol**

Prescription pharmaceuticals, tobacco products, marijuana products, or alcoholic beverages, other than beer or wine.

j.  **Mobile/Modular Homes and Buildings**

**Mobile/Modular homes and buildings** whether carried on or attached to the **insured auto**.

4

4.   "**Earned freight charges**" means freight charges from the point of departure to the point of **loss**.

5.   "**In due course of transit**" means being shipped from the time **you** assume exclusive physical custody and control of the **covered property** for the purpose of the actual movement of **covered property** from the point of shipment bound for a specific destination and ending when one of the following first occurs:

   a.   the **covered property** is accepted by, or on behalf of, the consignee at the intended destination;

   b.   the **covered property** is accepted by, or on behalf of, the consignee at any intermediate point short of reaching the original intended destination;

   c.   72 hours after arrival at destination; or

   d.   any other stop that exceeds 72 hours.

   **In due course of transit** includes ordinary and necessary stops, interruptions, delays, or transfers incidental to the route and method of shipment.

6.   "**Insured auto**" is used in this endorsement as defined in the General Definitions section of **your** Commercial Auto Policy, and includes **trailers** listed on the **declarations page**. In addition, as used in this endorsement, **insured auto** includes:

   a.   Any **auto** specifically described on the **declarations page** that is not a **trailer**;

   b.   An additional **auto** that is not a **trailer** on the date **you** become the owner if:

      (i)   **you** acquire the **auto** during the policy period shown on the **declarations page**;

      (ii)   **we** insure all **autos** owned by **you** that are used in **your** business;

      (iii)   no other insurance policy provides coverage for that **auto**; and

      (iv)   **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it.

   c.   Any replacement **auto** that is not a **trailer** on the date **you** become the owner if:

      (i)   **you** acquire the **auto** during the policy period shown on the **declarations page**;

      (ii)   the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable;

      (iii)   no other insurance policy provides coverage for that **auto**; and

      (iv)   **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it.

   d.   A **trailer** designed primarily for travel on public roads, only when the **trailer** is attached to a power unit that is an **insured auto** or while it is **in due course of transit** by a power unit that is an **insured auto**; and

   e.   Any **temporary substitute auto** that is not a **trailer**.

   With respect to this endorsement, if **we** provide coverage for an additionally acquired **auto**, **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

7.   "**Loading or unloading**" means the direct physical process of hoisting, lifting, or moving **covered property**:

   a.   onto an **insured auto** from the ground or loading docks adjacent to such **insured auto**; or

   b.   off of an **insured auto** to the place where it is finally delivered.

   However, for auto haulers, **loading or unloading** means moving **covered property** onto or off of **your insured auto**, including moving a motor vehicle under its own power solely for the purpose of **loading or unloading** it from the **insured auto**, but no more than one road mile from the **insured auto**.

8.   "**Mobile/Modular Homes and Buildings**" means prefabricated housing units and buildings, factory-built homes and buildings, mobile homes, and modular homes and buildings. The term does not include motor homes or travel trailers designed for use on public roads.

9.   "**Pollutant**" is used in this endorsement as defined in the General Definitions section of **your** Commercial Auto Policy. Additionally, as used in this endorsement, it includes electrical or magnetic emissions, whether visible or invisible, and sound emissions.

10. "**Specified peril**" means:

    a.  fire, lightning, or explosion;

    b.  smoke, but this cause of **loss** does not include smoke from exhaust fumes or gases of the transporting vehicle, agricultural smudging, or industrial operations;

    c.  windstorm or hail, but this cause of **loss** does not include **loss** caused by or resulting from:

        (i)  heat, cold, or change in or extremes of temperature; or

        (ii)  ice (other than hail), snow, or sleet, whether driven by wind or not;

    d.  collision, overturn, or derailment of a transporting conveyance. With respect to live animals, birds, or fish, this cause of **loss** does not include **loss** caused by or resulting from the **insured auto** coming in contact with:

        (i)  the roadbed;

        (ii)  curbing;

        (iii)  rails or ties of railways; or

        (iv)  a stationary object while backing for **loading or unloading** purposes;

    e.  collapse of a bridge, wharf, dock, platform, or culvert;

    f.  stranding, sinking, burning, or collision on any ferry;

    g.  flood, meaning the rising of any natural body of water; and

    h.  theft, but excluding pilferage by **you** or **your** employees, anyone with a financial interest in the cargo or their employees, authorized representatives or anyone else entrusted with the cargo. Theft does not include **loss** caused by or resulting from:

        (i)  wrongful conversion; or

        (ii)  acceptance of counterfeit money, fraudulent post office or express money orders, or checks or promissory notes not paid upon presentation.

    With respect to live animals, birds, or fish, **we** will extend this theft coverage to pay for direct physical **loss** to live animals, birds, or fish caused by theft of:

        (i)  the entire load of live animals, birds, or fish; or

        (ii)  the **insured auto** in or on which the live animals, birds, or fish are loaded.

    However, this coverage extension does not apply to the loss of individual animals or less than the entire load of live animals, birds, or fish unless the entire **insured auto** is first stolen.

11. "**Trucker**" means any person, organization, or motor carrier engaged in the business of transporting property for hire.

## ADDITIONAL PAYMENTS

In addition to the applicable limit of liability:

1. **Earned Freight**

    **We** will pay **earned freight charges** that are due to **you** if **you** are unable to collect them from others because of a **loss** to **covered property** that is caused by a **covered peril**. The most **we** will pay under this additional coverage for all freight charges in any one **loss** is $10,000.

2. **Removal Expenses**

    a.  **We** will pay removal expenses incurred to remove debris of **covered property**, which results from a **loss** caused by a **covered peril** that occurs during the policy period. The term "debris" does not include **pollutants**.

    b.  **We** will also pay removal expenses incurred to extract **pollutants** from land or water, if the discharge, dispersal, migration, or release of the **pollutants** is caused by or results from **loss** to **covered property**, and if such **loss** is caused by a **covered peril** during the policy period.

    **We** do not pay for:

    (i)   the cost of testing; evaluating; observing; or recording the existence, level, or effects of **pollutants**. However, **we** will pay the cost of testing that is necessary for the extraction of **pollutants** from land or water.

    (ii)  any damage to **your insured auto** from **pollutants**.

  c.  The most **we** will pay for all removal expenses described in a. or b. above arising out of any one **loss** is $25,000.

  d.  The expenses for removal of **covered property** debris and **pollutants** will be paid only if they are reported to **us** in writing within 180 days of the earlier of:

    (i)   the date of the direct physical **loss**; or

    (ii)  the end of the policy period.

3.  **Expenses in Defense or Settlement of Claims**

    **We** will pay, with respect to any claim **we** investigate or settle, or with respect to any lawsuit against any insured **we** defend:

  a.  all expenses **we** incur.

  b.  the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. However, **we** have no duty to purchase a bond in a principal amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds.

  c.  all reasonable expenses incurred by **you** at **our** request, including actual loss of earnings up to $250 per day because of time off from work.

  d.  all costs taxed against the insured in any lawsuit against the insured **we** defend.

  e.  interest accruing after entry of judgment on that part of the judgment that does not exceed **our** limit of liability for any lawsuit **we** defend. This does not apply if **we** have not been given notice of suit or the opportunity to defend an insured. **Our** payment, offer in writing, or deposit in court of that part of the judgment that does not exceed **our** limit of liability ends **our** duty to pay interest that accrues after the date of **our** payment, written offer, or deposit.

  f.  interest accruing before entry of judgment on that part of the judgment that does not exceed **our** limit of liability for any lawsuit **we** defend. **Our** offer to pay that part of the judgment that does not exceed **our** limit of liability ends **our** duty to pay interest that accrues after **our** offer.

4.  **Sue and Labor**

  a.  **We** will pay the necessary expenses **you** incur to prevent further **loss** to **covered property** if that expense is incurred within a 12-hour period after the **covered peril** occurs.

  b.  If, in the event of an occurrence, it becomes necessary to move the **covered property** in order to avoid a **loss** to the **covered property**, **we** will pay the reasonable and necessary costs incurred by **you** to move the **covered property** away from the location of the occurrence.

  c.  The most **we** will pay for the aggregate of all expenses incurred under subparts a. and b. above is $7,500.

**LIMITS OF LIABILITY**

1.  **Amount of Payment**

  a.  Subject to subsections 2., 3., and 4. below, in the event of a **loss** to **covered property**, **we** will pay the least of the following:

    (i)   **Your** legal liability for the direct physical **loss** to the **covered property**;

    (ii)  The declared value of the **covered property** shown in the bill of lading, tariff documents, rate confirmation sheet, shipping receipt, or contract of carriage;

    (iii)  For household goods, the amount specified in any advice of coverage, or other document evidencing an agreed valuation for property in transit;

    (iv)  The actual cost to the shipper to repair or replace the **covered property** with material of like kind and quality, not including any claim for diminution of value to the **covered property**; or

    (v)  The "Cargo" limit shown on the **declarations page**.

b.   Regardless of the number of **insured autos** or **trailers** involved, insureds, premiums paid, policies issued by **us**, claims made, or lawsuits brought, the most **we** will pay for **loss** to **covered property** in any one occurrence is the limit of liability shown on the **declarations page** for "Cargo Liability" coverage.

c.   With respect to **business equipment**, subject to subsections 2., 3., and 4. below, in the event of a **loss**, **we** will pay the lower of:

(i)   the amount necessary to replace the **business equipment**; or

(ii)   the amount necessary to repair the **business equipment**.

**We** will not pay the amount necessary to repair or replace **business equipment** unless the equipment has been, or is actually going to be, repaired or replaced. Subject to the limit of liability for this coverage, **we** will pay only the amount **you** are required to spend to repair or replace the **business equipment**.

The most **we** will pay for **loss** to **business equipment** in any one occurrence is the $5,000 limit of liability for this **business equipment** coverage.

2.   **Deductible**

For each **loss** to **covered property** that qualifies for coverage under this endorsement, the deductible shown on the **declarations page** for this "Cargo Liability" coverage will be applied to reduce the **loss** payable on the **covered property**. A $250 deductible will apply to each **business equipment loss**. For each **loss** to **business equipment** that qualifies for coverage under this endorsement, the **business equipment** deductible will be applied to reduce the **loss** payable on the **business equipment**.

If there is other **loss** arising out of a single occurrence that applies under this endorsement, or under the associated Commercial Auto Policy, and/or any other endorsement attached thereto, only one deductible will be applied to the aggregate of all **loss** components. The highest deductible applicable to any single coverage implicated in the **loss** will apply.

If **we** pay for any part of a deductible in the settlement of any claim or lawsuit, **you** must reimburse **us** for the deductible or the portion thereof that **we** paid.

3.   **Insurable Interest**

**We** will not cover more than **your** insurable interest in any **covered property** or **business equipment**.

4.   **Sets or Parts**

a.   Sets

The **loss** to an article that is part of a set will not be considered a **loss** to the entire set. Therefore, if there is a **loss** to **covered property** or **business equipment** that is part of a set, **we** at **our** option may choose to:

(a)   repair or replace any part to restore the pair or set to its value before the **loss** or damage; or

(b)   pay the difference between the value of the pair or set before and after the **loss** or damage.

b.   Parts

If **loss** is to a part of **covered property** or **business equipment** that consists of several parts, **we** will pay for only the lost or damaged part.

**DUTIES IN CASE OF A LOSS**

The following additional duties apply under this Motor Truck Cargo Legal Liability Coverage endorsement:

1.   **You** must take all reasonable steps to protect **covered property** and **business equipment** at the time of and after a **loss** to

avoid further damage.

2. **You** must allow **us** to have all property involved in an **accident** or **loss** inspected and appraised before its repair or disposal.

3. **You** must give **us** a copy of the descriptions and schedules from all insurance policies applicable to the **covered property** or **business equipment**, whichever the case may be, that was destroyed or damaged.

4. **You** must send **us** a signed, sworn proof of loss containing all the information **we** request to settle the claim. **You** must do this within 60 days after **our** request. **We** will supply **you** with the necessary forms.

5. **You** must, as often as **we** reasonably require, submit, and so far as is within **your** power, cause all other persons interested in the **covered property** or **business equipment**, whichever the case may be, and members of their households and employees to submit, to examination under oath by any person **we** name, and, in connection with any claim made, to produce for examination all books of accounts, uniform bills of lading, shipping receipts, invoices, drivers' log books, and any other documents, at such reasonable time and place as **we** may designate, and permit extracts and copies thereof to be made.

6. Unless **we** give **our** permission, **you** may not dispose of the carcass(es) of animals, birds, or fish until **we** inspect or examine such carcass(es). However, this clause does not apply if such disposal is required by law or ordinance.

## GENERAL PROVISIONS

1. When used in this endorsement, subsection 3—Other Insurance of the General Provisions section of **your** Commercial Auto Policy is deleted in its entirety and replaced by the following:

   a. **Other Insurance**
      (i) **You** may have other insurance subject to the same terms, conditions, and provisions as the insurance provided by this endorsement. If **you** do, **we** will pay **our** share of the covered **loss**. **Our** share is the proportion that the applicable limit of liability under this endorsement bears to the total of the limits of liability of all policies covering on the same basis.
      (ii) If there is other insurance covering the same **loss**, other than that described in paragraph (i) above, **we** will pay only for the amount of the covered **loss** in excess of the amount due from that other insurance, whether **you** can collect on it or not. However, **we** will not pay more than **our** applicable limit of liability.

   b. **Insurance Under Two or More Coverages**
      If two or more of this endorsement's coverages apply to the same **loss**, **we** will not pay more than the amount of the **loss** as determined under subsection 1—Amount of Payment in the Limits of Liability section of this endorsement, or the limit of liability applicable to the most specific coverage, whichever is less.

2. The following additional General Provisions apply to this Motor Truck Cargo Legal Liability Coverage endorsement:

   a. **Payment of Loss**
      (i) A covered **loss** will be payable 30 days after a satisfactory proof of loss is received or a final judgment award has been entered.

      **We** may make payment for a **loss** either to **you** or the owner of the property. **We** will not pay the owner more than their financial interest in the property. If **we** make a payment to the owner of the property, this shall be in full satisfaction of any claim by **you** for which such payment has been made.

9

If a **loss** has been paid or made good by others, **we** will not be liable for any part of the **loss**. Payment for a **loss** is required only if **you** have fully complied with all the terms of this policy.

(ii)  With respect to **covered property**, **we** have the following options:

    (a)  pay the value of the **loss** as determined under subsection 1—Amount of Payment in the Limits of Liability section of this endorsement;

    (b)  pay the cost of repairing or replacing the **covered property**;

    (c)  rebuild, repair, or replace the **covered property** with property of like kind and quality, to the extent practicable, and within a reasonable time; or

    (d)  take all or any part of the damaged property at an agreed value.

(iii)  With respect to **business equipment**, **we** will pay the loss as determined under subsection 1—Amount of Payment in the Limits of Liability section of this endorsement.

b.  **Abandonment**

**We** may keep all or part of the property at the agreed or appraised value, but **you** may not abandon any property to **us** without **our** written consent.

c.  **Conformity with Statute**

When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

d.  **Recovered Property**

If **you** or **we** recover any **covered property** or **business equipment** for which **we** have made payment under this policy, **you** or **we** will promptly notify the other of the recovery. At **your** option, the property will be returned to or retained by **you** or it will become **our** property. If **you** keep the property, **you** must return to **us** the amount **we** paid to **you** for the **covered property** or **business equipment**, whichever the case may be. **We** will pay recovery expenses and the expenses to repair the recovered **covered property** and **business equipment**, subject to the limit of liability.

If **we** have already paid **you** the **loss** amount at the time of any salvage or recovery, the amount **you** receive for the recovered **covered property** will accrue entirely to **our** benefit until **you** have paid any amounts owed to **us** as a result of the adjustment to the **loss** amount.

e.  **Salvage**

Any recovery of salvage on a **loss** will accrue entirely to **our** benefit until the sum **we** paid has been replaced. If **our** benefit of salvage recovery exceeds the sum that **we** paid, **we** will return the difference to **you**, less any salvage recovery expenses.

f.  **Policy Period and Territory**

Coverage under this endorsement applies only to **losses** that occur during the policy period shown on the **declarations page** and which occur within the United States or Canada.

g.  **Coverage Required by Filings**

If **we** have filed a certificate of insurance on **your** behalf with any regulatory or governmental agency, and:

(i)  **we** are required to pay any judgment entered against **you**; or

(ii)  **we** agree to settle a claim or lawsuit;

arising out of a **loss** that is covered solely because of the existence of such certificate of insurance, **we** will be obligated to

pay no more than the minimum amount required by that agency or any applicable law. If any payment is based solely on the existence of such certificate, **you** must reimburse **us** in full for **our** payment, including legal fees and costs **we** incurred, whether the payment is made as a result of judgment or settlement.

h.  **No Benefit to Bailee**

No person or organization other than **you**, having custody of **covered property** or **business equipment**, will benefit from this insurance.

i.  **Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom **we** make payment under this endorsement has rights to recover damages from another, those rights are transferred to **us** to the extent of **our** payment. That person or organization must do everything necessary to secure **our** rights and must do nothing after **loss** to impair them. But **you** may waive **your** rights against another party in writing:

(i)  Prior to a **loss** to the **covered property** or **business equipment**.

(ii)  After a **loss** to the **covered property** or **business equipment**, but only if, at the time of **loss**, that party is one of the following:

(a)  someone insured by this insurance; or

(b)  a business firm:

(1)  owned or controlled by **you**; or

(2)  that owns or controls **you**.

j.  **Legal Action Against Us**

No one may bring a legal action against **us** under this endorsement unless:

(i)  there has been full compliance with all the terms of this policy; and

(ii)  the action is brought within three years after **you** first have knowledge of the direct **loss** or damage.

k.  **Premiums**

The first named insured shown on the **declarations page**:

(i)  is responsible for the payment of all premiums; and

(ii)  will be the payee for any return premiums **we** pay.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THIS POLICY REMAIN UNCHANGED.**

PRESTIGE INTNL INS
7200 W MCNAB ROAD
TAMARAC, FL 33321

**PROGRESSIVE®**
*COMMERCIAL*

**Policy number:  03495191**

Underwritten by:
Progressive Southeastern Ins Co
Insured:
THE MORNING STARS TRANS LLC
December 5, 2022
Policy Period: Apr 10, 2022 - Apr 10, 2023

Red Lightning Logistics
148 W. MAIN ST
CARTERSVILLE, GA 30120

**Mailing Address**

Progressive Southeastern Ins Co
PO Box 94739
Cleveland, OH 44101

# Additional insured endorsement

**1-800-444-4487**
For customer service, 24 hours a day,
7 days a week

## Name of Person or Organization

Red Lightning Logistics
148 W. Main St
Cartersville, GA 30120

This endorsement modifies insurance provided under the commercial auto policy and any endorsements thereto affording liability coverage.

The person or organization named above is an **insured** with respect to such liability coverage as is afforded by the policy, but this insurance applies to said **insured** only as a person liable for the conduct of another **insured** and then only to the extent of that liability. **We** also agree with **you** that insurance provided by this endorsement will be primary for any power unit specifically described on the **Declarations Page** and showing liability coverage.

### Limit of Liability

| | |
|---|---|
| **Bodily Injury** | Not applicable |
| **Property Damage** | Not applicable |
| **Combined Liability** | $1,000,000 each **accident** |

### All other terms, limits and provisions of this policy remain unchanged.

This endorsement applies to Policy Number: 03495191
Issued to (Name of Insured): THE MORNING STARS TRANS LLC

Effective date of endorsement: December 2, 2022        Policy expiration date: April 10, 2023

Form 1198 (07/16)

# NORTH CAROLINA
## COMMERCIAL AUTO FORMS

**PLEASE READ YOUR POLICY AGREEMENT CAREFULLY.**
Provisions of this Agreement and its endorsements restrict coverage. Be certain you
understand all of the coverage terms, the exclusions, and your rights and duties.

**All forms in the endorsement section do not automatically pertain to your policy.**
Please refer to your declarations page for form numbers associated with your policy.
Only those endorsements whose form numbers appear on your declarations page
apply to your policy. All other parts of the policy that have not been modified by an
endorsement will remain unchanged.

This booklet contains Form 6912 (02/19) and a section of optional endorsements.



*PROGRESSIVE*®
COMMERCIAL

**COMMERCIAL AUTO POLICY**

---

**INDEX OF POLICY PROVISIONS**

**PAGE**

**DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS**. . . . . . . . . . . . . . . . . . . .1

**GENERAL DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

**PART I—LIABILITY TO OTHERS**
Insuring Agreement—Liability To Others . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6
Additional Definitions Used in This Part Only . . . . . . . . . . . . . . . . . . . . . . . . . .6
Additional Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
Out-Of-State Coverage Extension. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

**PART II—DAMAGE TO YOUR AUTO**
Insuring Agreement—Collision Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . .15
Insuring Agreement—Comprehensive Coverage . . . . . . . . . . . . . . . . . . . . . .15
Insuring Agreement—Fire and Theft with Combined
  Additional Coverage (CAC) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16
Additional Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16
Additional Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17
Additional Definition Used in This Part Only . . . . . . . . . . . . . . . . . . . . . . . . . .17
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18
Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19
Deductible . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21
Salvage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22
No Benefit to Bailee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22
Appraisal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22
Payment of Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23
Loss Payee Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

**GENERAL PROVISIONS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

**COMMERCIAL AUTO POLICY**

If **you** pay **your** premium when due, **we** will provide the insurance described in this policy.

## DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each **accident** or **loss** even if **you** or the person seeking coverage is not at fault. Refer to your policy documents for the claims phone number.

**You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the **accident** or **loss**, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

If **you** or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the **accident**, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police within 24 hours or as soon as practicable. However, for purposes of uninsured motorist coverage when the owner or operator of a vehicle involved in the accident cannot be identified, **you** or the person seeking coverage must notify the police no more than 30 days after the accident.

A person seeking coverage must:
1. cooperate with **us** in any matter concerning a claim or lawsuit;
2. provide any written proof of **loss we** may reasonably require;
3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you**, a **relative**, or any person claiming coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;
4. promptly call **us** to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to any claim or lawsuit;
5. attend hearings and trials as **we** require;
6. submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require;
7. authorize **us** to obtain medical and other records;
8. take reasonable steps after a **loss** to protect the **insured auto** from further **loss**. **We** will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;
9. allow **us** to have access to an **insured auto** or other **auto** involved in an **accident** or **loss** and to have it inspected and appraised before its repair or disposal; and
10. authorize **us** access to **your** business or personal records as often as **we** may reasonably require.

1

**GENERAL DEFINITIONS**

**The words and phrases below, whether in the singular, plural or possessive, have the following special meanings when appearing in boldface type in this policy, and in endorsements issued in connection with this policy, unless specifically modified.**

1.  "**Accident**" means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes **bodily injury** or **property damage**.

2.  "**Auto**" means a land motor vehicle or **trailer** designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. It does not include **mobile equipment**. Self-propelled vehicles with the following types of permanently attached equipment are **autos**, not **mobile equipment**:
    a.  equipment designed and used primarily for:
        (i)   snow removal;
        (ii)  road maintenance, but not construction or resurfacing;
        (iii) street cleaning;
    b.  cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
    c.  air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well-servicing equipment.

3.  "**Bodily injury**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

4.  "**Declarations**" or "**declarations page**" means the document prepared by **us** listing **your** policy information, which may include the types of coverage **you** have elected, the limit for each coverage, the cost for each coverage, the specifically described **autos** covered by this policy, and the types of coverage for each specifically described **auto**.

5.  "**Employee**" includes a **leased worker** and a statutory employee. **Employee** does not include a **temporary worker**.

6.  "**Insured auto**" or "**your insured auto**" means:
    a.  Any **auto** specifically described on the **declarations page**; or
    b.  An additional **auto** for Part I—Liability To Others and/or Part II—Damage To Your Auto on the date **you** become the owner if:
        (i)  **you** acquire the **auto** during the policy period shown on the **declarations page**;

2

(ii) **we** insure all **autos** owned by **you** that are used in **your** business;

(iii) no other insurance policy provides coverage for that **auto**; and

(iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

If **you** add any coverage, increase **your** limits, or make any other changes to this policy during the 30-day period after **you** acquire an additional **auto**, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes for the additional **auto**. **We** may charge premium for the additional **auto** from the date **you** acquire the **auto**.

With respect to Part I—Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

With respect to Part II—Damage To Your Auto, if **we** provide coverage for an **auto you** acquire in addition to any **auto** specifically described on the **declarations page**, and the additional **auto** is:

(i) a **private passenger auto**, **we** will provide the broadest coverage **we** provide for any **auto** shown on the **declarations page**; or

(ii) any **auto** other than a **private passenger auto**, and **you** have purchased Physical Damage coverage for at least one **auto** other than a **private passenger auto**, **we** will provide the broadest coverage for which the newly acquired **auto** is eligible.

c. Any replacement **auto** on the date **you** become the owner if:

(i) **you** acquire the **auto** during the policy period shown on the **declarations page**;

(ii) the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and

(iii) no other insurance policy provides coverage for that **auto**.

If **we** provide coverage for a replacement **auto**, **we** will provide the same coverage for the replacement **auto** as **we** provide for the replaced **auto**. **We** will provide that coverage for a period of 30 days after **you** become the owner of such replacement **auto**. **We** will not provide any coverage after this 30-day period unless within this period **you** ask **us** to insure the replacement **auto**. If **you** add any coverage, increase **your** limits, or make any other changes to **your** policy during this 30-day period, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes.

3

a. A lease of premises;
b. A sidetrack agreement;
c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
e. That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability that is vicariously imposed on another for **your** negligence or that of **your employees** or agents; or
f. That part of any contract or agreement, entered into as part of **your** business, for the rental of an **insured auto**. However, such contract or agreement shall not be considered an **insured contract** to the extent that it obligates **you** or any of **your employees** to pay for **property damage** to any **auto** rented or leased to **you** or any of **your employees**.

An "**insured contract**" does not include that part of any contract or agreement:
1. That indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass, or crossing; or
2. That pertains to the loan, lease or rental of an **auto** to **you** or any of **your employees**, if the **auto** is loaned, leased or rented with a driver; or
3. That holds a person or organization engaged in the business of transporting property by **auto** for hire harmless for **your** use of an **insured auto** over a route or territory that person or organization is authorized to serve by public authority.

8. "**Leased worker**" means a person leased to **you** by a labor leasing firm under an agreement between **you** and the labor leasing firm to perform duties related to the conduct of **your** business. **Leased worker** does not include a **temporary worker**.

9. "**Loss**" means sudden, direct and accidental loss or damage.

10. "**Mobile equipment**" means any of the following types of land vehicles, including, but not limited to, any attached machinery or equipment:
    a. Bulldozers, farm implements and machinery, forklifts, and other vehicles designed for use principally off public roads;
    b. Vehicles **you** use solely on premises **you** own or rent and on accesses to public roads from these premises, unless specifically described on the **declarations page** and not defined as **mobile equipment** under other parts of this definition;

4

   c.  Any vehicle that travels on crawler treads, or that does not require licensing in the state in which **you** reside or **your** business is licensed;

   d.  Vehicles, whether self-propelled or not, used primarily to provide mobility to permanently attached:
     (i)  Power cranes, shovels, loaders, diggers, or drills; or
     (ii)  Road construction or resurfacing equipment, such as graders, scrapers or rollers.

   e.  Vehicles not described in Paragraphs a., b., c., or d. above that are not self-propelled and are used primarily to provide mobility to permanently attached equipment of the following types:
     (i)  Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well-servicing equipment; or
     (ii)  Cherry pickers and similar devices used to raise or lower workers.

   f.  Vehicles not described in Paragraphs a., b., c., or d. above that are self-propelled and used primarily for purposes other than transportation of persons or cargo.

However, **mobile equipment** does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged.

11. "**Occupying**" means in, on, entering or exiting.

12. "**Personal vehicle sharing program**" means a system or process, operated by a business, organization, network, group, or individual, that facilitates the sharing of **private passenger autos** for use by individuals, businesses, or other entities.

13. "**Pollutants**" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

14. "**Private passenger auto**" means a land motor vehicle:
   a.  of the private passenger, pickup body, or cargo van type;
   b.  designed for operation principally upon public roads;
   c.  with at least four wheels; and
   d.  with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.

However, **private passenger auto** does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.

15. "**Property damage**" means physical damage to, destruction of, or loss of use of, tangible property.

16. "**Relative**" means any person residing in the household in which the named insured resides who is related to the named insured by blood, marriage, or

5

adoption, including a ward or foster child. This term only applies if the named insured is a natural person.

17. "**Temporary substitute auto**" means any **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction. However, **temporary substitute auto** does not include any **auto** available for the regular or frequent use of **you**, a **relative**, or **your employees** unless that **auto** is insured under a separate policy of insurance that provides at least the minimum required limits of financial responsibility under the applicable state and federal laws.

18. "**Temporary worker**" means:
    a. a person who is furnished to **you** to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions; or
    b. a day laborer.

19. "**Trailer**" includes a semi-trailer and any piece of equipment used to convert a semi-trailer to a full trailer while it is attached to the semi-trailer.

20. "**We**", "**us**" and "**our**" mean the company providing this insurance as shown on the **declarations page**.

21. "**You**", "**your**" and "**yours**" refer to the named insured shown on the **declarations page**.

## PART I—LIABILITY TO OTHERS

### INSURING AGREEMENT—LIABILITY TO OTHERS

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense** for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property damage** to which this insurance applies.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

### ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

A. When used in Part I—Liability To Others, **insured** means:
   1. **You** with respect to an **insured auto**.

6

2. Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow except:

   (a) Any person while he or she is working in a business of selling, leasing, repairing, parking, storing, servicing, delivering or testing **autos**, unless that business is **yours** and it was so represented in **your** application.

   (b) Any person while he or she is moving property to or from an **insured auto**, other than one of **your employees**, partners (if you are a partnership), members (if you are a limited liability company), or officers or directors (if you are a corporation).

   (c) The owner or anyone else from whom the **insured auto** is leased, hired, or borrowed. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.

   (d) The employees or agents of an owner or anyone else from whom the **insured auto** is leased, hired or borrowed. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.

   For purposes of this subsection A.2., an **insured auto you** own includes any **auto** specifically described on the **declarations page**.

3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I—Liability To Others. If **we** make a filing or submit a certificate of insurance on **your** behalf with a regulatory or governmental agency, the term "**insured**" as used in such filing or certificate, and in any related endorsement, refers only to the person or organization named on such filing, certificate or endorsement.

B. When used in Part I—Liability To Others, **insured auto** also includes:
   1. **Trailers** designed primarily for travel on public roads, while connected to **your insured auto** that is a power unit;
   2. **Mobile equipment** while being carried or towed by an **insured auto**;
   3. Any **temporary substitute auto**; and
   4. **Mobile equipment** that is:
      a. owned by **you**;
      b. leased, hired, or borrowed by **you** and **you** have purchased either "Hired Auto Coverage" or "Any Automobile Legal Liability Coverage" from **us**; or
      c. not owned, leased, hired, or borrowed by **you** and **you** have purchased either "Employer's Non-Ownership Liability Coverage" or "Any Automobile Legal Liability Coverage" from **us**.

   However, **mobile equipment** meeting any of those three criteria will qualify only if at the time of **loss** it is being:
   a. used in **your** business;
   b. operated on a public highway; and
   c. operated in a state or province where it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law.

7

C. When used in Part I - Liability To Others, "**covered pollution cost or expense**" means any cost or expense arising out of:

1. Any request, demand, order, or statutory or regulatory requirement; or
2. Any claim or suit by or on behalf of a governmental authority demanding that the **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, **pollutants**.

**Covered pollution cost or expense** does not include any cost or expense arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **pollutants**:

a.  That are, or that are contained in any property that is:
    (i)   Being transported or towed by, handled, or handled for movement into, onto, or from, the **insured auto**;
    (ii)  Otherwise in the course of transit by or on behalf of the **insured**; or
    (iii) Being stored, disposed of, treated, or processed in or upon the **insured auto**;
b.  Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the **insured auto**; or
c.  After the **pollutants** or any property in which the **pollutants** are contained are moved from the **insured auto** to the place where they are finally delivered, disposed of, or abandoned by the **insured**.

The above Paragraph a. of this definition does not apply to fuels, lubricants, fluids, exhaust gasses, or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the **insured auto** or its parts if:

(1) The **pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **insured auto** part designed by its manufacturer to hold, store, receive or dispose of such **pollutants** and is a part that would be required for the customary operation of the **insured auto**; and
(2) The **bodily injury**, **property damage** or **covered pollution cost or expense** does not arise out of the operation of any equipment listed in Paragraphs b. and c. of the definition of **auto**.

The above Paragraphs b. and c. of this definition do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon an **insured auto** if:

(1) The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **insured auto**; and
(2) The discharge, dispersal, release or escape of the **pollutants** is caused directly by such upset, overturn or damage.

8

In addition to **our** Limit of Liability, **we** will pay for an **insured**:

1.  all expenses that **we** incur in the settlement of any claim or defense of any lawsuit;

2.  interest accruing after entry of judgment on that part of the judgment that does not exceed **our** Limit of Liability. This payment does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**. **Our** payment, offer in writing, or deposit in court of that part of the judgment which does not exceed **our** Limit of Liability ends **our** duty to pay interest which accrues after the date of **our** payment, written offer, or deposit;

3.  the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding **our** Limit of Liability, and **we** have no duty to apply for or furnish these bonds;

4.  up to $2,000 for cost of bail bonds required because of an **accident we** cover. **We** have no duty to apply for or furnish these bonds;

5.  reasonable expenses incurred by an **insured** at **our** request, including loss of earnings up to $250 a day; and

6.  all court costs taxed against the **insured** in any "suit" against the **insured** we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the **insured**.

## OUT-OF-STATE COVERAGE EXTENSION

If an **accident** to which this Part I applies occurs in any state, territory, or possession of the United States of America, Puerto Rico, or any province or territory of Canada, other than the state in which an **insured auto** is principally garaged, and the state, province, territory or possession has:
1.  a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **declarations page**, this policy will provide the higher limit; or
2.  a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an **auto** in that state, province, territory or possession, this policy will provide the greater of:
    a.  the required minimum amounts and types of coverage; or
    b.  the Limits of Liability under this policy.

This extension does not apply to the limit or limits specified by any law governing commercial carriers of passengers or property.

**We** will not pay anyone more than once for the same elements of **loss** because of this extension.

**EXCLUSIONS—PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I—LIABILITY TO OTHERS.**

Coverage under this Part I, including **our** duty to defend, does not apply to:

1. **Expected or Intended Injury**
   **Bodily injury** or **property damage** either expected by or caused intentionally by or at the direction of any **insured**.

2. **Contractual**
   Any liability assumed by an **insured** under any contract or agreement, unless the agreement is an **insured contract** that was executed prior to the occurrence of any **bodily injury** or **property damage**.

   However, this exclusion does not apply to liability for damages that an **insured** would have in the absence of the contract or agreement.

3. **Worker's Compensation**
   Any obligation for which an **insured** or an insurer of that **insured**, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law.

4. **Nuclear Energy Liability**
   An **accident** for which any person is insured under nuclear energy liability insurance. This exclusion applies even if the limits of that insurance are exhausted.

5. **Employee Indemnification and Employer's Liability**
   **Bodily injury** to:
   a. An **employee** of any **insured** arising out of or within the course of:
      (i) That **employee's** employment by any **insured**; or
      (ii) Performing duties related to the conduct of any **insured's** business; or
   b. The spouse, child, parent, brother or sister of that **employee** as a consequence of Paragraph a. above.

   This exclusion applies:
   a. Whether the **insured** may be liable as an employer or in any other capacity; and
   b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

10

But this exclusion does not apply to **bodily injury** to a domestic **employee** if benefits are neither paid nor required to be provided under any workers' compensation, disability benefits, or similar law, or to liability for **bodily injury** assumed by the **insured** under an **insured contract**. For the purposes of this policy, a domestic **employee** is a person engaged in household or domestic work performed principally in connection with a residence premises.

6. **Fellow Employee**
   **Bodily injury** to:
   a. a fellow **employee** of an **insured** injured while within the course of their employment or while performing duties related to the conduct of **your** business.
   b. the spouse, child, parent, brother, or sister of that fellow **employee** as a consequence of Paragraph a. above.

7. **Care, Custody or Control**
   **Property damage** to, towing or removal expense for, or **covered pollution cost or expense** involving, any property owned by, rented to, being transported by, used by, or in the care, custody or control of any **insured**, including any motor vehicle operated or being towed. But this exclusion does not apply to liability assumed under a sidetrack agreement.

8. **Movement of Property by Mechanical Device**
   **Bodily injury** or **property damage** resulting from or caused by the movement of property by a mechanical device, other than a hand truck, not attached to an **insured auto**.

9. **Handling of Property**
   **Bodily injury** or **property damage** resulting from or caused by the handling of property:
   a. before it is moved from the place where it is accepted by the **insured** for movement into or onto **your insured auto**; or
   b. after it has been moved from **your insured auto** to the place where it is finally delivered by the **insured**.

10. **Pollution**
    **Bodily injury** or **property damage** resulting from or caused by the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of any **pollutants**:
    a. That are, or that are contained in any property that is:
       (i) Being transported or towed by, handled, or handled for movement into, onto, or from, the **insured auto**;
       (ii) Otherwise in the course of transit by or on behalf of the **insured**; or
       (iii) Being stored, disposed of, treated, or processed in or upon the **insured auto**;

b. Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the **insured auto**; or

c. After the **pollutants** or any property in which the **pollutants** are contained are moved from the **insured auto** to the place where they are finally delivered, disposed of, or abandoned by the **insured**.

The above Paragraph a. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gasses, or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic, or mechanical functioning of the **insured auto** or its parts if:

(1) The **pollutants** escape, seep, migrate, or are discharged, dispersed, or released directly from an **insured auto** part designed by its manufacturer to hold, store, receive, or dispose of such **pollutants** and is a part that would be required for the customary operation of the **insured auto**; and

(2) The **bodily injury**, **property damage**, or **covered pollution cost or expense** does not arise out of the operation of any equipment listed in Paragraphs b. and c. of the definition of **auto**.

The above Paragraphs b. and c. of this exclusion do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon an **insured auto** if:

(1) The **pollutants** or any property in which the **pollutants** are contained are upset, overturned, or damaged as a result of the maintenance or use of an **insured auto**; and

(2) The discharge, dispersal, seepage, migration, release, or escape of the **pollutants** is caused directly by such upset, overturn, or damage.

11. **Racing**
    **Bodily injury** or **property damage** arising out of **you** or an **insured** participating in, or preparing for, a prearranged or organized racing, speed or demolition contest, stunting activity, or performance contest.

12. **War**
    **Bodily injury** or **property damage** arising directly or indirectly out of:
    a. War, including undeclared or civil war;
    b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
    c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

13. **Operations**
    **Bodily injury**, **property damage**, or **covered pollution cost or expense** arising out of the operation of:
    a. any equipment listed in Paragraphs b. and c. of the definition of **auto**; or

b. machinery or equipment that is on, attached to, or part of, a land vehicle that meets the definition of **mobile equipment**.

14. **Completed Operations**
**Bodily injury** or **property damage** arising out of, or caused by, **your** work after that work has been completed or abandoned.

For purposes of this exclusion, **your** work means:
a. Work or operations performed by **you** or on **your** behalf;
b. Materials, parts, or equipment furnished in connection with such work or operations; and
c. The delivery of liquids.

**Your** work includes warranties or representations made at any time with respect to the fitness, quality, durability, or performance of any of the items included in Paragraphs a., b., or c. above.

**Your** work will be deemed completed at the earliest of the following times:
a. When all of the work called for in **your** contract has been completed.
b. When all of the work to be done at a particular site has been completed if **your** contract calls for work at more than one site.
c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or sub-contractor working on the same project.
Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed.

15. **Criminal Acts**
**Bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of an **insured**. This exclusion applies regardless of whether that **insured** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

16. **Vehicle Sharing—Private Passenger Autos**
**Bodily injury** or **property damage** arising out of the use of an **insured auto** that is a **private passenger auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of an **insured auto** by **you**.

**LIMIT OF LIABILITY**

**We** will pay no more than the Limit of Liability shown on the **declarations page** for this coverage for the **insured auto** involved in the **accident** regardless of:
1. the number of premiums paid;
2. the number of **insured autos** or trailers shown on the **declarations page**;

13

3. the number of policies issued by **us**;
4. the number of vehicles or **insureds** involved in an **accident**; or
5. the number of claims or lawsuits arising out of an **accident**;

subject to the following:

1. **Coverage Required by Filings**

    If **we** have filed a certificate of insurance on **your** behalf with any regulatory or governmental agency, and:
    (i) **we** are required to pay any judgment entered against **you**; or
    (ii) **we** agree to settle a claim or lawsuit;
    for **bodily injury**, **property damage**, or **covered pollution cost or expense** arising out of an **accident** or **loss** otherwise not covered under the terms of this policy solely because of such certificate of insurance, **we** will be obligated to pay no more than the minimum amount required by that agency or applicable law. If any payment is based solely on such certificate, **you** must reimburse **us** in full for **our** payment, including legal fees and costs **we** incurred, whether the payment is made as a result of judgment or settlement.

2. **Combined Bodily Injury and Property Damage Limits**

    Subject to the terms of Section 1 above, if **your declarations page** indicates that combined **bodily injury** and **property damage** limits apply for "each accident" or "combined single limit" applies, the most **we** will pay for the aggregate of all damages and **covered pollution cost or expense** combined, resulting from any one **accident**, is the combined liability insurance limit shown on the **declarations page** for the **insured auto** involved in the **accident**.

3. **Separate Bodily Injury Liability and Property Damage Liability Limits**

    Subject to the terms of Section 1 above, if **your declarations page** indicates that separate **bodily injury** liability and **property damage** liability limits apply:

    a. The "each person" **bodily injury** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for **bodily injury** sustained by any one person in any one **accident**, and that "each person" maximum limit will apply to the aggregate of claims made for such **bodily injury** and any and all claims derived from such **bodily injury**, including, but not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.
    b. Subject to the **bodily injury** liability limit for "each person", the "each accident" **bodily injury** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for

14

**bodily injury** sustained by two or more persons in any one **accident**, including all derivative claims which include, but are not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

c. The "each accident" **property damage** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for the aggregate of all **property damage** and **covered pollution cost or expense** combined, sustained in any one **accident**.

For the purpose of determining **our** Limit of Liability under Sections 1., 2., and 3. above, all **bodily injury**, **property damage**, and **covered pollution cost or expense**, resulting from continuous or repeated exposure to substantially the same event, shall be considered as resulting from one **accident**.

An **insured auto** and any **trailer** or **trailers** attached thereto shall be deemed to be one **auto** with respect to **our** Limit of Liability.

When coverage is afforded for an **accident** involving an **insured auto** that, at the time of loss:

a. is a **trailer** specifically described on the **declarations page**; and
b. is attached to any power unit that is not an **insured auto** specifically described on the **declarations page**;

the maximum amount we will pay will be limited to the lesser of an amount not to exceed the applicable compulsory or financial responsibility law limits of the state identified in **your** address as shown on the **declarations page** or the Limit of Liability shown on the **declarations page**.

Any amount payable under Part I—Liability To Others to or for an injured person will be reduced by any payment made to that person under any Uninsured Motorist Coverage, Underinsured Motorist Coverage, Personal Injury Protection Coverage, or Medical Payments Coverage provided by this policy.

## PART II—DAMAGE TO YOUR AUTO

### INSURING AGREEMENT—COLLISION COVERAGE

Subject to the Limits of Liability, if **you** pay the premium for Collision Coverage, **we** will pay for **loss** to **your insured auto** and its **permanently attached equipment** when it collides with another object or overturns.

### INSURING AGREEMENT—COMPREHENSIVE COVERAGE

Subject to the Limits of Liability, if **you** pay the premium for Comprehensive Coverage, **we** will pay for **loss** to **your insured auto** and its **permanently attached equipment** from any cause other than those covered under Collision Coverage.

15

Any **loss** caused by missiles, falling objects, fire, theft, collision with an animal, or accidental glass breakage shall be deemed a Comprehensive **loss**. However, **you** have the option of having glass breakage caused by a covered **auto's** collision or overturn considered a **loss** under Collision Coverage.

## INSURING AGREEMENT—FIRE AND THEFT WITH COMBINED ADDITIONAL COVERAGE (CAC)

Subject to the Limits of Liability, if **you** pay the premium for Fire and Theft with Combined Additional Coverage (CAC), **we** will pay for **loss** to **your insured auto** and its **permanently attached equipment** caused by:

1. fire, lightning or explosion;
2. theft;
3. windstorm or hail;
4. earthquake;
5. flood or rising water;
6. malicious mischief or vandalism;
7. the stranding, sinking, burning, collision, or derailment of any conveyance in or upon which **your insured auto** is being transported; or
8. collision with a bird or animal.

No **losses** other than those specifically described above will be covered under Part II of this policy.

## ADDITIONAL COVERAGE

### 1. **Transportation Expenses**

**We** will pay up to $30 per day, up to a maximum of $900, for temporary transportation expenses incurred by **you** because of the theft of an **insured auto** that is a **private passenger auto**. This coverage applies only to those **insured autos** for which **you** carry Comprehensive Coverage. **We** will pay for temporary transportation expenses incurred during the period beginning 48 hours after **you** report the theft to **us**, and ending when the **insured auto** is returned to use, or **we** pay for its **loss**.

### 2. **Coverage for Temporary Substitute Autos**

If a **temporary substitute auto** is involved in a **loss**, **we** will provide the same coverage and deductible that would have applied to the **insured auto** for which it is a substitute. The most **we** will pay for **loss** to a **temporary substitute auto** is the lesser of the Actual Cash Value at the time of **loss** or the cost of repairing or replacing the damaged or stolen property with like kind and quality, less the applicable deductible.

16

### 3. Pet Injury Coverage

If **you** have purchased Collision Coverage for at least one **insured auto** listed on the **declarations page**, Pet Injury Coverage is included in **your** policy.

#### Insuring Agreement

If a **pet** sustains injury or death while inside an **insured auto** at the time of a **loss** covered under Collision, Comprehensive, or Fire & Theft with Combined Additional Coverage, **we** will pay:

1. for reasonable and customary veterinary fees incurred by **you** or the owner of the **pet** if the **pet** is injured in, or as a direct result of, the covered **loss**; or
2. a death benefit if the **pet** dies in, or as a direct result of, the covered **loss**.

In the event of a covered **loss** due to the theft of an **insured auto**, **we** will provide the death benefit provided the **pet** is not recovered.

#### Limits of Liability

The following additional Limits of Liability apply to Pet Injury Coverage:

1. The most **we** will pay for all damages in any one **loss** is a total of \$1,000 regardless of the number of **pets** involved.
2. If the **pet** dies in, or as a direct result of, a covered **loss**, **we** will provide a death benefit of \$1,000, less any payment **we** made toward veterinary expenses for the **pet**.
3. No deductible shall apply to this coverage.

## ADDITIONAL PAYMENTS

If **you** have paid the premium for Comprehensive Coverage, Collision Coverage, or Fire and Theft with Combined Additional Coverage, then in addition to **our** Limit of Liability, **we** will pay:

1. All reasonable expenses necessary to return a stolen **insured auto** to **you**, unless **we** determine the **auto** to be a total loss.
2. All reasonable expenses necessary to remove an **insured auto** from the site of an **accident** or **loss** and transport it to a repair facility.

## ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

When used in Part II—Damage To Your Auto:

1. "**Finance agreement**" means a written lease or loan contract, entered into as a part of **your** business, pertaining to the lease or purchase by **you** of an

17

**insured auto**, and subject to a valid promissory note or written payment obligation contained in a lease, and security agreement or other written agreement establishing a security interest, executed concurrently with a purchase or lease of the **insured auto** that is commensurate with fair market value.

2. "**Permanently attached equipment**" or **PAE** means equipment and devices that are permanently installed or attached to **your insured auto**. **Permanently attached equipment** also includes:
   a. accessories designed to work as part of the equipment or devices;
   b. load securing equipment and devices; and
   c. custom paint or decals.

3. "**Pet**" means a dog or cat occupying an **insured auto** with **your** express or implied consent.

**EXCLUSIONS—PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART II—DAMAGE TO YOUR AUTO.**

1. **We** will not pay for loss caused by or resulting from any of the following. Such **loss** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.
   a. **War or Military Action**
      (1) war, including undeclared or civil war;
      (2) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or agents;
      (3) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.
   b. **Nuclear Hazard**
      (1) the explosion of any weapon employing atomic fission or fusion; or
      (2) nuclear reaction or radiation, or radioactive contamination, however caused.

2. **We** will not pay for **loss** to any sound equipment, video equipment, or transmitting equipment not permanently installed in **your insured auto**, or to tapes, records, compact discs, DVDs, or similar items used with sound or video equipment.

3. **We** will not pay for **loss** to radar detectors or to any other equipment or device designed or used to detect speed measuring equipment, or to any equipment designed or used to jam or disrupt any speed measuring equipment.

4. **We** will not pay for **loss** due and confined to:
   a. wear and tear, freezing, mechanical or electrical breakdown, or structural failure caused by material fatigue, decomposition, or corrosion.

18

blowouts, punctures, flat spots, or other road damage to tires.
But, coverage does apply if the damage is the result of other **loss** covered by the policy.

5. **We** will not pay for **loss** incurred while **your insured auto** is used in any illicit trade or transportation, or due to **your insured auto's** destruction or confiscation by governmental or civil authorities because **you**, or, if **you** are a natural person, any **relative**, engaged in illegal activities.

6. **We** will not pay for **loss** caused by **you** or an insured participating in or preparing for a prearranged or organized racing, speed or demolition contest, stunting activity or performance contest.

7. **We** will not pay for **loss** to an **insured auto** for diminution of value.

8. If **we** pay **your** financial obligation under a **finance agreement**, **we** will not pay:
   a. Overdue **finance agreement** payments including any type of late fees or penalties;
   b. Financial penalties imposed under a **finance agreement** for excessive use, abnormal wear and tear, or high mileage;
   c. Security deposits not normally refunded by the lessor or lender;
   d. Cost of **finance agreement** related products such as, but not limited to, Credit Life Insurance, Health, Accident or Disability insurance purchased by **you**;
   e. Carryover balances from previous **finance agreements** or other amounts not associated with the **insured auto**; or
   f. Unpaid principal included in the outstanding **finance agreement** balance that was not used by **you** to purchase the **insured auto**.

9. **We** will not pay for **loss** to an **insured auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of an **insured auto** by **you**.

**LIMIT OF LIABILITY**

1. If the **declarations page** shows actual cash value for the **insured auto**, then the most **we** will pay for **loss** to **your insured auto** is the least of:
   a. the actual cash value of the stolen or damaged property at the time of **loss**;
   b. the amount necessary to replace the stolen or damaged property with other of like kind and quality; or
   c. the amount necessary to repair the damaged property to its pre-loss physical condition; however, if **we** determine that the **insured auto** is a total loss, **we** may, at **our** option, pay the lesser of the actual cash value, or the cost to replace, rather than repair, the **insured auto**.

19

**Permanently attached equipment (PAE)** is covered to the limit shown on the **declarations page**. This limit includes transfer of undamaged **PAE** to another **insured auto**, but will not increase the **PAE** limit shown on the **declarations page**.

2. If the **declarations page** shows Stated Amount for the **insured auto**, then the most **we** will pay for **loss** to **your insured auto** is the least of:
   a. the actual cash value of the stolen or damaged property at the time of **loss**;
   b. the amount necessary to replace the stolen or damaged property with other of like kind and quality;
   c. the amount necessary to repair the damaged property to its pre-loss physical condition; however, if **we** determine that the **insured auto** is a total loss, **we** may, at **our** option, pay the lesser of the actual cash value, Stated Amount, or the cost to replace, rather than repair, the **insured auto**; or
   d. the applicable Stated Amount of the property as shown on the **declarations page**.

   However, if there is a **finance agreement** in place for the **insured auto**, the most **we** will pay for a total loss where the outstanding financial obligation under a **finance agreement** for the **insured auto** at the time of the **loss** is:
   a. greater than the actual cash value of the **insured auto** at the time of **loss**; and
   b. the Stated Amount shown on the **declarations page** is greater than the actual cash value of the **insured auto** at the time of **loss**;

   is the lesser of:
   a. the applicable Stated Amount of the **insured auto** as shown on the **declarations page**; or
   b. the outstanding financial obligation under a **finance agreement** for the **insured auto** at the time of the **loss**.

   **PAE** is included in the value of the **insured auto**, but only to the extent the value of the equipment has been included in the Stated Amount shown on the **declarations page**. The transfer of undamaged **PAE** to another **insured auto** will be covered if the aggregate of all damage and cost to move is within the Stated Amount shown on the **declarations page**.

3. Payments for **loss** covered under Collision Coverage, Comprehensive Coverage, or Fire and Theft with Combined Additional Coverage are subject to the following provisions:
   a. in determining the amount necessary to repair damaged property to its pre-loss physical condition, the amount to be paid by **us**:
      (i) shall not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired, and the cost of repair or

20

replacement parts and equipment, as reasonably determined by **us**; and

    (ii) will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:

        (a) original manufacturer parts or equipment; and

        (b) non-original manufacturer parts or equipment;

b. the actual cash value is determined by the market value, age and condition of the **auto** at the time the **loss** occurs; and

c. duplicate recovery for the same elements of damages is not permitted.

4. To determine the amount necessary to repair the damaged property to its pre-loss physical condition as referred to in Paragraph 1.c., the total cost of necessary repairs will be reduced by:

a. the cost of labor, parts and materials necessary to repair or replace damage, deterioration, defects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the **accident** and that is eliminated as a result of the repair or replacement of property damaged in the **loss**. This adjustment for physical condition includes, but is not limited to, broken, cracked or missing parts, rust, dents, scrapes, gouges, and peeling paint;

b. an amount for depreciation (also referred to as betterment) that represents a portion of the cost of mechanical parts (parts that wear out over time and have a useful life typically shorter than the life of the **auto** as a whole) that are installed as replacements for existing mechanical parts that were defective, inoperable or nonfunctional prior to the **accident**, which **we** deem necessary to replace in the course of repair; and

c. an amount for depreciation (also referred to as betterment) on high-wear parts that have a measurable life, such as tires, batteries, engine or transmission, determined by the proportional increase in the useful life of the replacement part when compared to the replaced part. For example, if **we** replace a 24-month old battery that had a manufacturer's rated life of 60 months with a new 60-month rated battery, **our** payment for the battery is reduced by 40 percent and **you** are responsible to pay that 40 percent portion of the cost of the battery.

## DEDUCTIBLE

For each **loss** that qualifies for coverage under Comprehensive, Collision, or Fire and Theft with Combined Additional Coverage, the deductible shown on the **declarations page** for the **insured auto** will be applied. A single deductible will be applied to any **loss**. In the event there are different deductible amounts applicable to the **loss**, the higher deductible will be applied. In all events, the deductible will be applied against the limit of liability. If a **loss** involves another coverage added by endorsement to this policy, only one deductible will apply to the entire **loss** event.

If **your insured auto** is an additional **auto** that **you** have requested to be added to **your** policy within 30 days of **your** acquisition of the **auto**, and no deductible has been designated for the additional **auto** prior to the **loss**, then:

1. when the **insured auto** is a **private passenger auto**, **we** will apply the lowest deductible listed for any one **auto** listed on the **declarations page**; or
2. when the **insured auto** is an **auto** other than a **private passenger auto**, **we** will apply the highest deductible listed for any one **auto** listed on the **declarations page**.

No deductible will apply to a **loss** to window glass when the glass is repaired instead of replaced.

No deductible will apply to payments made under the Additional Payments section for expenses necessary to return a stolen **insured auto** to **you**.

### SALVAGE

If **we** pay the actual cash value of **your insured auto** less the deductible, or if **we** pay the amount necessary to replace **your insured auto** less the deductible, **we** are entitled to all salvage. If **your insured auto** is a total loss and **we** pay the applicable Limit of Liability or Stated Amount as shown on the **declarations page** less the deductible, **we** are entitled to the same percent of salvage as **our** payment bears to the actual cash value of **your insured auto**.

### NO BENEFIT TO BAILEE

No bailee or carrier shall benefit, directly or indirectly, from this Part II—Damage To Your Auto.

### APPRAISAL

If **we** cannot agree with **you** on the amount of **your loss**, then **you** or **we** may demand an appraisal of the **loss**. Each party shall appoint a competent and disinterested appraiser. If the appraisers agree on the amount of the **loss**, they shall submit a written report to **us** and this shall be deemed to be the amount of the **loss**.

If the appraisers cannot agree on the amount of the **loss** within a reasonable time, they shall then choose a competent, impartial umpire, provided that if they cannot agree on an umpire within 15 days, either **you** or **we** may petition a judge of a court having jurisdiction to choose an umpire. The disagreement of the appraisers shall then be submitted to the umpire. Subject to the provisions of the policy, a written agreement signed by both appraisers or by one appraiser and the umpire will be the amount of the **loss**.

**You** must pay **your** fees and expenses and those of **your** appraiser. **We** will pay **our** fees and expenses and those of **our** appraiser. All other expenses of the

appraisal, including payment of the umpire if one is necessary, will be shared equally by **you** and **us**.

By agreeing to an appraisal, **we** do not waive any of **our** rights under any other part of this policy, including **our** right to deny the claim.

**PAYMENT OF LOSS**

At **our** option, **we** may pay the **loss** in money, or repair or replace the damaged or stolen property. **We** may, at any time before the **loss** is paid or the property is replaced, return, at **our** expense, any stolen property either to **you** or to the address shown on the **declarations page**, with payment for the resulting damage less any applicable deductibles. **We** may keep all or part of the property at the agreed or appraised value, but there shall be no abandonment to **us**.

**We** may make payment for a **loss** either to **you** or the owner of the property. Payment for a **loss** is required only if **you** have fully complied with the terms of this policy.

**You** must convey title to and possession of the damaged, destroyed, or stolen property to **us** if **we** pay the actual cash value of **your insured auto** less the deductible or if **we** pay the amount necessary to replace **your insured auto** less the deductible.

**LOSS PAYEE AGREEMENT**

**We** will pay the Loss Payee named in the policy for **loss** to **your insured auto**, as the interest of the Loss Payee may appear.

This insurance covers the interest of the Loss Payee unless:

1. the **loss** results from fraudulent acts or omissions on **your** part; or
2. the **loss** is otherwise not covered under the terms of this policy.

Cancellation, nonrenewal, termination, or voiding ends this agreement as to the Loss Payee's interest.

If **we** make any payment to the Loss Payee, **we** will obtain the Loss Payee's rights against any other party.

## **GENERAL PROVISIONS**

1. **Policy Period and Territory**

   This policy applies only to **accidents** and **losses** occurring during the policy period shown on the **declarations page** and that occur within a state, territory, or possession of the United States of America, or a province or territory of Canada, or while an **insured auto** is being transported between their ports.

This policy, **your** insurance application (which is made a part of this policy as if attached hereto), the **declarations page**, as amended, and endorsements to this policy issued by **us** contain all the agreements between **you** and **us**. Subject to the following, its terms may not be changed or waived except by an endorsement issued by **us**.

The premium for this policy is based on information **we** have received from **you** or other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and **you** will notify **us** if it changes during the policy period. If this information is incorrect, incomplete, or changes during the policy period, **you** agree that **we** may adjust **your** premium during the policy period, or take other appropriate action.

Changes that may result in a premium adjustment include, but are not limited to, changes in:
a. the number, type, or use classification of **insured autos**;
b. operators using **insured autos**, their ages, driving histories, license status, state or country of license issuance, or marital status;
c. the place of principal garaging of any **insured auto**;
d. coverage, deductibles, or limits of liability; or
e. rating territory or discount eligibility.

If **you** ask **us** to delete a vehicle from this policy, no coverage will apply to that vehicle as of the date and time **you** ask **us** to delete it.

Nothing contained in this section will limit **our** right to void this policy for fraud, misrepresentation or concealment of any material fact by **you**, or anyone acting on **your** behalf.

3. **Other Insurance**

   a. For any **insured auto** that is specifically described on the **declarations page**, this policy provides primary coverage. For an **insured auto** which is not specifically described on the **declarations page**, coverage under this policy will be excess over any and all other valid and collectible insurance, whether primary, excess or contingent. However, if the **insured auto** that is specifically described on the **declarations page** is a **trailer**, this policy will be excess over any and all other valid and collectible insurance, whether primary, excess or contingent, unless the **trailer** is attached to an **insured auto** that is a power unit **you** own and that is specifically described on the **declarations page**.

   b. If coverage under more than one policy applies on the same basis, either excess or primary, **we** will pay only **our** proportionate share. **Our** pro-

portionate share is the proportion that the Limit of Liability of this policy bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

4. **Two or More Policies Issued By Us**

   If any applicable insurance other than this policy is issued to **you** by **us**, or any company affiliated with **us**, and applies to the same **accident** or **loss**, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

5. **Legal Action Against Us**

   **We** may not be sued unless there is full compliance with all the terms of this policy.

   **We** may not be sued for payment under Part I—Liability To Others until the obligation of an insured under Part I to pay is finally determined either by judgment against that insured after actual trial or by written agreement of the insured, the claimant, and **us**. No one will have any right to make us a party to a lawsuit to determine the liability of an insured.

6. **Our Recovery Rights**

   In the event of any payment under this policy, **we** are entitled to all the rights of recovery of the person or organization to whom payment was made. That person or organization must sign and deliver to **us** any legal papers relating to that recovery, do whatever else is necessary to help **us** exercise those rights, and do nothing after the **loss** or **accident** to harm **our** rights.

   When a person has been paid damages by **us** under this policy and also recovers from another, the amount recovered from the other shall be held in trust for **us** and reimbursed to **us** to the extent of **our** payment, provided that the person to or on behalf of whom such payment is made is fully compensated for their **loss**.

   In the event recovery has already been made from the responsible party, any rights to recovery by the person(s) claiming coverage under this policy no longer exist.

7. **Assignment**

   Interest in this policy may not be assigned without **our** written consent. If the policyholder named on the **declarations page** is a natural person and that person dies, the policy will cover:
   a. any other named insured on the policy;

b. the legal representative of the deceased person while acting within the scope of duty of a legal representative; and

c. any person having proper custody of **your insured auto** until a legal representative is appointed, but in no event for more than 30 days after the date of death.

8. **Waiver**

Notice to any agent or knowledge possessed by any agent or other person shall not change or effect a waiver on any portion of this policy nor prevent **us** from exercising any of **our** rights under this policy.

9. **Bankruptcy**

**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an insured.

10. **Inspection and Audit**

**We** shall have the right to inspect **your** property and operations at any time. This includes, but is not limited to, the right to inspect and audit the maintenance of any **autos** covered hereunder, the identity of **your** drivers and their driving records, and **your** radius of operations. In doing so, **we** do not warrant that the property or operations are safe and healthful, or are in compliance with any law, rule or regulation.

**We** shall also have the right to examine and audit **your** books and records at any time during the policy period and any extensions of that period and within three years after termination of the policy, as far as they relate to the subject matter of this insurance.

11. **Fraud or Misrepresentation**

This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void this policy at any time, including after the occurrence of an **accident** or **loss**, if **you**:
1. made incorrect statements or representations to **us** with regard to any material fact or circumstance;
2. concealed or misrepresented any material fact or circumstance; or
3. engaged in fraudulent conduct;
at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

Any changes **we** make at **your** request to this policy after inception will be made in reliance upon information **you** provide. If **you**:
1. make incorrect statements or representations to **us** with regard to any material fact or circumstance;

26

2. conceal or misrepresent any material fact or circumstance, or

3. engage in fraudulent conduct;

in connection with a requested change, **we** may void the policy or reform it as it existed immediately prior to the requested change. **We** may do this at any time, including after the occurrence of an **accident** or **loss**.

When **we** have not voided or reformed the policy, **we** may still deny coverage for an **accident** or **loss** if **you**, in connection with the policy application, or in connection with any requested change, have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, and that concealment, misrepresentation, or fraudulent conduct was material to a risk **we** assumed.

**We** may deny coverage for an **accident** or **loss** if **you** or any other insured knowingly concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct in connection with the presentation or settlement of a claim. **We** reserve all rights to indemnity against a person committing fraud or misrepresentation for all payments made and costs incurred.

12. **Liberalization**

If **we** make a change that broadens a coverage **you** have under this edition of **your** policy without additional charge, **you** will receive the broadened coverage. The broadened coverage applies on the date the coverage change is implemented in **your** state. This provision does not apply to a general program revision or **our** issuance of a subsequent edition of **your** policy. Otherwise, this policy can be changed only by endorsement issued by **us**.

13. **Severability**

Except with respect to the Limit of Liability, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or lawsuit is brought.

14. **Settlement of Claims**

**We** may use estimating, appraisal, or injury evaluation systems to adjust claims under this policy and to determine the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us** or a third party and may include computer software, databases, and specialized technology.

15. **Automatic Termination**

If **we** or an affiliate offers to renew or continue this policy and **you** or **your** representative does not accept, this policy will automatically terminate at

the end of the current policy period at 12:01 a.m. Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

If **you** obtain other insurance on an **insured auto**, any similar insurance provided by this policy will terminate as to that **insured auto** on the effective date and at the effective time of the other insurance.

If an **insured auto** is sold or transferred, any insurance provided by this policy will terminate as to that **insured auto** on the effective date of the sale or transfer.

16. **Duty to Report Changes**

    **You** must promptly notify **us** when:
    1. **your** mailing or business address changes;
    2. the principal garaging address of an **insured auto** changes;
    3. there is any change with respect to the persons who operate an **insured auto**;
    4. there is a change in the driver's license status, or state or country of license issuance, of any person using an **insured auto**; or
    5. **you** acquire, sell, or dispose of **autos**.

17. **Terms of Policy Conformed to Statutes**

    If any provision of this policy fails to conform to the statutes of the state listed on **your** application as **your** business location, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** business location.

Form 6912 (02/19)

28

**All forms appearing in this endorsement section do not automatically pertain to your policy. Only those endorsements whose form numbers appear on your declarations page apply to your policy.**

| Form No./Description | Page |
|---|---|

1797 (02/19)
**Contingent Liability Endorsement—Limited Liability Coverage For Non-Trucking Use Of An Automobile** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

1890 (02/19)
**Employer's Non-Ownership Liability Endorsement** . . . . . . . . . . . . . . . . . . . . . . . .31

1891 (02/19)
**Hired Auto Coverage Endorsement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

2366 (02/11)
**Blanket Additional Insured Endorsement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

2367 (06/10)
**Blanket Waiver of Subrogation Endorsement** . . . . . . . . . . . . . . . . . . . . . . . . . . .34

2368 (06/10)
**Loan/Lease Gap Coverage Endorsement**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

2852 NC (02/19)
**Uninsured/Underinsured Motorist Coverage Endorsement** . . . . . . . . . . . .36

4717 (02/19)
**Trailer Interchange Coverage Endorsement**. . . . . . . . . . . . . . . . . . . . . . . . . . . .42

4757 (02/19)
**Medical Payments Coverage Endorsement** . . . . . . . . . . . . . . . . . . . . . . . . . . . .44

4852 NC (02/19)
**Cancellation and Nonrenewal Endorsement** . . . . . . . . . . . . . . . . . . . . . . . . . . .47

4881 NC (02/19)
**North Carolina Amendatory Endorsement**. . . . . . . . . . . . . . . . . . . . . . . . . . . . .50

5701 (02/19)
**Individual Named Insured Endorsement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .51

Z228 (01/11)
**Mobile Equipment As Insured Autos Endorsement**. . . . . . . . . . . . . . . . . .52

Z438 (02/19)
**Garage Operations Physical Damage Legal Liability
Coverage Endorsement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .54

Z439 (02/19)
**Non-Owned Trailer Physical Damage Coverage Endorsement**. . . . . . . . .60

Z442 (02/19)
**Any Automobile Legal Liability Coverage Endorsement** . . . . . . . . . . . . .63

## CONTINGENT LIABILITY ENDORSEMENT—LIMITED LIABILITY COVERAGE FOR NON-TRUCKING USE OF AN AUTOMOBILE

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

### PART I—LIABILITY TO OTHERS

A. Under the Additional Definitions Used In This Part Only section:

Subsection A.3. is deleted and replaced by the following:

3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I—Liability To Others. However, **insured** does not include anyone engaged in the business of transporting property by auto for hire that is liable for **your** conduct.

B. Under the Exclusions of Part I, the following exclusion is added:

**Trucking Use**
Coverage under this Part I, including **our** duty to defend, does not apply to an **insured auto** or any attached **trailer** while operated, maintained, or used:
a. To carry property or while such property is being loaded or unloaded from the **insured auto** or an attached **trailer**; or
b. In any business or for any business purpose.

### ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.

Form 1890 (02/19)

### EMPLOYER'S NON-OWNERSHIP LIABILITY ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

31

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

### ADDITIONAL DEFINITION USED IN THIS ENDORSEMENT

If **you** pay a premium for this Employer's Non-Ownership Liability coverage, then the following definition is added:

"**Non-owned auto**" means an **auto** that **you** do not own, lease, hire, rent, or borrow, and that is used in connection with **your** business. This includes **autos** owned by **your employees**, partners (if **you** are a partnership), members (if **you** are a limited liability company), or members of their households, but only while such **autos** are used in **your** business.

### CHANGES TO PART I—LIABILITY TO OTHERS

The definition of **insured auto** is modified to include a **non-owned auto** when used in connection with **your** business by **you** or any of **your employees**. The definition of **insured** does not include the owner of a **non-owned auto**.

### EXCLUSIONS

The insurance provided by this endorsement does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any **non-owned auto** in the conduct of any partnership or joint venture of which **you** are a partner or member and which is not shown as the named insured on the **declarations page**.

### OTHER INSURANCE

The insurance provided by this endorsement is excess over any other valid and collectible insurance.

### PREMIUM AGREEMENT

**We** may audit the number of employees and charge appropriately for additional premium up to three years after the policy expiration.

This does not alter or limit **our** general audit rights under the General Provisions section of this policy.

### ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.

## HIRED AUTO COVERAGE ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

### Additional definitions used in this endorsement

If **you** pay a premium for this Hired Auto Coverage, then the following definitions are added:

1.  "**Hired auto**" means an **auto**:
    a.  **you** lease, hire, rent or borrow; or
    b.  **your employee** leases, hires or rents:
        i.   under a contract in that individual **employee's** name;
        ii.  at **your** direction and with **your** express permission; and
        iii. only while being used in the conduct of **your** business.

    This does not include any **auto you** or an **employee** leases, hires, rents or borrows from any of **your employees**, partners (if **you** are a partnership), members (if **you** are a limited liability company), or member of their households.
2.  "**Cost of hire**" means the total amount paid by **you** for the hire of **autos**.

### Changes to Part I—Liability To Others

When used in Part I—Liability To Others, the definition of **insured auto** is amended to include **hired auto**.

### Other Insurance

The insurance provided by this Hired Auto Coverage endorsement is excess over any other valid and collectible insurance, whether primary, excess, or contingent.

### Premium agreement

The premium for this Hired Auto Coverage is based on the **cost of hire**, and is subject to a minimum **cost of hire**. **We** may audit the **cost of hire** and charge appropriately for additional premium for up to three years after the policy expiration.

This does not alter or limit **our** general audit rights under the General Provisions section of this policy.

### ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.

## BLANKET ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided by the Commercial Auto Policy, Motor Truck Cargo Legal Liability Coverage Endorsement, and/or Commercial General Liability Coverage Endorsement, as appears on the **declarations page**. All terms and conditions of the policy apply unless modified by this endorsement.

If **you** pay the fee for this Blanket Additional Insured Endorsement, **we** agree with **you** that any person or organization with whom **you** have executed a written agreement prior to any **loss** is added as an additional **insured** with respect to such liability coverage as is afforded by the policy, but this insurance applies to such additional **insured** only as a person or organization liable for **your** operations and then only to the extent of that liability. This endorsement does not apply to acts, omissions, products, work, or operations of the additional **insured**.

Regardless of the provisions of paragraph a. and b. of the "Other Insurance" clause of this policy, if the person or organization with whom **you** have executed a written agreement has other insurance under which it is the first named **insured** and that insurance also applies, then this insurance is primary to and non-contributory with that other insurance when the written contract or agreement between **you** and that person or organization, signed and executed by **you** before the **bodily injury** or **property damage** occurs and in effect during the policy period, requires this insurance to be primary and non-contributory.

In no way does this endorsement waive the "Other Insurance" clause of the policy, nor make this policy primary to third parties hired by the **insured** to perform work for the **insured** or on the **insured's** behalf.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form 2367 (06/10)

## BLANKET WAIVER OF SUBROGATION ENDORSEMENT

This endorsement modifies insurance provided by the Commercial Auto Policy, Motor Truck Cargo Legal Liability Coverage Endorsement, and/or Commercial General Liability Coverage Endorsement, as appears on the **declarations page**. All terms and conditions of the policy apply unless modified by this endorsement.

34

If **you** pay the fee for this Blanket Waiver of Subrogation Endorsement, **we** agree to waive any and all subrogation claims against any person or organization with whom a written waiver agreement has been executed by the named insured, as required by written contract, prior to the occurrence of any **loss**.

### ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.

Form 2368 (06/10)

## LOAN/LEASE GAP COVERAGE ENDORSEMENT

This endorsement modifies insurance provided by the Commercial Auto Policy. All terms and conditions of the policy apply unless modified by this endorsement.

### INSURING AGREEMENT—LOAN/LEASE PAYOFF COVERAGE

If **you** pay the premium for this coverage, and the **insured auto** for which this coverage was purchased is deemed by **us** to be a **total loss**, **we** will pay, in addition to any amounts otherwise payable under Part II of **your** policy, the difference between:

1. the actual cash value of the **insured auto** at the time of the **total loss**; and
2. any greater amount the owner of the **insured auto** is legally obligated to pay under a written loan or lease agreement to which the **insured auto** is subject at the time of the **total loss**, reduced by:
   a. unpaid finance charges or refunds due to the owner for such charges;
   b. excess mileage charges or charges for wear and tear;
   c. charges for extended warranties or refunds due to the owner for extended warranties;
   d. charges for credit insurance or refunds due to the owner for credit insurance;
   e. past due payments and charges for past due payments; and
   f. collection or repossession expenses.

However, **our** payment under this coverage shall not exceed the limit of liability shown on the **declarations page**. The limit of liability is a percentage of the actual cash value of the **insured auto** at the time of the loss.

This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **insured auto** and the loss is covered under one of those coverages.

### ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.

35

## UNINSURED/UNDERINSURED
## MOTORIST COVERAGE ENDORSEMENT

---

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy, and related endorsements, is modified as follows:

### INSURING AGREEMENT—UNINSURED MOTORIST COVERAGE

Subject to the Limits of Liability, if **you** pay the premium for Uninsured Motorist Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured** is legally entitled to recover from the **owner** or operator of an **uninsured auto** because of **bodily injury** or due to **property damage**:
1.  sustained by an **insured**;
2.  caused by an **accident**; and
3.  arising out of the ownership, maintenance, or use of an **uninsured auto**.

### INSURING AGREEMENT—UNDERINSURED MOTORIST COVERAGE

Subject to the Limits of Liability, if **you** pay the premium for Underinsured Motorist Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured** is legally entitled to recover from the **owner** or operator of an **underinsured auto** because of **bodily injury**:
1.  sustained by an **insured**;
2.  caused by an **accident**; and
3.  arising out of the ownership, maintenance, or use of an **underinsured auto**.

**We** will pay for damages caused by an **underinsured auto** under this endorsement only after payments from an applicable bodily injury liability bond or policy has been made and the payment matches or exceeds the applicable limit of liability shown for Uninsured/Underinsured Motorist Coverage on the **declarations page** of this policy and applicable to a single person.

### ADDITIONAL DEFINITIONS

When used in this endorsement, whether in the singular, plural, or possessive:
1.  "**Insured**" means:
    a.  if the named insured shown on the **declarations page** is a natural person:
        (i)  **you** or a **relative**;

(ii) any person **occupying your insured auto** or a **temporary substitute auto**; and

(iii) any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) or (ii) above; or

b. if the named insured shown on the **declarations page** is a corporation, partnership, organization, or any other entity that is not a natural person:

(i) any person **occupying your insured auto** or a **temporary substitute auto**; and

(ii) any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) above.

For purposes of this definition, **insured auto** includes **mobile equipment** that is:

a. owned by **you**;

b. leased, hired, or borrowed by **you** and **you** have purchased either "Hired Auto Coverage" or "Any Automobile Legal Liability Coverage" from **us**; or

c. not owned, leased, hired, or borrowed by **you** and **you** have purchased either "Employer's Non-Ownership Liability Coverage" or "Any Automobile Legal Liability Coverage" from **us**.

However, **mobile equipment** meeting any of those three criteria will be included in the definition only if at the time of **loss** it is being:

i. used in **your** business;

ii. operated on a public highway; and

iii. operated in a state or province where it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law.

2. "**Non-owned auto**" means any **auto** that is not **owned** by **you** or furnished for **your** regular use and, if the named insured is a natural person, not **owned** by or furnished for the regular use of the named insured's spouse or **relative**.

3. "**Owned**" means the person or organization:

a. holds legal title to the vehicle;

b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or

c. has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six months or more.

4. "**Owner**" means the person or organization who, with respect to a vehicle:

a. holds legal title to the vehicle;

b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or

c. has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six months or more.

5. "**Underinsured auto**" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the **acci-**

**dent**, but the sum of all applicable limits of liability for **bodily injury**:

    a. is less than the coverage limit for Underinsured Motorist Coverage shown on the **declarations page**; or

    b. has been reduced by payments for **bodily injury** to persons injured in the accident, other than an **insured person**, to less than the coverage limit for Underinsured Motorist Coverage shown on the **declarations page**.

An "**underinsured auto**" does not include any motorized vehicle or equipment:

    a. designed mainly for use off public roads, while not on public roads;

    b. while being used as a residence or premises; or

    c. that is an **uninsured auto**.

6. "**Uninsured auto**" means an **auto** or trailer of any type:

    a. to which no bodily injury liability bond or policy applies at the time of the **accident**;

    b. to which a **bodily injury** liability bond or policy applies at the time of the **accident**, but the bonding or insuring company:

        (i) denies coverage; or

        (ii) is or becomes insolvent;

    c. to which a **bodily injury** liability bond or policy applies at the time of the **accident**, but its limit of liability for **bodily injury** is less than the minimum limit of liability for **bodily injury** specified by the financial responsibility law of the state in which the **insured auto** is principally garaged;

    d. that is a hit-and-run vehicle whose operator or **owner** cannot be identified and which strikes:

        (i) an **insured auto** or **temporary substitute auto**; or

        (ii) if the named insured is a natural person:

            (a) **you** or a **relative**; or

            (b) a motor vehicle that **you** or a **relative** are occupying,

    provided that the **insured**, or someone on his or her behalf, reports the **accident** to the police or civil authority within 24 hours or as soon as practicable after the **accident**; or

    e. to which a **bodily injury** liability bond or policy applies at the time of the **accident**, but the sum of all applicable limits of liability for **bodily injury** is less than the coverage limit for Underinsured Motorist Coverage shown on the **declarations page**.

An "**uninsured auto**" does not include any motorized auto or equipment:

    a. **owned** by, furnished to, or available for the regular use of **you** or, if the named insured is a natural person, a **relative**;

    b. **owned** or operated by a self-insurer under any applicable vehicle law, except a self-insurer that is or becomes insolvent;

    c. **owned** by any governmental unit or agency;

    d. designed mainly for use off public roads, while not on public roads; or

    e. while being used as a residence or premises.

**EXCLUSIONS   READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EX-
CLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS EN-
DORSEMENT.**

1. Coverage under this endorsement is not provided for **bodily injury** or **property damage** sustained by any person while using or **occupying**:
   a. an **insured auto** without the express or implied permission of **you** or, if the named insured is a natural person, a **relative**;
   b. a **non-owned auto** without the express or implied permission of the **owner**; or
   c. an **auto** or device of any type designed to be operated on the public roads that is **owned** by, furnished to, or available for the regular use of **you** or, if the named insured is a natural person, a **relative**, other than an **insured auto** or **temporary substitute auto**.
2. Coverage under this endorsement is not provided for **property damage**:
   a. resulting from any prearranged or organized racing, speed or demolition contest, stunting activity, or in practice or preparation for any such contest or activity;
   b. due to a nuclear reaction or radiation;
   c. for which insurance is afforded under a nuclear energy liability insurance contract;
   d. to a trailer;
   e. when the property is contained in or struck by a vehicle **owned** by **you** or a **relative**, other than an **insured auto**; or
   f. caused by a hit-and-run vehicle whose operator cannot be identified.
3. Coverage under this endorsement will not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
   a. workers' compensation law; or
   b. disability benefits law.

## LIMITS OF LIABILITY

Regardless of the number of premiums paid, or the number of **insured autos** or trailers shown on the **declarations page**, or the number of policies issued by **us**, or the number of vehicles or **insureds** involved in the **accident**, or the number of claims or lawsuits arising out of an **accident**, **we** will pay no more than the Limit of Liability shown for Uninsured/Underinsured Motorist Coverage on the **declarations page**.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all **bodily injury** damages resulting from any one **accident**; except that without changing the total limit of insurance, **we** will apply the limit shown in the **declarations page** to first provide the separate limits required by North Carolina Law as follows:

1. $30,000 for **bodily injury** to any one person caused by any one **accident**;
2. $60,000 for **bodily injury** to two or more persons caused by any one **accident**; and
3. $25,000 for **property damage** caused by any one **accident**.

If **your declarations page** shows a split limit:
1. the amount shown for "each person" is the most **we** will pay for all damages due to a **bodily injury** to one person;
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one **accident**; and
3. the amount shown for "property damage" on the **declarations page** is the most **we** will pay for the aggregate of all **property damage** caused by any one **accident**.

The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

**Our** Limit of Liability under this endorsement for **property damage** to an **insured auto** arising out of one **accident** is the lowest of:
1. the actual cash value of the **insured auto** at the time of the **accident**, reduced by the deductible shown on the **declarations page**, and by its salvage value if **you** or the **owner** retain the salvage;
2. the amount necessary to replace the **insured auto**, reduced by the deductible shown on the **declarations page**, and by its salvage value if **you** or the **owner** retain the salvage;
3. the amount necessary to repair the **insured auto** to its pre-loss condition, reduced by the deductible shown on the **declarations page**; or
4. any Limit of Liability shown on the **declarations page** for "property damage" under this endorsement, reduced by the salvage value of the **insured auto** if **you** or the **owner** retain the salvage.

Payments for **property damage** under this endorsement are subject to the following provisions:
1. any amount payable under this endorsement for **property damage** shall be subject to the deductible shown on the **declarations page**;
2. no more than one deductible shall be applied to any one **accident**; and
3. an adjustment for depreciation and physical condition will be made in determining the Limit of Liability at the time of the **accident**.

The Limits of Liability under this endorsement for **bodily injury** shall be reduced by all sums:
1. paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I—Liability To Others;
2. paid or payable under any applicable Medical Payments Coverage Endorsement; and

40

8. paid, payable, or that should apply, because of **bodily injury** under any of the following or similar laws:
   a. disability benefits law; or
   b. workers' compensation law. However, this reduction does not apply to the extent that an employer's lien is required to be paid under North Carolina's workers' compensation law.

The Limits of Liability under this endorsement for **property damage** shall be reduced by all sums paid:
1. because of **property damage** by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I—Liability To Others; and
2. under Part II—Damage To Your Auto for loss to the **auto**.

Any payment made to a person under this endorsement shall reduce any amount that the person is entitled to recover under Part I—Liability To Others.

No one will be entitled to duplicate payments for the same elements of damages.

Any settlement for damages against an operator or **owner** of an **uninsured auto** without **our** written consent is not binding on **us**.

## OTHER INSURANCE

If there is other applicable uninsured or underinsured motorist coverage, **we** will pay only **our** share of the damages. However, any insurance **we** provide shall be excess over any other uninsured or underinsured motorist coverage, except for **bodily injury** to **you** and, if the named insured is a natural person, a **relative** when **occupying** an **insured auto**.

Regardless of the number of policies involved, coverage under this endorsement shall be limited to the extent that the total limits available cannot exceed the highest limits of any single applicable policy.

**We** will not pay for any damages that would duplicate any payment made for damages under other insurance.

## ARBITRATION

If **we** and an **insured** cannot agree on:
1. the legal liability of the operator or **owner** of an **uninsured auto**; or
2. the amount of the damages sustained by the **insured**;
this will be determined by arbitration if **we** or the **insured** make a written demand for arbitration prior to the expiration of the bodily injury statute of limitations in the state in which the **accident** occurred.

41

If a written demand for arbitration is made, each party shall select an arbitrator. The two arbitrators will select a third. If the two arbitrators cannot agree on a third arbitrator within thirty (30) days, then on joint application by the **insured** and **us**, the third arbitrator will be appointed by a court having jurisdiction.

Each party will pay the costs and fees of its arbitrator and any other expenses it incurs. The costs and fees of the third arbitrator will be shared equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** resides. Local rules of procedure and evidence will apply.

A decision agreed to by two of the arbitrators will be binding with respect to a determination of:
1. the legal liability of the operator or **owner** of an **uninsured auto**; and
2. the amount of the damages sustained by the **insured**.

The arbitrators shall have no authority to award an amount in excess of the limit of liability. The decision of the arbitrators is binding only if the amount of the award does not exceed the minimum limit of liability specified by the financial responsibility laws of the state listed on **your** application as **your** residence. If the award of the arbitrators is in an amount which exceeds this minimum limit, either party may demand the right to a trial. This demand must be made in writing within 60 days of the arbitrators' decision. If the demand is not made within 60 days, the amount of damages agreed to by the arbitrators will be binding.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form 4717 (02/19)

## TRAILER INTERCHANGE COVERAGE ENDORSEMENT

This endorsement modifies insurance provided by the Commercial Auto Policy. All terms and conditions of the policy apply unless modified by this endorsement.

### INSURING AGREEMENT

Subject to the Limits of Liability, if **you** pay the premium for Trailer Interchange Coverage, **we** will pay damages for **property damage** for which **you** become legally responsible because of **loss** to a **trailer** not owned by **you**, and its equipment, while in **your** possession. The **trailer** must be in **your** possession under a written trailer or equipment interchange agreement in which **you** assume liability for **loss** to the **trailer** while in **your** possession.

**We** will pay for a **loss** to the **trailer** and its equipment under the coverages de-

42

scribed below, as reflected on **your declarations page**:

a. Collision Coverage. For **loss** caused by:
  (i) The **trailer's** collision with another object; or
  (ii) The **trailer's** overturn.
b. Comprehensive Coverage. For any **loss** except one caused by:
  (i) The **trailer's** collision with another object; or
  (ii) The **trailer's** overturn.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this endorsement. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

## ADDITIONAL DEFINITION

"**Trailer**", when used in this endorsement, includes a shipping container.

## ADDITIONAL PAYMENTS

In addition to **our** Limit of Liability, **we** will pay for an **insured**:

a. all expenses **we** incur in the settlement of any claim or defense of any lawsuit;
b. interest accruing after entry of judgment on that part of the judgment that does not exceed **our** Limit of Liability. This payment does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**. **Our** payment, offer in writing, or deposit in court of that part of the judgment which does not exceed **our** Limit of Liability ends **our** duty to pay interest that accrues after the date of **our** payment, written offer, or deposit.
c. the premiums on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding **our** Limit of Liability, and **we** have no duty to apply for or furnish these bonds;
d. reasonable expenses, including loss of earnings up to $250 a day, incurred at **our** request;
e. all reasonable expenses necessary to return a stolen **trailer** to **you**, unless **we** determine the **trailer** to be a total loss; and
f. all reasonable expenses necessary to remove a **trailer** from the site of an **accident** or **loss** and transport it to a repair facility.

## EXCLUSIONS

a. **We** will not pay for **loss** caused by or resulting from any of the following. Such **loss** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.
  (i) Nuclear Hazard.
    (1) The explosion of any weapon employing atomic fission or fusion; or
    (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

43

(ii) War or Military Action:

    (1) War, including undeclared or civil war;

    (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or agents; or

    (3) Insurrection, rebellion, revolution, usurped power, or action taken by a governmental authority in hindering or defending against any of these.

b.  **We** will not pay for loss of use.

c.  **We** will not pay for **loss** caused by, or resulting from, any of the following unless caused by another **loss** that is covered by this insurance;

    (i) Wear and tear, freezing, mechanical or electrical breakdown, or structural failure caused by material fatigue, decomposition, or corrosion; or

    (ii) Blowouts, punctures, or other road damage to tires.

## LIMIT OF INSURANCE AND DEDUCTIBLE

The most **we** will pay for **loss** to any one **trailer** is the least of the following amounts minus any applicable deductible shown on the **declarations page**:

a.  The actual cash value of the damaged or stolen property at the time of the **loss**;

b.  The amount necessary to replace the stolen or damaged property with other of like kind and quality;

c.  The amount necessary to repair the damaged property to its pre-loss condition; or

d.  The applicable Limit of Liability for the property as shown on the **declarations page**.

A single deductible will be applied to any **loss**. In the event there are different deductible amounts applicable to the **loss**, the higher deductible will be applied. In all events, the deductible will be applied against the limit of liability. If a **loss** involves another coverage added by endorsement to the policy, only one deductible will apply to the entire **loss** event. No deductible will apply to payments made under the Additional Payments section for expenses necessary to return a stolen **trailer** to **you**.

## ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.

Form 4757 (02/19)

## MEDICAL PAYMENTS COVERAGE ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

## INSURING AGREEMENT

Subject to the Limits of Liability, if **you** pay the premium for Medical Payments Coverage, **we** will pay the **usual and customary charge** for reasonable and necessary expenses, incurred within three years from the date of an **accident**, for medical and funeral services because of **bodily injury**:

1. sustained by an **insured**;
2. caused by an **accident**; and
3. arising out of the ownership, maintenance or use of a motor vehicle or **trailer**.

Any dispute as to the **usual and customary charge** will be resolved between the service provider and **us**.

## ADDITIONAL DEFINITIONS

When used in this endorsement, whether in the singular, plural, or possessive:
1. "**Insured**" means:
   a. if the named insured shown on the **declarations page** is a natural person:
      (i) **you** while **occupying** any **auto**, other than an **auto owned** by **you** which is not an **insured auto**;
      (ii) a **relative** while **occupying** an **insured auto**, **temporary substitute auto**, or **non-owned auto**;
      (iii) **you** or any **relative** when struck by a land motor vehicle of any type, or a **trailer**, while not **occupying** a motor vehicle; and
      (iv) any other person while **occupying** an **insured auto**, **temporary substitute auto**, or a **trailer** while attached to an **insured auto**; or
   b. if the named insured shown on the **Declarations Page** is a corporation, partnership, organization or any other entity that is not a natural person, any person **occupying your insured auto**, **temporary substitute auto**, or a **trailer** while attached to an **insured auto**.
      For purposes of this definition, **insured auto** includes **mobile equipment** that is:
      (i) owned by **you**;
      (ii) leased, hired, or borrowed by **you** and **you** have purchased either "Hired Auto Coverage" or "Any Automobile Legal Liability Coverage" from **us**; or
      (iii) not owned, leased, hired, or borrowed by **you** and **you** have purchased either "Employer's Non-Ownership Liability Coverage" or "Any Automobile Legal Liability Coverage" from **us**.
      However, **mobile equipment** meeting any of those three criteria will be included in the definition only if at the time of **loss** it is being:
      (i) used in **your** business;
      (ii) operated on a public highway; and

45

(ii) operated in a state or province where it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law.

2. "**Non-owned auto**" means any **auto** that is not **owned** by **you** or furnished for **your** regular use and, if the named insured is a natural person, not **owned** by or furnished for the regular use of the named insured's spouse or a **relative**.

3. "**Owned**" means the person or organization:
   a. holds legal title to the vehicle;
   b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or
   c. has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six months or more.

4. "**Owner**" means the person or organization who, with respect to a vehicle:
   a. holds legal title to the vehicle;
   b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or
   c. has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six months or more.

5. "**Usual and customary charge**" means an amount which **we** determine represents a customary charge for services in the geographical area in which the service is rendered. **We** shall determine the usual and customary charge through the use of independent sources of **our** choice.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.

Coverage under this endorsement does not apply to **bodily injury**:
1. sustained while **occupying** any **auto** or **trailer** while being used as a residence or premises;
2. occurring during the course of employment if workers' compensation coverage should apply;
3. arising out of an **accident** involving an **auto** or **trailer** while being used by a person while employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering, or testing vehicles, unless that business is **yours**;
4. resulting from any pre-arranged or organized racing, speed or demolition contest, stunting activity, or in practice or preparation for any such contest or activity;
5. due to a nuclear reaction or radiation;
6. for which insurance is afforded under a nuclear energy liability insurance contract;
7. for which the United States Government is liable under the Federal Tort Claims Act;
8. sustained by any person while **occupying** an **insured auto**, **temporary substitute auto**, or **trailer** without the express or implied permission of **you** or, if the named insured is a natural person, a **relative**;

46

9.  sustained by any person while **occupying** a **non-owned auto** without the express or implied permission of the **owner**;
10. that is intentionally inflicted on an **insured** at that person's request or self-inflicted; or
11. sustained while **occupying** any vehicle that has less than four wheels or is not designed for operation principally upon public roads.

## LIMITS OF LIABILITY

Regardless of the number of premiums paid, or the number of **insured autos** or **trailers** shown on the **declarations page**, or the number of policies issued by **us**, or the number of vehicles or **insureds** involved in an **accident**, or the number of claims or lawsuits arising out of an **accident**, **we** will pay no more than the Limit of Liability shown for Medical Payments Coverage on the **declarations page**.

Any amount payable to an **insured** under this endorsement will be reduced by any amount paid or payable for the same expense under Part I—Liability To Others or any applicable Uninsured/Underinsured Motorist Coverage Endorsement.

No one will be entitled to duplicate payments under this policy for the same elements of damages.

## OTHER INSURANCE

If there is other applicable **auto** medical payments insurance, **we** will pay only **our** share of the medical and funeral services. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for an **insured occupying**:

1.  an **auto**, other than an **insured auto** or **temporary substitute auto**; or
2.  a **trailer**, other than a **trailer** while connected to an **insured auto**;

will be excess over any other **auto** or **trailer** insurance providing payments for medical or funeral expenses.

## ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.

Form 4852 NC (02/19)

## CANCELLATION AND NONRENEWAL ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

We agree with you that the insurance provided under **your** Commercial Auto Policy is modified as follows:

## CANCELLATION

I. **You** may cancel this policy by writing **us**, and stating the future date that **you** wish the cancellation to be effective.

II. To the extent that this policy cannot be ceded to the North Carolina Reinsurance Facility:

A. **We** may cancel this policy by providing notice as follows:

1. Within the first 59 days of the initial policy period, **we** may cancel this policy by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records at least:

   (a) fifteen days before the effective date of cancellation if **we** cancel for nonpayment of premium; or

   (b) thirty days before the effective date of cancellation if **we** cancel for any other reason.

2. After this policy is in effect for more than 59 days, **we** may cancel this policy by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records at least 15 days before the effective date of cancellation if **we** cancel for any reason.

B. **We** may cancel this policy for the following reasons:

1. **We** may cancel this policy for any reason within the first 59 days of the initial policy period.

2. After this policy is in effect for more than 59 days, or if this is a renewal or continuation policy, **we** may only cancel for one or more of the following reasons:

   (a) **you** do not pay the required premium for this policy when due;

   (b) material misrepresentation or omission by **you** or **your** representative of any material fact in the procurement or renewal of this policy or in the submission of any claim under this policy;

   (c) increased hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk;

   (d) substantial breach of contractual duties, conditions, or warranties that materially affects the insurability of the risk;

   (e) a fraudulent act against **us** by **you** or **your** representative that materially affects the insurability of the risk;

   (f) willful failure by **you** or **your** representative to institute reasonable **loss** control measures that materially affect the insurability of the risk after written notice by **us**;

   (g) loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S. 58-41-30;

   (h) **you** are convicted of a crime arising out of acts that materially affect the insurability of the risk;

48

(i) a determination by the Commissioner that the continuation of this policy would place **us** in violation of the laws of North Carolina; or

(j) any other reason specified by law.

III. To the extent that this policy can be ceded to the North Carolina Reinsurance Facility:

A. **We** may cancel this policy by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records at least 15 days before the effective date of cancellation if **we** cancel for any reason.

B. **We** may cancel this policy for the following reasons:
   1. Nonpayment of premium;
   2. **You** become a nonresident of North Carolina and are not otherwise entitled to insurance through the Reinsurance Facility;
   3. **Our** contract with the agent through whom this policy is written is terminated for reasons other than the quality of the agent's insureds; or
   4. This policy is canceled pursuant to a power of attorney given a company licensed according to the provisions of G.S.58-56.

IV. With respect to cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverage for all persons and all **autos**.

V. If this policy is canceled, coverage will not be provided as of the effective date and time shown in the notice of cancellation.

## CANCELLATION REFUND

Upon cancellation, **you** may be entitled to a premium refund. However, **our** making or offering of a refund is not a condition of cancellation.

If this policy is canceled, any refund due will be computed on a daily pro-rata basis.

## NONRENEWAL

If **we** decide not to renew or continue this policy, **we** will mail notice of nonrenewal to the first named insured shown on the **declarations page** at the last known address appearing in **our** records. Notice will be mailed at least 45 days before the end of the policy period.

To the extent that this policy can be ceded to the North Carolina Reinsurance Facility, **we** may nonrenew this policy for only one or more of the following reasons:

1. Nonpayment of premium;
2. **You** become a nonresident of North Carolina and are not otherwise entitled to insurance through the Reinsurance Facility;
3. **Our** contract with the agent through whom this policy is written is terminated for reasons other than the quality of the agent's insureds; or
4. This policy is canceled pursuant to a power of attorney given a company licensed according to the provisions of G.S. 58-56.

49

Proof of mailing of any notice will be sufficient proof of notice.

**ALL OTHER TERMS, LIMITS AND PROVISIONS OF THE POLICY REMAIN UN-CHANGED.**

Form 4881 NC (02/19)

## NORTH CAROLINA AMENDATORY ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

### PART I—LIABILITY TO OTHERS

### EXCLUSIONS

The following is added as an additional paragraph at the end of the Exclusions section:

Pollution Exclusion Buy Back—If a payment is made subject to the MCS90 endorsement, the reimbursement language in the MCS90 endorsement is removed for a claim that is not covered under **covered pollution cost or expense** or is excluded under Exclusion 7 or 10 under Part I—Liability to Others.

### GENERAL PROVISIONS

The following Subsection 8—Waiver is deleted in its entirety:

8.  **Waiver**

Notice to any agent or knowledge possessed by any agent or other person shall not change or effect a waiver on any portion of this policy nor prevent **us** from exercising any of **our** rights under this policy.

The following is added to Subsection 11—Fraud or Misrepresentation:

This provision does not apply to coverage under Part I—Liability To Others up to the minimum limits required by the financial responsibility laws of North Carolina.

**ALL OTHER TERMS, LIMITS AND PROVISIONS OF THE POLICY REMAIN UN-CHANGED.**

### INDIVIDUAL NAMED INSURED ENDORSEMENT

---

Not all customers are eligible for this coverage. This endorsement applies to **your** policy only if the form number appears on **your declarations page**. In no event will this coverage apply if the named insured is a corporation, partnership, organization, or any other entity that is not a natural person.

This endorsement changes **your** policy. Please read it carefully.

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

### ADDITIONAL DEFINITIONS USED IN THIS ENDORSEMENT

As used in this endorsement:
1. "**You**" and "**yours**" include **your** spouse, if a resident of the same household, except for notice of cancellation.
2. "**Non-owned auto**" means any **private passenger auto**, pickup, van, or **trailer** not owned by or furnished or available for the regular use of **you** or any **relative**, while it is in the custody of or being operated by **you** or any **relative**, with the permission of its owner.

### CHANGES IN PART I—LIABILITY TO OTHERS

A. If **you** are an individual, Exclusion 6 does not apply to **bodily injury** to **your** or any **relative's** fellow **employees**.

B. If any **private passenger auto you** own is an **insured auto** under Part I—Liability To Others and that **auto** is not used for any business purpose other than ranching or farming:
   1. **Relatives** are **insureds** for any **insured auto you** own that is a **private passenger auto** and is not used for any business purpose other than ranching or farming, and for any other **auto** described in paragraph B.2. of this endorsement.
   2. Any **auto you** do not own is an **insured auto** while being used, with the permission of its owner, by **you** or by any **relative** except:
      a. Any **auto** owned by any **relative**.
      b. Any **auto** furnished or available for **your** or any **relative's** regular use, including any **auto** rented for a period of more than 30 days.
      c. Any **auto** used by **you** or by any of **your relatives** while working in a business of selling, servicing, repairing, or parking **autos**.
      d. Any **auto** other than a **private passenger auto** used by **you** or any of **your relatives** while working in any business or occupation.

51

8. Exclusion 10 does not apply to any **insured auto** that is a **private pas-senger auto** and is not used for any business purpose other than ranch-ing or farming.

4. Exclusion 16 is deleted and replaced by the following:
**Vehicle Sharing—Private Passenger Autos**
**Bodily injury** or **property damage** arising out of the use of an **insured auto** that is a **private passenger auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not ap-ply to the operation of an **insured auto** by **you** or a **relative**.

## CHANGES IN PART II—DAMAGE TO YOUR AUTO

A. If any **private passenger auto you** own is an **insured auto** under Part II—Damage To Your Auto, and that **auto** is not used for any business pur-pose other than ranching or farming, then a **non-owned auto** will also be considered an **insured auto**. However, the most **we** will pay for **loss** to a **non-owned auto** that is a **trailer** is $500.

B. Exclusion 9 is deleted and replaced by the following:
**We** will not pay for **loss** to an **insured auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of an **insured auto** by **you** or a **relative**.

## ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THIS POLICY REMAIN UNCHANGED.

Form Z228 (01/11)

## MOBILE EQUIPMENT AS INSURED AUTOS ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

## PART I—LIABILITY TO OTHERS

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY** is modified as follows:

B. When used in PART I—LIABILITY TO OTHERS, **insured auto** also includes:
1. **Trailers**, designed primarily for travel on public roads, while connected to **your insured auto** that is a power unit;
2. **Mobile equipment** while being carried or towed by an **insured auto**;

52

3. Any **temporary substitute auto**; and
4. Any **mobile equipment** owned by **you**, or if **you** have purchased Hired Auto or Non-owned Auto coverage, leased or hired by **you**, when subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. This does not change the effect of exclusion 13 concerning the operation of **mobile equipment**.

## MEDICAL PAYMENTS COVERAGE

If **you** pay the premium for Medical Payments Coverage, that endorsement is modified as follows:

### ADDITIONAL DEFINITIONS

The definition of "**Insured**" is deleted and replaced by:

"**Insured**" means:
- a. if the named insured shown on the **Declarations Page** is a natural person:
  - (i) **you** while **occupying** any **auto**, other than an **auto owned** by **you** which is not an **insured auto**;
  - (ii) a **relative** while **occupying** an **insured auto**, **temporary substitute auto**, or **non-owned auto**;
  - (iii) **you** or any **relative** when struck by a land motor vehicle of any type, or a **trailer**, while not **occupying** a motor vehicle; and
  - (iv) any other person while **occupying** an **insured auto**, **temporary substitute auto**, or a **trailer** while attached to an **insured auto**; or
- b. if the named insured shown on the **Declarations Page** is a corporation, partnership, organization or any other entity that is not a natural person, any person **occupying your insured auto**, **temporary substitute auto**, or a **trailer** while attached to an **insured auto**.

For purposes of this definition, **insured auto** includes **mobile equipment owned** by **you**, or if **you** have purchased Hired Auto or Non-owned Auto coverage, leased or hired by **you**, when it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged.

## UNINSURED MOTORIST AND UNDERINSURED MOTORIST COVERAGES

If **you** pay the premium for Uninsured Motorist Coverage and/or Underinsured Motorist Coverage, that endorsement is modified as follows:

### ADDITIONAL DEFINITIONS

The definition of "**Insured**" is deleted and replaced by:

"**Insured**" means:
- a. if the named insured shown on the **Declarations Page** is a natural person:

53

(i) **you** or a **relative**;

(ii) any person **occupying your insured auto** or a **temporary substitute auto**; and

(iii) any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) or (ii) above; or

b. if the named insured shown on the **Declarations Page** is a corporation, partnership, organization or any other entity that is not a natural person:

(i) any person **occupying your insured auto** or a **temporary substitute auto**; and

(ii) any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) above.

For purposes of this definition, **insured auto** includes **mobile equipment owned** by **you**, or if **you** have purchased Hired Auto or Non-owned Auto coverage, leased or hired by **you**, when it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form Z438 (02/19)

## GARAGE OPERATIONS PHYSICAL DAMAGE
## LEGAL LIABILITY COVERAGE ENDORSEMENT

This endorsement modifies **your** Commercial Auto Policy. Except as specifically modified by this endorsement, all provisions of the Commercial Auto Policy apply.

THIS ENDORSEMENT APPLIES ON A LEGAL LIABILITY BASIS UNLESS ONE OF THE DIRECT COVERAGE OPTIONS LISTED BELOW IS SHOWN ON **YOUR DECLARATIONS PAGE**.

### DIRECT COVERAGE OPTIONS

**Direct Excess Insurance.** If this "Direct Excess" option is shown on **your declarations page**, the On-Hook Towing Physical Damage Legal Liability and Garagekeepers Storage Location Physical Damage Legal Liability coverages provided by this endorsement are modified to apply without regard to **your** or any other **insured's** legal liability for **loss** to a **customer's auto** or **towed property**, and is excess over any other collectible insurance regardless of whether the other insurance covers **your** or any other **insured's** interest or the interest of the owner of the **customer's auto** or **towed property**.

**Direct Primary Insurance.** If this "Direct Primary" option is shown on **your dec-larations page**, the On-Hook Towing Physical Damage Legal Liability and Ga-ragekeepers Storage Location Physical Damage Legal Liability coverages pro-vided by this endorsement are modified to apply without regard to **your** or any other **insured's** legal liability for **loss** to a **customer's auto**, or **towed property**, and is primary insurance.

### INSURING AGREEMENT—ON-HOOK TOWING PHYSICAL DAMAGE LEGAL LIABILITY COVERAGE

If **you** pay the premium for this On-Hook Towing Physical Damage Legal Liability coverage and it is shown on **your declarations page** as "On-Hook Legal Liabil-ity", **we** will pay all sums for which an **insured** is legally liable to pay for **property damage** for **loss** to **towed property**. **We** will pay under this coverage only if a limit of liability and a premium is shown for this coverage on the **declarations page**.

**We** will have the right and duty to defend any **insured** against a lawsuit asking for these damages. However, **we** have no duty to defend any **insured** against a lawsuit seeking damages for **loss** to which this insurance does not apply. **We** may investigate and settle any claim or lawsuit as **we** consider appropriate. **Our** duty to defend or settle ends when the limit of liability for this coverage has been exhausted by payment of judgments or settlements.

### INSURING AGREEMENT—GARAGEKEEPERS STORAGE LOCATION PHYSICAL DAMAGE LEGAL LIABILITY COVERAGE

If **you** pay the premium for this Garagekeepers Storage Location Physical Dam-age Legal Liability coverage and it is shown on **your declarations page** as "Ga-ragekeepers Legal Liability", **we** will pay all sums for which an **insured** is legally liable to pay as **property damage** for **loss** to a **customer's auto** or **customer's auto** equipment left in the **insured's** care while the **insured** is attending, servic-ing, repairing, parking, or storing it in **your garage operations** under:

1. Comprehensive Coverage.
   From any cause except:
   a. Collision of the **customer's auto** with another object; or
   b. Overturn of the **customer's auto**.

2. Collision Coverage.
   Caused by:
   a. Collision of the **customer's auto** with another object; or
   b. Overturn of the **customer's auto**.

**We** will have the right and duty to defend any **insured** against a lawsuit asking for these damages. However, **we** have no duty to defend any **insured** against a lawsuit seeking damages for **loss** to which this insurance does not apply. **We**

may investigate and settle any claim or lawsuit as **we** consider appropriate. **Our** duty to defend or settle ends when the limit of liability for this coverage has been exhausted by payment of judgments or settlements.

**We** will pay under this coverage only if a limit of liability and a premium is shown for this coverage on the **declarations page**, and only for the locations listed on **your declarations page**.

### ADDITIONAL DEFINITIONS

The following additional definitions apply throughout this Garage Operations Physical Damage Legal Liability Coverage endorsement whenever the defined term appears in boldface type, whether in the singular, plural, or possessive:

1.  "**Customer's auto**" means a customer's land motor vehicle, **trailer**, or **watercraft**, including a **customer's auto** left with **you** for service, repair, storage, or safekeeping. Customers include **your employees** and their **relatives** who pay for services performed.

2.  "**Garage operations**" means the ownership, maintenance, or use of the locations shown on **your declarations page** for the purpose of a business of selling, servicing, repairing, parking, or storing **customers' autos**, and that portion of the roads or other accesses that adjoin such locations. **Garage operations** also includes all operations necessary or incidental to the performance of **garage operations**.

3.  "**Insured**" means:
    a.  **you**; and
    b.  **your** partners (if **you** are a partnership), members (if **you** are a limited liability company), employees, directors, or shareholders, but only while acting within the scope of their duties.

4.  "**Loaded in or on**" means connected to.

5.  "**Towed property**" means tangible property, not owned by or registered to **you**, in transit while **loaded in or on**, or conveyed by, an **insured auto**. **Towed property** also means property when it is moved from the place where **you** accept it for movement by or onto **your insured auto** and after it is moved from **your insured auto** to the place where it is finally delivered by **you**. **Towed property** includes a towed **auto** or **watercraft**.

6.  "**Watercraft**" means any craft, boat, vessel, or ship designed to transport persons or property by water.

7.  "**Work you performed**" includes:
    a.  Work that someone performed on **your** behalf; and
    b.  The providing of, or the failure to provide, warnings or instructions.

56

**ADDITIONAL PAYMENTS**

In addition to **our** limit of liability, **we** will pay for an **insured** under this endorsement:

1. All expenses **we** incur in the settlement of any claim or defense of any lawsuit;
2. The premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds;
3. Reasonable expenses incurred by that **insured** at **our** request, including loss of earnings up to $250 per day;
4. All costs taxed against the **insured** in any lawsuit against that **insured we** defend; and
5. Interest accruing after entry of judgment on that part of the judgment that does not exceed **our** limit of liability. This does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**.

   **Our** payment, offer in writing, or deposit in court of that part of the judgment that does not exceed **our** limit of liability ends **our** duty to pay interest that accrues after the date of **our** payment, written offer, or deposit.

**EXCLUSIONS—PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE PROVIDED.**

1. The On-Hook Towing Physical Damage Legal Liability and Garagekeepers Storage Location Physical Damage Legal Liability coverages under this endorsement do not apply to any of the following:
   a. Liability resulting from any contract or agreement by which the **insured** accepts responsibility for **loss**. This exclusion does not apply to an agreement that is an **insured contract** that was executed prior to the occurrence of any **property damage**;
   b. **Loss** due to theft or conversion caused in any way by **you** or **your** employees, partners, members, directors, or shareholders;
   c. Defective parts or materials;
   d. Faulty **work you performed**;
   e. **Loss** to any of the following:
      (i) Tape decks or other sound-reproducing equipment unless permanently installed in a **customer's auto**;
      (ii) Tapes, records, or other sound-reproducing devices designed to be used with sound-reproducing equipment;
      (iii) Sound-receiving equipment designed for use as a citizens band radio, two-way mobile radio, or telephone or scanning monitor receiver, including its antennas and other accessories, unless permanently installed in the dash or console opening normally used by the **customer's auto** manufacturer for the installation of a radio; or

57

      (iv) Any device designed or used to detect speed measurement equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment;

f. **Loss** caused by:
   (i) War, including undeclared or civil war;
   (ii) Warlike action by a military force, including any action to hinder or defend against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents;
   (iii) Insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these; or
   (iv) Nuclear reaction or radioactive contamination.

   This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**;

g. **Loss** caused by strikes, lockouts, riots, civil commotion, or disorder; or

h. **Loss** due to inherent vice, delay, loss of profit, loss of market, loss of market value, or loss of use.

2. On-Hook Towing Physical Damage Legal Liability Coverage does not apply to:
   a. **Loss** to tarpaulins, tools, repair equipment, or materials and equipment for loading or unloading, which are carried in or on the **insured auto**;
   b. **Loss** to any **towed property** while it is in the custody of anyone other than an **insured**;
   c. **Loss** to objects of art, including paintings and statuary;
   d. **Loss** to jewelry; precious or semi-precious stones; gold, silver, platinum, or other precious metals or alloys;
   e. **Loss** to live animals;
   f. **Loss** to papers of any kind, including, but not limited to, money, securities, accounts, bills, currency, food stamps, notes, tickets, any other evidences of debt, passports, deeds, mechanical drawings, blueprints, manuscripts, or exhibits;
   g. Debris removal, including extraction of pollutants from land or water; or removal, restoration, or replacement of polluted land or water;
   h. **Loss** caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property;
   i. **Loss** to contraband or property in the course of illegal transportation or trade;
   j. **Loss** to property caused by contamination or deterioration, including corrosion; decay; fungus; mildew; mold; rot; rust; any quality, fault, or weakness in the property that causes it to damage or destroy itself; or humidity, dampness, dryness, or changes in or extremes of temperature;
   k. **Loss** caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of **pollutants**;
   l. **Loss** caused by or resulting from criminal, fraudulent, dishonest, or illegal acts committed alone or in collusion with another by an **insured**, anyone to whom **you** entrust the **towed property**, or anyone who has an interest in the property;

n. **Loss** caused by or resulting from voluntary parting with title to or pos-
session of any property because of any fraudulent scheme, trick, or false
pretense;

n. **Loss** caused by the explosion of explosives; or

o. **Loss** to computers and electronic goods, including, but not limited to,
computer hardware and component parts, televisions, DVD players,
stereo or other sound reproduction equipment, or any other electronic
equipment, antennas, and other devices used exclusively to send or re-
ceive audio, visual, or data signals, or to store or play back recorded
media.

## LIMITS OF LIABILITY

1. **On-Hook Towing Physical Damage Legal Liability Coverage.**
Regardless of the number, amount, or units of **towed property** or **insured
autos**, **insureds**, premiums paid, claims made or lawsuits brought, the most
**we** will pay for each **loss** is the aggregate amount of damages to all **towed
property** while being **loaded in or on** or conveyed by one **insured auto**, not
to exceed the limit of liability shown on the **declarations page** for this "On-
Hook Legal Liability" coverage.

The most **we** will pay for **loss** to any **towed property** is the least of the fol-
lowing amounts:
   a. The actual cash value of the damaged or stolen property at the time of **loss**;
   b. The cost of repairing or replacing the damaged or stolen property with
   other of like kind and quality to the extent practicable; or
   c. An agreed or appraised value for the property. **We** may keep all or part
   of the property at the agreed or appraised value, but there shall be no
   abandonment to **us**.

2. **Garagekeepers Storage Location Physical Damage Legal Liability
Coverage.**
Regardless of the number of **customer's autos** or **insured autos**, **insureds**,
premiums paid, claims made, or lawsuits brought, the most **we** will pay for
each **loss** at each location is the "Garagekeepers Legal Liability" coverage
limit shown on the **declarations page** for that location.

The most **we** will pay for a **loss** to any one **customer's auto** or all **cus-
tomer's auto** equipment is the least of the following amounts:
   a. The actual cash value of the damaged or stolen property at the time of **loss**;
   b. The cost of repairing or replacing the damaged or stolen property with
   other of like kind and quality to the extent practicable; or
   c. An agreed or appraised value for the property. **We** may keep all or part
   of the property at the agreed or appraised value, but there shall be no
   abandonment to **us**.

If the repair or replacement results in better than like kind and quality, **we** will not pay for the amount of the betterment.

An adjustment for depreciation or physical condition will be made in determining actual cash value in the event of a total loss.

In the event of payment of actual cash value for a total loss, **we** are entitled to all salvage, or credit for salvage, resulting from such **loss**.

3. **Deductibles.**

   For each **loss** that qualifies for coverage under the On-Hook Towing Physical Damage Legal Liability Coverage, the deductible shown on the **declarations page** will be applied.

   For each **loss** that qualifies for coverage under the Garagekeepers Storage Location Physical Damage Legal Liability Coverage, the "Each auto" deductible shown on the **declarations page** will be applied separately to each **customer's auto** or **towed property** sustaining **loss** as a result of a single **loss** event. The maximum aggregate deductible applied for a single **loss** event will not exceed the "Each occurrence" deductible shown on the **declarations page**.

   If **we** pay all or any part of a deductible in the settlement of any claim or lawsuit, **you** must reimburse **us** for the deductible or the portion thereof that **we** paid.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form Z439 (02/19)

## NON-OWNED TRAILER PHYSICAL DAMAGE
## COVERAGE ENDORSEMENT

This endorsement modifies insurance provided by the Commercial Auto Policy. All terms and conditions of the policy apply unless modified by this endorsement.

### INSURING AGREEMENT

Subject to the Limits of Liability, if **you** pay the premium for Non-Owned Trailer Physical Damage Coverage, **we** will pay damages for **property damage** for which **you** become legally responsible because of **loss** to a **trailer** not owned by **you**, and its equipment, while in **your** possession.

60

**We** will pay for a **loss** to the non-owned **trailer** and its equipment under the coverages described below, as reflected on **your declarations page**:

a. Collision Coverage. For **loss** caused by:
   (i) The **trailer's** collision with another object; or
   (ii) The **trailer's** overturn.
b. Comprehensive Coverage. For any **loss** except one caused by:
   (i) The **trailer's** collision with another object; or
   (ii) The **trailer's** overturn.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this endorsement. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

## ADDITIONAL PAYMENTS

In addition to **our** Limit of Liability, **we** will pay for an **insured**:

a. all expenses **we** incur in the settlement of any claim or defense of any lawsuit;
b. interest accruing after entry of judgment on that part of the judgment that does not exceed **our** Limit of Liability. This payment does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**.

   **Our** payment, offer in writing, or deposit in court of that part of the judgment which does not exceed **our** Limit of Liability ends **our** duty to pay interest that accrues after the date of **our** payment, written offer, or deposit;
c. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding **our** Limit of Liability, and **we** have no duty to apply for or furnish these bonds;
d. reasonable expenses, including loss of earnings up to $250 a day, incurred at **our** request;
e. all reasonable expenses necessary to return a stolen **trailer** to **you**, unless **we** determine the **trailer** to be a total loss; and
f. all reasonable expenses necessary to remove a **trailer** from the site of an **accident** or **loss** and transport it to a repair facility.

## ADDITIONAL DEFINITION USED IN THIS ENDORSEMENT

The following definition applies to this endorsement only:

"**Trailer**", when used in this endorsement, includes a shipping container.

## EXCLUSIONS

a. **We** will not pay for **loss** caused by or resulting from any of the following. Such **loss** is excluded regardless of any other cause or event that contrib-

61

24-cv-00096-MJT    Document 1    Filed 03/15/24    Page 146 of 149 Pa
utes concurrently or in any sequence to the **loss**.
146

   (i) Nuclear Hazard.
      (1) The explosion of any weapon employing atomic fission or fusion; or
      (2) Nuclear reaction or radiation, or radioactive contamination, however
          caused.
   (ii) War or Military Action.
      (1) War, including undeclared or civil war;
      (2) Warlike action by a military force, including action in hindering or
          defending against an actual or expected attack, by any government,
          sovereign, or other authority using military personnel or agents; or
      (3) Insurrection, rebellion, revolution, usurped power, or action taken by a
          governmental authority in hindering or defending against any of these.
b. **We** will not pay for loss of use.
c. **We** will not pay for **loss** caused by, or resulting from, any of the following un-
   less caused by another **loss** that is covered by this insurance;
   (i) Wear and tear, freezing, mechanical or electrical breakdown, or struc-
       tural failure caused by material fatigue, decomposition, or corrosion.
   (ii) Blowouts, punctures, or other road damage to tires.

## LIMIT OF INSURANCE AND DEDUCTIBLE

The most **we** will pay for **loss** to any one **trailer** is the least of the following
amounts minus any applicable deductible shown on the **declarations page**:
a. The actual cash value of the damaged or stolen property at the time of the
   **loss**;
b. The amount necessary to replace the stolen or damaged property with other
   of like kind and quality;
c. The amount necessary to repair the damaged property to its pre-loss condi-
   tion; or
d. The applicable Limit of Liability for the property as shown on the **declara-
   tions page**.

A single deductible will be applied to any **loss**. In the event there are different
deductible amounts applicable to the **loss**, the higher deductible will be applied.
In all events, the deductible will be applied against the limit of liability. If a **loss**
involves another coverage added by endorsement to the policy, only one deduct-
ible will apply to the entire **loss** event. No deductible will apply to payments made
under the Additional Payments section for expenses necessary to return a stolen
**trailer** to **you**.

## OTHER INSURANCE

The insurance provided for a **loss** to a non-owned **trailer** is primary.

If coverage under more than one policy applies on the same basis, **we** will pay
only **our** proportionate share. **Our** proportionate share is the proportion that the

Limit of Liability of this policy bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form Z442 (02/19)

### **ANY AUTOMOBILE LEGAL LIABILITY COVERAGE ENDORSEMENT**

Except as specifically modified by this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

### **CHANGES TO PART I—LIABILITY TO OTHERS**

I.  The following changes are made to the Additional Definitions Used in This Part Only section:

   A.  The definition of "**insured auto**" is modified to include:

   1.  **Hired autos**;
   2.  **Non-owned autos**; and
   3.  Any other **autos** owned by **you**:
       a.  only while being used in the conduct of **your** business; and
       b.  that do not qualify as either **hired autos** or as **non-owned autos**.

   However, this modification to the definition of **insured auto** does not apply to any **auto** acquired prior to the current policy period. But, for any type of **auto** that **you** acquire during the current policy period, this modification extends coverage to that **auto** during the remainder of the policy period.

   B.  The following definitions are added:

   1.  "**Hired auto**" means an **auto**:
       a.  **you** lease, hire, rent or borrow; or
       b.  **your employee** leases, hires or rents:
           i.   under a contract in that individual **employee's** name;
           ii.  at **your** direction and with your express permission; and
           iii. only while being used in the conduct of **your** business.
       However, this does not include any **auto you** or an **employee** leas-

63

es, hires, rents or borrows from any of **your employees**, partners (if **you** are a partnership), members (if **you** are a limited liability company), or member of their households.

2. "**Non-owned auto**" means an **auto**:
   a. that **you** do not own;
   b. that is not a **hired auto**; and
   c. that is being used by **you** in connection with **your** business.

   This includes **autos** owned by **your employees**, partners (if **you** are a partnership), members (if **you** are a limited liability company), or members of their households, but only while such **autos** are used in **your** business.

II. The first paragraph under the Limit of Liability section is deleted and replaced by the following:

Regardless of the number of premiums paid, or the number of **insured autos** or **trailers**, or the number of policies issued by **us**, or the number of vehicles or **insureds** involved in an **accident**, or the number of claims or lawsuits arising out of an **accident**, **we** will pay no more than the limit of liability shown on the **declarations page** for the coverage provided by this endorsement.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THIS POLICY REMAIN UNCHANGED.**





1781 NC 0219